UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

NORRIS ANTHONY BROWN, KENNETH DOWNER,
RICHARD GRAHAM YOUNG, ROAN DRUMOND SCOTT,
CLIFF FITZ PATRICK, AUZZIE DUANE DABRELL,
FITZROY LLOYD JOHNSON, STANLEY ARMANDO MULLINGS,
GREGORY HUGHES each on their own behalf, and on behalf of all other current and
former employees of ROYAL CARIBBEAN CRUISES, LTD, similarly situated.

Plaintiff(s),
v.

ROYAL CARIBBEAN CRUISES, LTD.
Defendants.
_____/

## SEAMAN'S CLASS ACTION COMPLAINT WITHOUT PREPAYMENT OF COSTS

**COME NOW**, the Plaintiffs each on their own behalf and on behalf of all other current

and former employees of Royal Caribbean Cruises, Ltd., similarly situated, by and through

undersigned counsel, and sue the Defendant Royal Caribbean Cruises, LTD. (hereafter

referred to as "RCCL"), and for their cause of action, allege the following:

### PRELIMINARY ALLEGATIONS

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears.

   This is an admiralty or maritime claim within the meaning of Rule 9(h). Plaintiffs are

   seamen within the meaning of 28 U.S.C. 1916 and are entitled to file suit without

   prepayment of costs.

2. Defendants, at all times material hereto, personally or through an agent;

   A. Operated, conducted, engaged in or carried on a business venture in this state and/or

   county or had an office or agency in this state and/or county;

1

B.  Were engaged in substantial activity within this state and registered as a corporation doing business in the State of Florida;

C.  Operated vessels in the waters of this state including the vessels on which Plaintiffs were employed;

D.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

E.  As seamen, Plaintiffs are entitled to bring their lawsuit in any jurisdiction and venue where the Defendant can be found. The Defendants can be found in Miami Dade County, Florida. Defendants' vessels call on the port of Miami. Defendant or its related companies have litigated in courts in Miami Dade County, Florida.

3.  Defendant, RCCL is Liberian business entity with its principal place of business in Miami, Florida.

4.  The causes of action asserted in this Complaint arise under the Seaman's Wage Act (46 U.S.C. § 10313, 46 U.S.C. §10504), the General Maritime Law of the United States, and 18 U.S.C. §1595.

5.  At all times material, Defendant, RCCL, owned, operated, managed, maintained and/or controlled the vessels on which Plaintiffs worked. The vessels include, but are not limited to the MS OASIS OF THE SEAS, MS ALLURE OF THE SEAS, MS FREEDOM OF THE SEAS, MS LIBERTY OF THE SEAS, MS INDEPENDENCE OF THE SEAS, MS VOYAGER OF THE SEAS, MS EXPLORER OF THE SEAS, MS ADVENTURE OF THE SEAS, MS NAVIGATOR OF THE SEAS, MS MARINER OF THE SEAS, MS RADIANCE OF THE SEAS, MS BRILLIANCE OF THE SEAS, MS SERENADE OF THE SEAS, MS JEWEL OF THE SEAS, MS

LEGEND OF THE SEAS, MS SPLENDOR OF THE SEAS, MS GRANDEUR OF THE SEAS, MS RHAPSODY OF THE SEAS, MS ENCHANTMENT OF THE SEAS, MS VISION OF THE SEAS, MS MONARCH OF THE SEAS, MS MAJESTY OF THE SEAS, and MS EMPRESS OF THE SEAS.

6. The acts of Defendants set out in this Complaint occurred in whole or in part in this country and/or state.

7. At all times material hereto, Defendant's vessels were Bahamian Flagged vessels.

8. At all times material hereto, Plaintiffs were employed by Defendant to work on Defendant's vessels as Stateroom Attendants.

9. Stateroom Attendants work in RCCL's housekeeping department. Each Stateroom Attendant is responsible for hundreds of tasks, including but not limited to the cleaning and sanitation of rooms, and distribution of luggage to passengers.

10. As Stateroom Stewards, Plaintiffs typically provide services to approximately forty-five (45)  passengers daily.

11. Plaintiffs' compensation under the employment agreements with Defendant RCCL consists almost entirely of tips received from passengers.  Under the contract, only $50 per month is paid to Plaintiffs directly as wages by Defendant RCCL.[1] The rest and majority of Plaintiffs' compensation is comprised of gratuities provided by passengers.

12. The employment contract, which incorporated the CBA, required Defendant RCCL to charge passengers the gratuities to be paid to Stateroom Attendants.

13. At all times material, at the end of every cruise, Defendant RCCL collected Stateroom Attendant gratuities from passengers. These collected gratuities were in turn required to be distributed by RCCL to Stateroom Attendants every pay period.

---

[1] This averages to one-dollar and 67 cents ($1.67) per day.

14. At all times material, Plaintiffs were entitled to receive gratuities amounting to $3.50 per passenger, per day for the passengers they serviced. Thus, for a seven day cruise, Plaintiffs were entitled to receive in wages approximately $1,102.50 for forty-five 45 passengers served, or $24.50 per passenger.

15. Pursuant to binding Eleventh Circuit Precedent, tips and/or gratuities are considered an essential part of a seafarer's "wages". *See Flores v. Carnival Cruise Lines,* 47 F. 3d 1120, 1125 (11th Cir. 1995) ("Wages" includes average tip income, at least where, as here, the employer and employee anticipate that tips will be a substantial part of the compensation received"). As such, any deprivation and/or withholding of a seafarer's earned tips and/or gratuities triggers a cause of action under the Seaman's Wage Act and General Maritime law of the United States.

16. At all times material, RCCL has had a policy of refusing to allow the Plaintiffs to keep their full wages, such that RCCL de facto refused to pay full wages, in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

   A. RCCL's policy consists in requiring the Plaintiffs to hire extra workers and to pay them out of Plaintiffs' own wages, such that Plaintiffs are denied their full wages. At all times material hereto:

   i. Defendant knowingly allocated Plaintiffs an unreasonable amount of work to be accomplished within an unreasonable timeframe;

   ii. Defendant knew or should have known that Plaintiffs, alone, would not be able to finish their assigned tasks within the timeframe given by Defendants;

iii.   Defendant knew that, as a result of the unreasonable workload given to Plaintiffs and as a result of Defendant's unreasonable request to accomplish the task within Defendant's allotted timeframe, Plaintiffs were forced to, and did, hire help which plaintiffs were forced to pay out of their own wages, despite protesting the situation to their superiors;

iv.   Defendant knew that because of the unreasonable workloads and timeframes, Stateroom Attendants could not finish the work on embarkation days without helpers;

v.   Defendant knew that helpers were necessary for Stateroom Attendants to finish the work on embarkation days;

vi.   Defendant did not pay for Plaintiffs helpers, but instead, required Plaintiffs to pay for their helpers out of their own earned wages;

vii.   Every contract period Plaintiffs were deprived of thousands of dollars as a result of being required to hire and pay helpers;

viii.   Defendants knew that the helpers earnings would, consequently, decrease the Plaintiffs' earnings;

ix.   With knowledge that the work of Stateroom Attendants could not be completed without the use of helpers, and that Plaintiffs paid for helpers out of their own earned wages; RCCL conducted studies and analyses to reduce the workload of Stateroom Attendants so as to eliminate the need for assistance;

x.   The practice of hiring and paying for helpers was not only condoned but explicitly required by RCCL;

xi. By requiring Plaintiffs' to use and pay for helpers, RCCL financially benefited – incurring substantial savings from not having to pay for the number of workers required to accomplish the tasks assigned to the Stateroom Attendants in the time allotted;

xii. All in all, Defendant's scheme deprived Plaintiffs of their earned wages in violation of the Seaman's Wage Act, (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

xiii. At all times material, RCCL's withholding of wages was knowing, arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

B. Additionally, starting on or before 2008, RCCL implemented another scheme to deprive Plaintiffs of their wages. Defendant's scheme consists in requiring and/or forcing Plaintiffs to work, effectively without pay, in other sections of its ships. At all times material hereto:

i. Defendant implemented a plan referred to as "The Evolution of Housekeeping." In doing so, Defendant created a rating system for Stateroom Attendants. Under the rating system, referred to as "Performance Management Tool," every two weeks, RCCL scores and/or grades Stateroom Attendants;

ii. The Stateroom Attendants with the lowest ranking scores are demoted and forced to work, effectively without pay, for two weeks or more;

iii. During the demotion period, referred to as working at the "back of the house," RCCL requires Plaintiffs to clean and sanitize the rooms of other crewmembers;

iv. Because, unlike passengers, crewmembers do not tip or give gratuities to people cleaning their rooms; during the entire time that Stateroom Attendants are sent to

work on the "back of the house" they receive no gratuities and/or tips – and are thus effectively deprived of their wages.

   v.  At all times material, RCCL's withholding of wages has been knowing, arbitrary, willful and/or unreasonable, and therefore without sufficient cause.  For instance:

   1.  RCCL implemented the "Performance Management Tool" and "back of the house" plan as a money saving scheme at the expense of the Stateroom Attendants;

   2.  As part of the "Evolution of Housekeeping," RCCL eliminated the positions and, thus, the cost of "Bell Attendants" and "Staff Attendants." These positions were previously tasked with the cleaning and sanitation of crewmember cabins. By phasing these positions out, and forcing Plaintiffs to take over these duties while they are sent to work on the "back of the house" without gratuities, RCCL financially benefited – incurring substantial savings from not having to pay for the work formerly performed by "Bell Attendants" and "Staff Attendants";

   3.  RCCL further implemented and designed the "Performance Management Tool" and "back of the house" plan so that at the end of every two week period there would always be enough Stateroom Attendants to perform the duties formerly assigned to "Bell Attendants," "Staff Attendants," and other phased out positions.

   vi.  All in all, Defendant's "Back of the House" scheme deprived Plaintiffs of their earned wages in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. Section §10504), and the General Maritime Law of the United States.

17. At all times material, Defendants violated the employment contract and Collective Bargaining Agreement by:

A. Requiring Plaintiffs to pay for helpers out of their own earned wages, and

B. Punishing, demoting and forcing Plaintiffs to work effectively without pay for two weeks or more at the "back of the house."

18. Defendants further acted in bad faith and in breach of the covenant of good faith and fair dealing by:

A. Requiring Plaintiffs to pay helpers out of their own earned wages.

B. Punishing, demoting and forcing Plaintiffs to work effectively without pay for two weeks or more at the "back of the house."

## CLASS ACTION ALLEGATIONS

19. This action is brought by Plaintiffs as a class action, on their own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

20. The class so represented by the Plaintiffs in this action, and of which Plaintiffs are members, consists of all current and former employees of Royal Caribean Cruises, LTD., employed at any time during the period of May 27, 2008 to the present, as "Stateroom Attendants" on RCCL's vessels who are covered by the Collective Bargaining Agreement between Royal Caribbean Cruises, LTD., and the Norwegian Seafarers' Union, in effect at any time between 2008 and the present, and who were discharged from their respective vessels whose voyage started or ended in U.S. Ports and Harbors.

21. The first class of employees were, and continue to be, subjected to illegal withholding

and delay of their wages, and nonpayment of their wages, as a result of the requirements imposed upon them by RCCL that they hire and pay helpers out of their own wages. These constitute a breach of the CBA, awhich RCCL's current and former employees are entitled to benefit from and are entitled to enforce its provisions thereunder.  RCCL's policies further constitute violations of the Seaman's Wage Act, (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States. Finally, RCCL's policies constitute a breach of the Covenant of Good Faith and Fair Dealing.

22. The second class of employees were, and continue to be, subjected to illegal withholding, delay, and nonpayment of their wages, as a result of the requirements imposed upon them by RCCL that they work effectively without pay during the time that they are assigned to work at the "back of the house." These constitute a breach of the CBA, as to which RCCL's current and former employees are entitled to benefit from and are entitled to enforce its provisions thereunder.  RCCL's policies further constitute violations of the Seaman's Wage Act (46 U.S.C. §10313, § 46 U.S.C. Section 10504), and the General Maritime Law of the United States. RCCL's policies further constitute "forced labor" and/or "peonage" pursuant to  18 U.S.C. §1595. Finally, RCCL's policies constitute a breach of the Covenant of Good Faith and Fair Dealing.

23. The exact number of members of the class is not known, but it is estimated that there are in excess of 2,000 members. The class is so numerous that joinder of all members is impracticable. This action satisfies the requirements of Rule 23(a)(1).

24. There are common questions of law and fact that relate to and affect the rights of each

member of the class and the relief sought is common to the entire class. The same or similar misconduct on the part of Defendant RCCL occurred involving each individual class member, and each seeks to recover for violations under the Seaman's Wage Act, (46 U.S.C. §10313, 46 U.S.C. § 10504), the General Maritime Law of the United States, for breach of the Plaintiffs' employment contracts and Collective Bargaining Agreements, for breach of the Covenant of Good Faith and Fair Dealing, and violations under 18 U.S.C. §1595 This action satisfies the requirement of Rule 23(a)(2).

25. The claims of Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, including Plaintiffs, depend upon a showing of the acts and omissions of Defendant RCCL, giving rise to the right of Plaintiffs to the relief sought herein. Defendant RCCL was at all times material engaged in a common course of conduct to the detriment of the class of Plaintiffs. This action satisfies the requirements of Rule 23(a)(3).

26. Plaintiffs are the representative parties for the class, and are able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiffs and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiffs are experienced and capable in the field of maritime claims for wages, including class actions, and have successfully represented claimants in other litigation of this nature. One of the attorneys designated as counsel for Plaintiffs, Jason R. Margulies, will actively conduct and be responsible for Plaintiffs case herein. This action satisfies the requirement of Rule 23(a)(4).

27. This action is properly maintained as a class action under Rule 23(b)(3) in as much as questions of law and fact common to the members of the class predominate over any

questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of controversy. In support of the forgoing, Plaintiffs allege that common issues predominate and can be determined on a class-wide basis regarding: a) RCCL's policies in violation of the terms of the Collective Bargaining Agreement pertaining to the wages of the class members, b) RCCL's policy of requiring Plaintiffs and the members of the class to hire extra workers such that they were denied their full wages, c) RCCL's policy of assigning Plaintiffs and the members of the class unreasonable amounts of work within unreasonably short time frames, such that the work could not feasibly be completed without helpers, d) RCCL's policy of requiring Plaintiffs to work without pay during the time that they are assigned to work at the "back of the house," e) RCCL's policies in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), 18 U.S.C. §1595, and the General Maritime Law of the United States, and e) RCCL's policies in breach of the Covenant of Good Faith and Fair Dealing.

28. A class action is superior to other available methods for the fair and efficient adjudication of controversy because it is highly unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiffs are not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with RCCL in a single forum, and individual actions by class members, many of whom are foreign nationals would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

## COUNT I- DECLARATORY DECREE

29. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 28 as though alleged originally herein.

30. This count seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, and other similar legislation.  Plaintiffs seek a declaration holding that the arbitration provision in RCCL's employment agreements and collective bargaining agreements with Stateroom Attendants is void as against public policy pursuant to the Eleventh Circuit's decision in *Thomas v. Carnival Corp.,* 573 F. 3d 1113 (11th Cir. 2009) (holding that an arbitral provision containing a foreign choice of law clause in a seaman's contract is void as against public policy).

31. The employment contract between the Plaintiffs, seafarers, and the Defendant, RCCL, makes provision for arbitration in case of a dispute. They are all identical in relationship to the arbitration provision.

32. The arbitration clause contained within the employment agreement provides, in part:

ARBITRATION

1. All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. ("The Convention"), except as provided by any government mandated contract.
…
3.   All arbitrations must take place in Miami, Florida, Oslo, Norway, or in any Location agreed by the Owners/Company and the Union or the representative of the Seafarer. **The procedural and substantive law of the**

> **arbitration shall be the _law of Norway_ without regard to conflict of law principles**.
>
> …
>
> E. Governing Law
>
> Any grievance or other dispute shall be governed in accordance with the _laws of Norway_, without regard to any conflicts of laws principles.

(Emphasis Added).

33. The employment agreements also expressly provides that the "Collective Bargaining Agreement between the Company and the Union is incorporated into and made part of" Plaintiffs Employment Agreement.

34. The Collective Bargaining Agreement (hereafter referenced to as "CBA") includes the terms of Plaintiffs' employments, including wages and dispute resolution.

35. The collective bargaining agreement contains a mandatory arbitration provision virtually identical to the one in Plaintiffs' employment contract.

36. Both the contract and CBA, therefore, provide that **the substantive law of any arbitration would be the law Norway.**

37. Based on the arbitration clause found in Plaintiffs' employment contracts and CBAs, if Plaintiffs were to arbitrate their disputes, they would be required to do so in a foreign venue (arbitration), under foreign law (Norwegian law).

38. Because _all_ of Plaintiff's causes of action are U.S. statutory remedies (which Norwegian law does not recognize), sending the case to arbitration would completely deprive Plaintiffs of their statutory rights under U.S. law. As shown below, for this very reason, under binding Eleventh Circuit precedent in _Thomas v. Carnival_, 573 F. 3d 1113 (11th Cir. 2009), and Article V(2)(b) of the New York Convention, RCCL's arbitration provision is unenforceable, null and void as against public policy.

39. Article V(2)(b) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208, commonly referred to as the New York Convention, allows courts to refuse "recognition and enforcement of an arbitral award … if the competent authority in the country where recognition and enforcement is sought finds that … [t]he recognition or enforcement of the award would be contrary to the public policy of that country."

40. In *Thomas v. Carnival Corp.,* 573 F. 3d 1113 (11th Cir. 2009), the Eleventh Circuit found that the prospective-waiver doctrine, originating from the United States Supreme Court case of *Mitsubishi Motors Corp., v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985), applied to, and voided, an arbitral provision (very similar to the one here) contained in a seaman's employment contract that mandated arbitration in a foreign venue (the Phillippines) under foreign law (Panamanian law). Taking into consideration the Supreme Court's condemnation of arbitration agreements which prospectively waive a party's statutory remedies, the Eleventh Circuit, in *Thomas*, concluded that the arbitration clause's foreign choice-of-law provision (requiring that the arbitrator apply Panamanian law) effectively waived the plaintiff's rights under the Seaman's Wage Act, 46 U.S.C. §10313. As a result, applying Article V(2)(b) as an affirmative defense to the application of the Convention, the arbitration agreement was found to contravene public policy, and therefore, rendered null and void as it related to plaintiff's Seaman's Wage Act claim. *See id.,* at 1124.

41. Following *Thomas*, the Southern District of Florida has specifically and unequivocally declared cruise line arbitral provisions such as RCCL's (in its seamen's' contracts and collective bargaining agreements) null and void as against public policy. *See Badkar v.*

*NCL Bahamas(Ltd.)*, Case No. 10-24089-CIV-JORDAN (S.D. Fla. 2011) [D.E. 23] (holding Cruise Lines' arbitral provision, containing foreign choice of law provision, void as against public policy pursuant to *Thomas*, for depriving seafarer Plaintiff of statutory rights under U.S. law); *Sivanandi v. NCL (Bahamas) Ltd.*, Case No. 10-202296-CIV-UNGARO, 2010 WL 1875685 at *4 (S.D. Fla. 2010) (same); *Williams v. NCL (Bahamas) Ltd.,* Case No. 10-22046-CIV-LENARD (S.D. Fla. 2010) (same); *Maxwell v. NCL Bahamas Ltd.*, Case No. 11-21164 (S.D. Fla. 2011) [D.E. 9] (same); *Watt v. NCL (Bahamas) Ltd.*, 2010 U.S. Dist. LEXIS 67745 10-20293 (S.D. Fla. 2010) (Chief Judge Moreno) (same); *Sivkumar Sivanandi v. NCL (Bahamas) Ltd.*, Case No. 10-20296, 2010 U.S. Dist. LEXIS 54859 (S.D. Fla. 2010) (Hon. Judge Ungaro) (same); *St. Hugh Williams v. NCL (Bahamas) Ltd., Case No. 10-22046* (S.D. Fla. 2011) (Hon. Judge Lenard) [D.E. 46] (same); *Govindarajan v. Carnival Corporation*, 09-23386-CIV (Judge Jordan) (S.D. Fla. 2010) [D.E. 23] (same); *Kovacs v. Carnival Corporation,* 09-22630, 2009 U.S. Dist. LEXIS 122255 (S.D. Fla. 2009) (Judge Huck) (same); *Pavon v. Carnival Corp.*, Case No. 09-22935-CV-LENARD (S.D. Fla. Jan. 20, 2010) (Judge Lenard) (same); *Ruiz v. Carnival Corporation,* Case No. 10-20296, *2010 U.S. Dist. LEXIS 130343* (S.D. Fla. 2010) (Hon. Judge Cooke) (same); *Morocho v. Carnival Corporation,* 10-21715-CIV-Martinez-Brown (S.D. Fla. 2010) (Hon. Judge Martinez) (same); *Kanuric v. Carnival Corporation*, 10-21559 [D.E. 21] (S.D. Fla. 2011) (Hon. Judge Moreno) and *Odom  v. Celebrity Cruises*, 10-23086 [D.E. 49] (S.D. Fla. 2011) (Hon. Judge Jordan)

42. Like the seafarers in *Thomas* and its progeny, the Plaintiffs here have Congressional statutory rights under U.S. law provided by the Seaman's Wage Act, 46 U.S.C. Section

10313 and 46 U.S.C. Section 10504, and fundamental rights under the General Maritime Law of the United States.

43. The Kingdom of Norway and Norwegian law do not recognize Plaintiffs' U.S. statutory rights under the Seaman's Wage Act (46 U.S.C. §10313 and 46 U.S.C. § 10504), nor Plaintiffs' other fundamental rights under the General Maritime Law of the United States.

44. Consequently, the substantive law chosen by Defendant RCCL in the relevant arbitration clause strips Plaintiffs of their statutory and legal rights under U.S. law.

45. All in all, Defendant RCCL's foreign forum selection clause (arbitration)[2] and a foreign choice-of-law clause (Norwegian law), contained in its arbitral provision, operate in-tandem to prospectively waive Plaintiffs' U.S. statutory rights under the Seaman's Wage Act (46 U.S.C. §10313 and 46 U.S.C. §10504), and under the General Maritime Law of the United States.

---

[2] *See Odom v. Celebrity Cruises*, 10-23086 [D.E. 49] (S.D. Fla. 2011) (Hon. Judge Jordan):

Celebrity attempts to distinguish *Thomas* by underscoring that the arbitration provision here allows for arbitration in Miami. Therefore, Celebrity argues, the choice-of-forum clause is not working in tandem with the choice-of-law clause (Italian law) to waive Mr. Odom's statutory rights. But a "forum" does not, as Celebrity believes, mean location exclusively. Forum can mean, rather, "[a] court or other judicial body; a place of jurisdiction." BLACKS LAW DICTIONARY at 680. In other words, a clause that demands arbitration without a specified location is also a choice-of-forum clause, for it selects one forum (an arbitrator) over another (a court). The arbitration provision here, which selects arbitration (forum) applying Italian law (law), uses a choice-of-forum clause and choice-of-law clause, in tandem, to waive Mr. Odom's statutory rights. The language in *Thomas* bolsters this reasoning. The panel focused on what law would apply at arbitration: "The important question, however, is choice of law: What law will apply in that *arbitral forum?" Thomas*, 573 F. 3d at 1121 (emphasis added). And the Eleventh Circuit later recognized that the agreement there chose arbitration as its forum. *See id,* at 1124. Celebrity cannot, therefore, successfully distinguish the arbitration provision here – which focuses an arbitrator to apply foreign law –from the arbitration agreement in *Thomas-* which forced an arbitrator to apply foreign law.

46. Therefore, pursuant to *Thomas v. Carnival Corp.,* 573 F. 3d 1113 (11th Cir. 2009) and its progeny, RCCL's arbitral provision in its employment contracts and collective bargaining agreements with Plaintiffs, are null and void as against public policy.

**WHEREFORE**, Plaintiffs request a declaratory decree rendering the arbitration provision in RCCL's employment contracts and collective bargaining agreements with Plaintiffs, null and void as against public policy for depriving Plaintiffs of their rights under U.S. law. Plaintiffs' further request a declaratory decree that, in light of the null and void arbitration agreements, Plaintiffs are not obligated to arbitrate, but rather can pursue their claims in Federal Court.

### COUNT II – WAGES AND PENALTIES
### 46 USCA SECTION 10313

47. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 28 as though alleged originally herein.

48. At all times material hereto, Plaintiffs were employed as seamen in the service of Defendant RCCL's vessels.

49. At all times material hereto, Plaintiffs were employed in vessels engaged in voyages between a U.S. port and a foreign (non-U.S.) port and/or between U.S. ports in the Atlantic and Pacific Oceans.

50. While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

51. The Collective Bargaining Agreement (hereafter referenced to as "CBA") includes the terms of Plaintiffs' employments, including wages.

52. Pursuant to their agreements with Defendant, Plaintiffs have a right to their full wages.

53. At all times material, RCCL has had a policy of refusing to allow the Plaintiffs to keep their full wages, such that RCCL de facto refused to pay full wages, in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

  A.  RCCL's policy consists in requiring the Plaintiffs to hire extra workers and to pay them out of Plaintiffs' own wages, such that Plaintiffs are denied their full wages. At all times material hereto:

    i.  Defendant knowingly allocated Plaintiffs an unreasonable amount of work to be accomplished within an unreasonable timeframe;

    ii.  Defendant knew or should have known that Plaintiffs, alone, would not be able to finish their assigned tasks within the timeframe given by Defendant;

    iii.  Defendant knew that, as a result of the unreasonable workload given to Plaintiffs and as a result of their unreasonable request to accomplish the task within Defendant's allotted timeframe, Plaintiffs were forced to, and did, hire help which plaintiffs were forced to pay out of their own wages, despite protesting the situation to their superiors;

    iv.  Defendant knew that because of the unreasonable workloads and timeframes, Stateroom Attendants could not finish the work on embarkation days without helpers;

    v.  Defendant knew that helpers were necessary for Stateroom Attendant to finish the work on embarkation days;

vi.  Defendant did not pay for Plaintiffs helpers, but instead, required Plaintiffs to pay for their helpers out of their own earned wages;

vii.  Every contract period Plaintiffs were deprived of thousands of dollars as a result of being required to hire and pay helpers;

viii.  Defendants knew that the helpers earnings would, consequently, decrease the Plaintiffs' earnings;

ix.  With knowledge that the work of Stateroom Attendants could not be completed without the use of helpers, and that Plaintiffs paid for helpers out of their own earned wages; RCCL conducted studies and analyses to reduce the workload of Stateroom Attendants so as to eliminate the need for assistance;

x.  The practice of hiring and paying for helpers was not only condoned but explicitly required by RCCL;

xi.  By requiring Plaintiffs' to use and pay for helpers, RCCL financially benefited – incurring substantial savings from not having to pay for the number of workers required to accomplish the tasks assigned to the Stateroom Attendants in the time allotted;

xii.  All in all, Defendant's scheme deprived Plaintiffs of their earned wages in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

xiii.  At all times material, RCCL's withholding of wages was knowing, arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

B.  Additionally, starting on or about 2008, Defendant RCCL implemented another scheme to deprive Plaintiffs of their wages. Defendant's scheme consists in

requiring and/or forcing Plaintiffs to work, effectively without pay, in other sections of the ship. At all times material hereto:

i.  Defendant implemented a plan referred to as "The Evolution of Housekeeping." In doing so, Defendant created a rating system for Stateroom Attendants. Under the rating system, referred to as "Performance Management Tool," every two weeks, RCCL scores and/or grades Stateroom Attendants;

ii.  The Stateroom Attendants with the lowest ranking scores are punished, demoted and forced to work, effectively without pay, for two weeks or more;

iii.  During the demotion period, referred to as working at the "back of the house," RCCL requires Plaintiffs to clean and sanitize the rooms of other crewmembers.

iv.  Because, unlike passengers, crewmembers do not tip or give gratuities to people cleaning their rooms; during the entire time that Stateroom Attendants are sent to work on the "back of the house" they receive no gratuities and/or tips – and are thus effectively deprived of their wages.

v.  RCCL's withholding of wages has been at all times material knowing, arbitrary, willful and/or unreasonable, and therefore without sufficient cause.  For instance:

1.  RCCL implemented the "Performance Management Tool" and "back of the house" plan as a money saving scheme at the expense of the Stateroom Attendants.

2.  As part of the "Evolution of Housekeeping," RCCL eliminated the positions and, thus, the cost of "Bell Attendants" and "Staff." These positions were previously tasked with the cleaning and sanitation of crewmember cabins. By phasing these positions out, and forcing Plaintiffs to take over these duties while

they are sent to work on the "back of the house" without gratuities, RCCL financially benefited – incurring substantial savings from not having to pay for the work formerly performed by "Bell Attendants" and "Staff Attendants";

3. RCCL further implemented and designed the "Performance Management Tool" and "back of the house" plan so that at the end of every two week period there would always be enough Stateroom Attendants to perform the duties formerly assigned to "Bell Attendants," "Staff," and other phased out positions.

54. Defendant has sole custody and control of Plaintiffs' wage records and personnel file. These documents are needed by Plaintiffs to show exact dates and amounts with respect to earned wages owed to Plaintiff and deductions made from such earned wages.

55. At the time of Plaintiffs' discharges, Plaintiffs demanded all of their wages, including reimbursement of deductions made from Plaintiff's earned wages.

56. At all times material, RCCL's withholding of wages was arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

57. The scheme set up by Defendant which forced Plaintiffs to make payments out of their earned wages to the helpers, amounts to an illegal deduction from Plaintiffs' earned wages. These deductions were made without sufficient cause.

58. The scheme set up by Defendant which demoted Plaintiffs and forced them to work without gratuities for two weeks or more, amounts to an illegal deduction from Plaintiffs' earned wages. These deductions were made without sufficient cause.

59. Under 46 U.S.C. Section 10313, Plaintiffs are entitled to their earned wages, deductions and two days wages for each day payment is delayed.

**WHEREFORE**, Plaintiffs demands judgment against Defendant for damages, wage penalties, attorney's fees and interest as permitted by law. Plaintiffs further demand trial by jury.

<u>**COUNT III –WAGES AND PENALTIES**</u>
<u>**46 USCA SECTION 10504**</u>

60. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 28 as though alleged originally herein.

61. At all times material hereto, Plaintiffs were employed as seamen in the service of Defendant's vessels.

62. At all times material, Plaintiffs worked in vessels engaged in voyages between ports in one U.S. State and ports in another U.S. State.

63. While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

64. The Collective Bargaining Agreement (hereafter referenced to as "CBA") includes the terms of Plaintiffs' employments, including wages.

65. Pursuant to their agreements with Defendant, Plaintiffs have a right to their full wages.

66. At all times material, RCCL has had a policy of refusing to allow the Plaintiffs to keep their full wages, such that RCCL de facto refused to pay full wages, in violation of the Seaman's Wage Act (46 U.S.C. § 10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

   A. RCCL's policy consists in requiring the Plaintiffs to hire extra workers and to pay them out of Plaintiffs' own wages, such that Plaintiffs are denied their full wages. At all times material hereto:

i. Defendant knowingly allocated Plaintiffs an unreasonable amount of work to be accomplished within an unreasonable timeframe;

ii. Defendant knew or should have known that Plaintiffs, alone, would not be able to finish their assigned tasks within the timeframe given by Defendants;

iii. Defendant knew that, as a result of the unreasonable workload given to Plaintiffs and as a result of their unreasonable request to accomplish the task within Defendant's allotted timeframe, Plaintiffs were forced to, and did, hire help which Plaintiffs were forced to pay out of their own wages, despite protesting the situation to their superiors;

iv. Defendant knew that because of the unreasonable workloads and timeframes, Stateroom Attendants could not finish the work on embarkation days without helpers;

v. Defendant knew that helpers were necessary for Stateroom Attendant to finish the work on embarkation days;

vi. Defendant did not pay for Plaintiffs helpers, but instead, required Plaintiffs to pay for their helpers out of their own earned wages;

vii. Every contract period Plaintiffs were deprived of thousands of dollars as a result of being required to hire and pay helpers;

viii. Defendant knew that the helpers earnings would, consequently, decrease the Plaintiffs' earnings;

ix. With knowledge that the work of Stateroom Attendants could not be completed without the use of helpers, and that Plaintiffs paid for helpers out of their own

earned wages, RCCL conducted studies and analyses to reduce the workload of Stateroom Attendants so as to eliminate the need for assistance;

x. The practice of hiring and paying for helpers was not only condoned but explicitly required by RCCL;

xi. By requiring Plaintiffs' to use and pay for helpers, RCCL financially benefited – incurring substantial savings from not having to pay for the number of workers required to accomplish the tasks assigned to the Stateroom Attendants in the time allotted;

xii. All in all, Defendant's helper scheme deprived Plaintiffs of their earned wages in violation of the Seaman's Wage Act,  46 U.S.C. Section 10313, 46 U.S.C. Section 10504, and the General Maritime Law of the United States.

xiii. At all times material, RCCL's withholding of wages was knowing, arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

B. Additionally, starting on or about 2008, Defendant RCCL implemented another scheme to deprive Plaintiffs of their wages. Defendant's scheme consists in requiring and/or forcing Plaintiffs to work, effectively without pay, in other sections of the ship. At all times material hereto:

i. Defendant implemented a plan referred to as "The Evolution of Housekeeping." In doing so, Defendant created a rating system for Stateroom Attendants. Under the rating system, referred to as "Performance Management Tool," every two weeks, RCCL scores and/or grades Stateroom Attendants.

ii. The Stateroom Attendants with the lowest ranking scores are punished, temporarily demoted and forced to work, effectively without pay, for two weeks or more.

iii. During the demotion period, referred to as working at the "back of the house," RCCL requires Plaintiffs to clean and sanitize the rooms of other crewmembers;

iv. Because, unlike passengers, crewmembers do not tip or give gratuities to people cleaning their rooms; during the entire time that Stateroom Attendants are sent to work on the "back of the house" they receive no gratuities and/or tips – and are thus effectively deprived of their wages.

v. At all times material, RCCL's withholding of wages was knowing, arbitrary, willful and/or unreasonable, and therefore without sufficient cause. For instance:

1. RCCL implemented the "Performance Management Tool" and "back of the house" plan as a money saving scheme at the expense of the Stateroom Attendants;

2. As part of the "Evolution of Housekeeping," RCCL eliminated the positions and, thus, the cost of "Bell Attendants" and "Staff Attendants." These positions were previously tasked with the cleaning and sanitation of crewmember cabins.

3. By phasing these positions out, and forcing Plaintiffs to take over these duties while they are sent to work on the "back of the house" without gratuities, RCCL financially benefited – incurring substantial savings from not having to pay for the work formerly performed by "Bell Attendants" and "Staff Attendants;"

4. RCCL further implemented and designed the "Performance Management Tool" and "back of the house" plan so that at the end of every two week period there

25

would always be enough Stateroom Attendants to perform the duties formerly assigned to "Bell Attendants," "Staff Attendats," and other phased out positions.

67. Defendant has sole custody and control of Plaintiffs' wage records and personnel file. These documents are needed by Plaintiffs to show exact dates and amounts with respect to earned wages owed to Plaintiff and deductions made from such earned wages.

68. At the time of Plaintiffs' discharges, Plaintiffs demanded all of their wages, including reimbursement of deductions made from Plaintiff's earned wages.

69. At all times material, RCCL's withholding of wages was arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

70. The scheme set up by Defendant which forced Plaintiffs to make payments out of their earned wages to the helpers, amounts to an illegal deduction from Plaintiffs' earned wages. These deductions were made without sufficient cause.

71. The scheme set up by Defendant which demoted Plaintiffs and forced them to work without gratuities for two weeks or more, amounts to an illegal deduction from Plaintiffs' earned wages. These deductions were made without sufficient cause.

72. Under 46 U.S.C. Section 10313, 46 U.S.C. Section 10504, Plaintiffs are entitled to their earned wages, deductions and two days wages for each day payment is delayed.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for damages, wage penalties, attorney's fees and interest as permitted by law. Plaintiffs further demands trial by jury.

### COUNT IV – BREACH OF CONTRACT

73. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 28 as though alleged originally herein.

74. Under the General Maritime Law, Plaintiffs may bring *both* a Seaman's Wage Act claim and a breach of contract claim – as the two claims are not duplicative and the remedies of the two are not identical. *See Brown v. Royal Caribbean Cruises, Ltd.,* No. 99-11774, 2000 WL 34449703 *1, *9 (S.D.N.Y. Aug. 24, 2000). *See also Jose v. M/V Fir Grove,* 801 F. Supp. 358 (D. Org. 1992) (holding that Plaintiffs were allowed to claim breach of contract against Defendants - not subject to the Seaman's Wage Act's penalty provisions - based on defendant's failure to abide by CBA terms); *Borcea v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144 (S.D.N.Y. 2002) (action for breach of contract under seafarers' CBAs as well as Seaman's Wage Act for federal statutory wage penalties); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (same).

75. At all times material hereto, Plaintiffs were employed as seamen in the service of Defendants' vessels.

76. While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

77. The Collective Bargaining Agreement (hereafter referenced to as "CBA") includes the terms of Plaintiffs' employments, including wages and dispute resolution.

78. The CBA was negotiated between the Norwegian Seaman's Union, on behalf of Plaintiffs and others similarly situated, and the Defendant.

79. Pursuant to their agreements with Defendant RCCL, Plaintiffs have a right to their full wages.

80. At all times material, however, Defendant RCCL had a policy of refusing to allow the Plaintiffs to keep their full wages, such that RCCL de facto refused to pay full wages in violation of Plaintiffs' employment contracts and CBAs.

81. Defendant RCCL violated the employment contract and CBA by forcing Plaintiffs to pay helpers out of their own earned wages.

82. Defendant RCCL violated the employment contract and CBA by punishing, demoting and forcing Plaintiffs to work, effectively without pay, for two weeks or more.

83. Defendant RCCL did not perform its duties under the contract.

84. Defendant RCCL acted in bad faith and in breach of the Plaintiffs contracts and collective bargaining agreements.

85. The breaches of  the Plaintiffs' employment contracts and CBAs  are direct and legal causes of Plaintiffs' damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for damages, wage penalties, attorney's fees and interest as permitted by law. Plaintiffs further demand trial by jury.

### COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

86. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 28 as though alleged originally herein.

87. Every contract includes a duty of good faith and fair dealing implied by law, which requires a party to perform in a manner that will protect the other party's reasonable expectations under the contract.

88. Defendant did not perform its duties under the contract in accordance with the implied duty of good faith and fair dealing.

89. Under the contract, Defendant required Plaintiffs to perform their duties as Stateroom Attendants. Plaintiffs did perform their part of the contract.

90. Under the contract and in exchange for performance, Defendant was to pay Plaintiffs their full earned wages. Defendant knowingly failed to pay Plaintiffs' earned wages, in breach of the employment agreement and in breach of the CBA.

91. Defendant knowingly and in bad faith forced Plaintiffs to hire and pay helpers, forcing them to receive less than their earned wages.

92. Defendant further knowingly and in bad faith punished, demoted and forced Plaintiffs to work, effectively without pay, for two weeks or more.

93. Defendant did not perform in accordance with the implied duty of good faith and fair dealing, when it knowingly and willfully knew Plaintiffs were not receiving their full earned wages.

94. Defendant's breaches of implied duty of good faith and fair dealing are the direct and legal causes of Plaintiffs' damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for damages, wage penalties, attorney's fees and interest as permitted by law. Plaintiffs further demand trial by jury.

## COUNT VI – FORCED LABOR, PEONAGE
## 18 U.S.C. §1595

95. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 28 as though alleged originally herein.

96. Pursuant to 18 U.S.C. §1595 (a) an individual who is a victim of "forced labor" and/or "peonage" may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act of forced labor and/or peonage) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

97. At all times material, RCCL as ship owner, exercised complete custody and/or control over Plaintiffs - seafarers who work isolated at sea and far from their home countries.

98. Starting on or about 2008, Defendant RCCL implemented another scheme to deprive Plaintiffs of their wages. Defendant's scheme consists in requiring and/or forcing Plaintiffs to work, effectively without pay, in other sections of the ship. At all times material hereto:

   i. Defendant implemented a plan referred to as "The Evolution of Housekeeping." In doing so, Defendant created a rating system for Stateroom Attendants. Under the rating system, referred to as "Performance Management Tool," every two weeks, RCCL scores and/or grades Stateroom Attendants.

   ii. The Stateroom Attendants with the lowest ranking scores are punished, temporarily demoted and forced to work without pay for two weeks or more.

   iii. During the demotion period, referred to as working at the "back of the house," RCCL requires Plaintiffs to clean and sanitize the rooms of other crewmembers. Because, unlike passengers, crewmembers do not tip or give gratuities to people cleaning their rooms; during the entire time that Stateroom Attendants are sent to

work on the "back of the house" they receive no gratuities and/or tips – and are thus effectively deprived of their wages.

iv.  RCCL knowingly benefited, financially from the "Performance Management Tool" and "back of the house" plan. A scheme which  RCCL knew or should have known constituted forced labor and/or peonage. For instance:

1.  RCCL implemented the "Performance Management Tool" and "back of the house" plan as a money saving scheme at the expense of the Stateroom Attendants;

2.  As part of the "Evolution of Housekeeping," RCCL eliminated the positions of "Bell Attendants" and "Staff." These positions were previously tasked with the cleaning and sanitation of crewmember cabins. By phasing these positions out, and forcing Plaintiffs to take over these duties while they are sent to work on the "back of the house" without pay, RCCL financially benefited – incurring substantial savings from not having to pay for the work formerly performed by "Bell Attendants" and "Staff Attendants";

3.  RCCL further implemented and designed the "Performance Management Tool" and "back of the house" plan so that at the end of every two week period there would always be enough Stateroom Attendants to perform the duties formerly assigned to "Bell Attendants," "Staff Attendants," and other phased out positions.

99. At all times material, by implementing the "Performance Management Tool" and "back of the house" plan:

A.  RCCL intended and, in fact coerced Stateroom Attendants to work effectively without pay, subjecting them to involuntary servitude;

B.  RCCL's wrongful conduct further intended, and in fact caused, Stateroom Attendants to believe that they had no alternative but to perform the forced labor;

C.  RCCL knowingly benefited financially from the coerced labor and/or involuntary servitude of Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for damages, attorney's fees and interest as permitted by law. Plaintiffs further demand trial by jury.

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
Attorney for Plaintiff
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305)  373-3016
Facsimile: (305) 373-6204
cllinas@lipcon.com

By:  /s/ *Carlos Felipe Llinás Negret*
CARLOS FELIPE LLINÁS NEGRET
FLA. BAR. NO. 73545