# EXHIBIT E
## To Faso Declaration

July 1, 2009

# AGREEMENT

# BETWEEN

# ROYAL CARIBBEAN CRUISES LTD.

# AND

# NORWEGIAN SEAFARERS' UNION

# FOR

# MARINE OFFICERS
# AND
# DECK & ENGINE RATINGS
# AND
# RIDING CREW
# AND
# HOTEL PERSONNEL

# SERVING ON CRUISE VESSELS
# UNDER THE
# ROYAL CARIBBEAN INTERNATIONAL
# BRAND

# Effective July 1, 2009

July 1, 2009

# INDEX

Article 1 --    Application
Article 2 --    Employment Commencement Expenses
Article 3 --    Duration of Employment
Article 4 --    Termination of Employment
Article 5 --    Pay and Working Hour Rules
Article 6 --    Work and Pay of Marine Officers with totally Consolidated Wages
Article 7 --    Work and Pay of Marine Officers with partially Consolidated Wages
Article 8 --    Working Hours and Pay of Deck and Engine Ratings and Riding Crew
Article 9 --    Working Hours and Pay of Hotel Personnel
Article 10 --   Social Program Compensation
Article 11 --   Retirement Plan
Article 12 --   Allotments
Article 13 --   Bank Transfers
Article 14 --   Repatriation
Article 15 --   Compassionate Leave
Article 16 --   Fair Treatment Polices
Article 17 --   Fire Squads and Mobile Groups
Article 18 --   Manning
Article 19 --   Rest Period
Article 20 --   Teaching and Training
Article 21 --   Transfer of Seafarers
Article 22 --   Cargo Handling
Article 23 --   Medical Attention
Article 24 --   Sick Pay and Maintenance
Article 25 --   Paid Leave
Article 26 --   Maternity
Article 27 --   Loss of Life in Service
Article 28 --   Disability
Article 29 --   Crew's Effects
Article 30 --   Seafarer Food, Accommodation, and Amenities
Article 31 --   Service in Warlike Operations Areas
Article 32 --   Insurance Cover
Article 33 --   Union Fees, Welfare Fund and Representation of Seafarers
Article 34 --   Statement of Fair Treatment, Grievance and Dispute Resolution Procedure
Article 35 --   Arbitration Procedure
Article 36 --   Construction
Article 37 --   Severability Clause
Article 38 --   Amendments to and Duration of the Agreement

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK &
ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN
INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

## Article 1 - Application

A)      This Collective Bargaining Agreement ("the Agreement") between Royal Caribbean Cruises Ltd. and RCL (UK) Ltd. (herein after called "the Owners/Company") and the Norwegian Seafarers' Union (herein after called "the Union") sets out the standard terms and conditions applicable to all Marine Officers and Deck and Engine Ratings, Riding Crew and Hotel Personnel (hereinafter called "Seafarers") employed on board vessels operated by the Royal Caribbean International brand. A list of the ranks and positions covered by this Agreement is contained in the Wage Tables attached to the original signed version of the Agreement. A Seafarer may review the wage table for his or her position in the HR Center.

B)      This Agreement does not apply to concessionaire personnel, independent contractors, vendors or other similar personnel including, but not limited to, any persons working in the following departments: Retail, Photo, Spa, Art Auction, Entertainment Concessions and Ship Medical Personnel.

C)      This Agreement is applicable and of full force and effect whether or not the Owners/Company have entered into individual contracts of employment ("the Employment Agreement") with any Seafarer.

D)      The Seafarers who are covered by the Agreement, the Union, and the Owners/Company shall refrain from strikes, work slow downs, lockouts and similar action at seas and in ports during the length of this Agreement.

E)      The Owners/Company is obligated to employ the Seafarers on the terms and conditions of this Agreement, and to enter into individual Employment Agreements with each Seafarer which incorporates or refers to the terms and conditions of this Agreement.

F)      A Seafarer to whom this Agreement is applicable, in accordance with Article 1.a. above, shall be covered by the Agreement with effect from the date on which the Seafarer signs on or the date from which this Agreement is effective as applicable, whether the Seafarer has signed the Ship's Articles or not, until the date on which the Seafarer signs off and/or the date until which, in accordance with this Agreement, the Owners/Company is liable for the payment of wages, whether or not the Employment Agreement is executed between the Seafarer and the Owners/Company and whether or not the Ship's Articles are endorsed or amended to include the terms of this Agreement.

3

July 1, 2009

## Article 2 – Employment Commencement Expenses

A)  Traveling Expenses in connection with commencement of service on board shall be paid by the Owners/Company, except with respect to travel expenses for Hotel personnel in Group C, New-hire Hotel Seafarers in any Group, Seafarers returning from Compassionate Leave and those Seafarers re-hired into the Company after a period of more than 12 months.

B)  Traveling expenses paid by the Owners/Company shall not include the Seafarer's baggage in excess of the normal weight allowed by the air carrier. Any such excess baggage shall be paid for by the Seafarer. In the event an airline charges a fee to check the first bag, the Owners/Company shall cover the first bag fee only up to a maximum of $25.00. The traveling expenses consist of airfare, train fare, bus fare, reasonable taxi fare, hotel expenses, and food expenses via gateway cities and itineraries in accordance with the Owners/Company's Travel Policy and listed in the Human Resources Office on board.

C)  The Seafarer is required to maintain and renew his or her medical certificate at the Seafarer's expense. The Seafarer is required to provide Owners/Company with full and complete information regarding his or her medical background and must submit to Pre-Employment Medical Examinations for both returning Seafarers and New Hire Seafarers as specified by Company Medical Guidelines which are also at the Seafarer's expense. The medical certificate/Pre-Employment Medical Examination shall have a validity period of two years. The Owners/Company may designate certain medical facilities for such examinations to take place and the Seafarer must have the examining physician complete the forms mandated by the Owners/Company or the exam results may not be accepted. Before signing on a ship for a new service period, the Seafarer will ensure that his or her medical certificate is valid for at least the length of the expected service period plus an additional thirty (30) days. The Seafarer must answer truthfully any question regarding his or her state of health and all known pre-existing medical conditions and must report all known pre-existing conditions. Any failure to honestly and accurately report a known pre-existing medical problem will exclude the Seafarer's right to obtain medical coverage for the undisclosed condition and disability/death compensation from the Owners/Company and may result in termination from employment. The Owners/Company shall provide emergency care and treatment for the undisclosed condition until the date the medical condition is stabilized and until repatriation, but no further compensation shall be due.

D)  Seafarers are required to maintain their licenses/certificates which are required for the Seafarers' individual position, including any seaman's book, in order and up

4

July 1, 2009

to date as well as to pay for any renewal or yearly dues on same. Upon request of the Owners/Company related to a positions change, promotion or other change in circumstances, Seafarers shall provide proof from a competent local authority in his or her home country that he or she has never been convicted of a felony or comparable serious crime.

E)   Seafarers shall pay the cost for the United States C1/D Visa and any other required personal travel documents. The Seafarer must ensure that his or her C1/D Visa is valid for at least one month beyond the expected sign off date. The Seafarer must also ensure that his or her Passport is valid for at least six (6) months beyond the expected sign off date. In the event the C1/D Visa or Passport is not valid for the appropriate length of time, the Seafarer will be repatriated at the Seafarer's expense. The Owners/Company shall pay the cost of any itinerary driven visas.

## Article 3 - Duration of Employment

A)   The Seafarer shall sign an Employment Agreement for a specific period ("the Service Period") not to exceed ten (10) months. The length of the Service Period is to be decided by the Owners/Company. The Service Period is an expectation of length of employment, not a contractual right, since the Owners/Company may terminate the Employment Agreement prior to the expiration of the Service Period without cause or notice, ref. Article 4.b. The Employment Agreement shall be automatically terminated in accordance with the terms of this Agreement at the first arrival of the Ship in port after the maximum ten (10) months' Service Period.

B)   New Hires:   The first ninety (90) days of service shall be considered a Probationary Period, which entitles the Owners/Company or its representative, i.e. the Master of the vessel, to terminate the Employment Agreement with or without cause effective immediately. In such cases, the Seafarer shall only be entitled to pay through the date of termination. The Probationary Period shall not apply to Seafarers previously engaged by the Owners/Company within one (1) year prior to being rehired.

C)   Promotions:   The first ninety (90) days of service after a promotion shall also be considered a Probationary Period, which entitles the Owners/Company or its representative, i.e. the Master of the vessel, to reduce the rank of the Seafarer to the Seafarer's previous position or to terminate the Employment Agreement with or without cause.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

D)   During the probation period, the Seafarer may terminate the Employment Agreement with or without notice effective immediately.

**Article 4 - Termination of Employment**

A)   The Seafarer shall be entitled to terminate the Employment Agreement:

1)   if the termination is as a result of the expiration of an agreed Service Period. Ref. Article 3;

2)   during the Probationary Period without cause or notice.

3)   by giving seven (7) days' written notice;

4)   if the vessel is due to sail into a warlike operations area as agreed by the parties.

5)   if the Ship is certified substandard in relation to the applicable provisions of the Safety of Life at Sea Convention (SOLAS) 1974, the International Convention on Loadlines (LL) 1966, the Standards of Training Certification and Watchkeeping Convention (STCW) 1978 as amended in 1995 and later, the International Convention for the Prevention of Pollution from Ships 1973, as modified by the Protocol of 1978 (MARPOL) or substandard in relation to ILO Convention No. 147, 1976, Minimum Standards in Merchant Ships, as supplemented by the Protocol of 1996, and remains so for a period of thirty (30) consecutive days provided that adequate living conditions and provisions are provided onboard or ashore.

B)   The Owners/Company shall be entitled to terminate the Employment Agreement without reason under the following conditions:

1)   Marine Officers: By giving thirty (30) days' advance written notice of termination or  Monthly Total Pay through the end of the employment contract period up to a maximum of thirty (30) days' Monthly Total Pay in lieu of notice.

2)   Deck and Engine Ratings & Riding Crew:  By giving thirty (30) days' advance written notice of termination or Monthly Total Pay through the end of the employment contract period up to a maximum of thirty (30) days' Monthly Total Pay in lieu of notice.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

    3)     <u>Hotel Personnel</u>: By giving thirty (30) day's advance written notice of termination or Monthly Total Pay through the end of the employment contract period up to a maximum of thirty (30) days Monthly Total Guaranteed Pay in lieu of notice;

C)     In the event that neither thirty (30) days' advance notice nor Monthly Total Pay through the end of the employment contract period up to a maximum of thirty (30) days' payment in lieu of notice has been given, then the Seafarer shall be entitled to:

    1)     <u>Marine Officers</u>: Payment of two (2) month's Monthly Total Pay within two (2) months of the termination date.

    2)     <u>Deck and Engine Ratings & Riding Crew</u>: Payment of two (2) months Monthly Total Pay within two (2) months of the termination date.

    3)     <u>Hotel Personnel</u>: Payment of two (2) months Monthly Total Guaranteed Pay.

D)     The Owners/Company shall be entitled to terminate the Employment Agreement of any Seafarer immediately (without notice) and shall be obligated to pay the Seafarer only through the date of termination, if the termination is a result of any of the following;

    1)     if the termination is as a result of the expiration of the expected Service Period;

    2)     the termination is taking place during the Probationary Period;

    3)     the termination is as a result of notice given by the Seafarer, ref. Article ().

    4)     the Seafarer is lawfully and properly dismissed as a consequence of the Seafarer's violation of shipboard rules and regulations and/or unsatisfactory job performance in accordance with the Progressive Discipline Policy. A copy of these policies is attached as Annex 5, 6 and 7 to the original signed version of this Agreement. Any Seafarer may access the policies at any time by visiting the HR Center on the vessel.

E)     Termination when misconduct is alleged:

    1)     Upon the misconduct of a Seafarer giving rise to a lawful entitlement to dismiss, the Owners/Company shall, prior to dismissal hold a hearing before a Committee consisting of at least three members with the Master

7

July 1, 2009

as Chairman and the Chief Engineer, Staff Captain and/or General Manager/Hotel Director as the other members. In addition to the above members there should be another member appointed by the Seafarer from among the remaining crew.

2) In special cases, the Committee may be appointed by the Owners/Company and the hearing held ashore if considered necessary in order to best evaluate the factual basis for the dismissal.

3) The Master shall question the Seafarer and any witnesses who might be able to provide information in the case. The remaining members of the committee and the Seafarer may ask questions either through the Master or directly with the Master's consent. If the Master makes a decision in the matter, he/she shall state the ground for it, and the decision shall be entered into the log book or the special protocol.

4) The HR Manager should, if possible, act as the Secretary to the Committee.

5) A decision on dismissal shall be made as soon as possible and, at the latest, within fourteen (14) days after the circumstances of the case became known to the Master, unless special conditions necessitate a longer time limit. The Seafarer shall, if possible, be informed of the decision immediately. A copy of the dismissal notice shall be provided to the Seafarer.

6) In the event that the above procedure has not been adhered to, the Seafarer shall be entitled to payment as stated in Article 4(C).

7) In the event that a Seafarer is dismissed because of misconduct, the Seafarer shall not be eligible for rehire.

F) For the purposes of this Agreement refusal by any Seafarer to obey an order to sail the Ship shall not amount to misconduct of the Seafarer where:

1) the Ship is certified unseaworthy /or otherwise substandard as defined in Article 4;

2) for any reason it would be unlawful for the Ship to sail;

3) the Seafarer refuses to sail into a warlike operations area.

8

July 1, 2009

## Article 5 – Pay and Working Hour Rules

### A) Pay and Wages, generally

1) The Seafarers covered by this Agreement are divided into four pay groups, 1: Marine Officers, 2: Deck and Engine Ratings, 3: Riding Crew, and 4: Hotel Personnel.

2) The wages of each Seafarer shall be calculated in accordance with this Agreement and the Wage Scales attached to the original signed Agreement, Annex 1: (Marine Officers) and Annex 2: (Deck and Engine Ratings), Annex 3: (Riding Crew), and Annex 4: (Hotel Personnel).

3) Unless otherwise prohibited by law, the Owners/Company may pay net wages by Direct Deposit or by check. The Seafarers shall receive their wages in two payments -- one payment made on the 15th of the month and the second made on or before the last day of the month -- with the amount paid each pay period being equal to one half of the Seafarer's guaranteed monthly wages minus lawful deductions. Any extra overtime compensation earned during a pay period shall be paid no later than the payday that falls on or before the 15th of the following month.

4) The only deductions from such wages shall be proper statutory deductions required by applicable national laws or regulations, or the relevant ILO Convention.

5) For the purpose of calculating wages for a partial month, every month shall be regarded as having thirty (30) days and every day shall be regarded as one-thirtieth (1/30) of a month. Under no circumstances shall a Seafarer be paid for any extra days over a full month due to a vessel transfer or any other reason.

6) Pay accrues from and including the day of sign on and up to and including the day of sign off. For purposes of calculating wages for a partial month, all Seafarers on Sign-on and Sign-off days shall be guaranteed a minimum of eight (8) hours pay even if the actual amount of hours worked is less than the eight (8) hours. For purposes of calculating wages for a partial month, at sign-off, sick days are not counted as hours worked.

9

July 1, 2009

**B)** **Work Rules, generally**

    1)    Any break, as approved by the Seafarers supervisor, during the work period of less than fifteen (15) minutes shall be counted as working time.

    2)    Overtime work will be performed at the direction of the Master or the Master's representative.

    3)    Overtime shall be recorded on a daily basis and signed by a designated supervisor at least once per week. A copy of the signed overtime record shall be given to the Seafarer, if requested by the Seafarer. The Owners/Company may use an electronic recording system.

    4)    The following days shall be considered Public Holidays at sea or in port: New Years Day (January 1), Maundy Thursday (Easter), Good Friday (Easter), Easter Sunday, Labour Day (May 1), Philippine Independence Day (June 12), Christmas Eve (December 24), Christmas Day (December 25) and New Year's Eve (December 31).

    5)    Seafarers shall perform all necessary service to maintain the safety of the ship, its crew, passengers and cargo and the lives of others aboard other vessels, including participating in the training for the use of fire equipment, other safety equipment, the use and manning of life boats and life rafts as determined solely by the Master. Such safety duties and training shall not count as working hours and Seafarers shall not be eligible for any overtime payments if such safety duties are performed outside the individual Seafarer's normal working hours.

**Article 6 --**    **Working Hours and Pay of Marine Officers with totally Consolidated Wages:**

A)    The Pay is stated in Annex 1 which is attached to the original signed Agreement only and available for review at the HR Center on board.

B)    The Marine Officers with totally consolidated wages are the Master, Staff Captain, Chief Engineer, Chief Engineer Jr., Chief Refrigeration Engineer, Chief Officer Safety, First Officer, First Engineer, Refrigeration Engineer, Safety Officer, and Chief Electrical Engineer, including their riding crew equivalents. The Seafarers in this group are salaried. Monthly Total Pay, stated in the Wage Scale (Annex 1) is compensation for all hours worked, including vacation/leave

July 1, 2009

pay, all overtime and irregular working hours, work on Saturdays, Sundays and on Public Holidays.

**Article 7 --**   **Working Hours and Pay of Marine Officers with partially Consolidated Wages:**

A)   The Pay is stated in Annex 1 which is attached to the original signed Agreement only and available for review at the HR Center on board.

B)   Monthly Total Pay for Marine Officers with partially consolidated wages consists of Monthly Basic Pay, Monthly Guaranteed Overtime Pay, and extra hourly overtime.

C)   The Monthly Basic Pay is for a forty-four (44) hour work week, and compensation for work between forty-four (44) and fifty-six (56) hours per week. The Monthly Basic Pay includes compensation for irregular working hours, work on Saturdays, Sundays and on Public Holidays.

D)   The Monthly Guaranteed Overtime Pay is overtime compensation covering the Guaranteed Overtime Hours as defined in the Wage Table for each position.

E)   The Hourly Overtime Rate is for overtime hours worked each month above the number of Guaranteed Overtime Hours.

F)   Overtime work will be performed at the direction of the Master or the Master's representative. Any overtime hours in addition to the Guaranteed Overtime will be compensated at the Hourly Overtime Rate stated in the Seafarer's Wage Scale.

**Article 8 --**   **Working Hours and Pay of Deck and Engine Ratings and Riding Crew:**

A)   The Pay for Deck and Engine Ratings is stated in Annex 2. The pay for Riding Crew is stated in Annex 3. Annex 2 and 3 are attached to the original signed Agreement only and available for review at the HR Center.

B)   Monthly Total Pay consists of Monthly Guaranteed Basic Pay, Monthly Guaranteed Initial Overtime Pay, Monthly Guaranteed Supplemental Overtime Pay, and Extra Hourly Overtime.

C)   Monthly Guaranteed Basic Pay is for a forty-four (44) hour workweek. Monthly Guaranteed Basic Pay includes compensation for irregular working hours, work

11

July 1, 2009

on Saturdays and Sundays. Monthly Guaranteed Initial Overtime Pay is for work between forty-four (44) hours and fifty-six (56) hours per week. Monthly Guaranteed Supplemental Overtime Pay is for an additional sixty-point-sixty-two (60.62) Guaranteed Overtime Hours per month. The total of monthly guaranteed pay is in return for 303.10 hours of work per month.

D)      The Extra Overtime Rate Per Hour is for work performed in addition to the sixty-point-six-two (60.62) Guaranteed Overtime Hours per month. The Extra Overtime Rate Per Hour is for work performed in addition to the 303.10 hours of work per month. The Extra Overtime Rate Per Hour is stated in the Wage Scale.

E)      Work on Public Holidays shall be covered by overtime compensation. The Monthly Supplemental Overtime Pay of sixty-point-sixty-two (60.62) hours per month may be used to cover Work on Public Holidays.

F)      Ratings are required to perform alternating service on deck and in the engine department when such duties and services are necessary to the trade and the vessel concerned. Compensation for such alternating service is included in the Monthly Guaranteed Pay.

**Article 9 --      Working Hours and Pay of Hotel Personnel:**

A)      The Pay for Hotel Personnel is stated in Annex 4 which is attached to the original signed Agreement only and available for review at the HR Center.

B)      The Hotel Personnel are divided into four sub-groups – Groups A, Group B, Group C, and Group D.

C)      For Group A, the Monthly Total Guaranteed Pay is pay for all hours worked, including irregular working hours, work on Saturdays, Sundays and on Public Holidays. Seafarers in this group are salaried and not entitled to overtime pay.

D)      For Group B, the Monthly Total Guaranteed Pay consists of Monthly Guaranteed Basic Pay, Monthly Guaranteed Initial Overtime Pay, Monthly Guaranteed Supplemental Overtime Pay, and Extra Hourly Overtime.

1)      Monthly Guaranteed Basic Pay is for a forty (40) hour workweek. Monthly Guaranteed Basic Pay includes compensation for irregular working hours, work on Saturdays, Sundays and on Public Holidays. Monthly Guaranteed Initial Overtime Pay is for work between forty (40) hours and fifty-six (56) hours per week. Monthly Guaranteed Supplemental Overtime Pay is for an additional sixty-point-sixty-two

12

July 1, 2009

(60.62) Guaranteed Overtime Hours per month. The total of the Monthly Guaranteed Pay is in return for 303.10 hours of work per month.

2) The Extra Overtime Rate Per Hour is for work performed in additional to the 303.10 hours of work per month. The Extra Overtime Rate Per Hour is stated in the Seafarers' Wage Scale.

E) For Group C, Monthly Total Guaranteed Pay consists of Monthly Guaranteed Basic Pay, Monthly Guaranteed Initial Overtime Pay, Monthly Guaranteed Supplemental Overtime Pay.

1) Monthly Guaranteed Basic Pay is for a forty (40) hour work workweek. Monthly Guaranteed Basic Pay includes compensation for irregular working hours, work on Saturdays, Sundays and on Public Holidays. Monthly Guaranteed Initial Overtime Pay is for work between forty (40) hours and fifty-six (56) hours per week. Monthly Guaranteed Supplemental Overtime Pay is for an additional sixty-point-sixty-two (60.62) Guaranteed Overtime Hours per month. The total of the Monthly Guaranteed Pay is in return for 303.10 hours of work per month.

2) The Extra Overtime Rate Per Hour is for work performed in addition to the 303.10 hours of work per month. The Extra Overtime Rate Per Hour is stated in the Seafarers' Wage Scale.

3) The Monthly Total Guaranteed Pay and Vacation Pay earned by Seafarers in this Group may be made up of Gratuities and/or Service Fees provided by passengers.

4) The Owners/Company shall be obligated to charge passengers a Service Fee or advise the passengers that Gratuities are suggested for Cabin Service, Dining Room Service, and Bar Service.

5) In recognition that other Seafarers often assist in the performance of services, any Gratuities and/or Service Fees paid to the Seafarer by the passengers, or collected by the Owners/Company for the Seafarers, shall be shared with other such Seafarers who assist with the service. The Owners/Company shall determine the Gratuity/Service Fee sharing requirements at its sole discretion and these requirements shall be mandatory. Gratuity/Service Fee requirements will be published and available to the Seafarers in the HR Center. The Owners/Company shall also set requirements for the timing and payment of Gratuity/Service Fees to the Seafarers at its sole discretion. These requirements will also be

13

July 1, 2009

available for review by the Seafarer in the HR Center. The Union must be informed regarding the sharing requirements and any changes thereto.

6) For Group C, the Owners/Company guarantee that the Monthly Total Guaranteed Pay and Vacation Pay shall not be less than $1050.00 per month and pro-rated for partial months.

7) If, in any month, the total income earned by a Seafarer in this Group is below the amount specified in Art. 9(E)(6) , upon notification and accounting, the Seafarer shall be paid a supplement by the Owners/Company equal to the difference between the amount specified in 9(E)(6) and the total amount of the Service Charges and/or Gratuities received by the Seafarer from the passengers.

8) A proper accounting shall be considered an itemization from the Seafarer including the total number of passengers in the Seafarer's assigned stations for the period in question and the total amount of Gratuities/Service Fees collected from each passenger. A form for this purpose will be provided to the Seafarer in the HR Center upon request. Any claim from a Seafarer that his or her earned income fell below the amount specified in 9(E)(6) must be made within 30 days after the month in question or no additional pay will be due.

F) For Group D, the Monthly Total Guaranteed Pay consists of Monthly Guaranteed Basic Pay, Monthly Guaranteed Initial Overtime Pay, Monthly Guaranteed Supplemental Overtime Pay, and Extra Hourly Overtime.

1) Monthly Guaranteed Basic Pay is for a forty (40) hour workweek. Monthly Guaranteed Basic Pay includes compensation for irregular working hours, work on Saturdays, Sundays and on Public Holidays. Monthly Guaranteed Initial Overtime Pay is for work between forty (40) hours and fifty-six (56) hours per week. Monthly Guaranteed Supplemental Overtime Pay is for an additional sixty-point-sixty-two (60.62) Guaranteed Overtime Hours per month. The total of the Monthly Guaranteed Pay is in return for 303.10 hours of work per month.

2) The Extra Overtime Rate Per Hour is for work performed in addition to the 303.10 hours of work per month. The Extra Overtime Rate is stated in the Seafarer's Wage Scale.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

## Article 10 --   Social Program Compensation

For Marine Deck and Engine Ratings and Riding Crew, the Social Program Compensation included in the Wage Scale (Annex 2 and 3), shall be paid directly to the Seafarer. It is the understanding between the parties to this Agreement that the Social Program Compensation is meant to be used by the Seafarer to purchase medical insurance covering the Seafarer when on vacation, medical insurance for the Seafarers family and to enable the Seafarer to participate in a pension fund scheme in the Seafarers country of residence.

## Article 11 --   Retirement Plan

The Owners/Company has a Shipboard Retirement Plan available for shipboard employees.   The plan is not available to Seafarers for whom the Owners/Company contributes to other retirement programs on behalf of the Seafarer.   The rights and benefits of Seafarers and beneficiaries are determined by the terms and conditions of the formal Plan. The Owners/Company reserves the right to amend and/or terminate the plan at any time.  The Owners/Company agrees to inform its Seafarers and the Union of any such changes and/or termination.   The complete Plan is available for all Seafarers to review at the HR Center.

## Article 12 --   Allotments

The Owners/Company and the Union recognise that the Owners/Company must adhere to the Philippine Overseas Employment Agency (POEA) rules and Regulations regarding allotments for Filipino Seafarers. The Owners/Company and the Union recognise the POEA Allotments as lawful deductions under the relevant ILO Conventions.

## Article 13 --   Bank Transfers

The Owners/Company may give assistance to Seafarers wishing to transfer money to their families and/or bank accounts.

## Article 14 --   Repatriation

A)      Repatriation shall take place in such manner that it meets all reasonable requirements.  The Owners/Company shall be liable for the cost of maintaining

15

July 1, 2009

the Seafarer ashore until repatriation takes place. A Seafarer shall be entitled to repatriation at the Owners/Company's expense to the gateway city:

1) upon the loss, laying-up or sale of the Ship;

2) if the Ship has been arrested and provided the Ship has remained under arrest for more than fourteen (14) days;

3) at the end of the Service Period.

4) if the Employment Agreement is terminated by the Owners/Company within the probationary period.

B) The Owners/Company's obligation to repatriate ceases:

1) if the Seafarer has been lawfully dismissed,

2) if the Seafarer terminates the Employment Agreement during the Probationary Period,

3) if the Seafarer terminates the Employment Agreement before the expiration of the service period.

C) Extra costs relating to any change of address during the Service Period shall be the responsibility of the Seafarer. If the move results in any savings in repatriation costs, the Owners/Company shall realize the savings. In accordance with the Owner's/Company's travel deviation policy, certain seafarers may request a deviation from the normal repatriation process to their gateway city. Seafarers are not considered employed by the Owners/Company during any such travel deviation or any other leave period and shall not be entitled to any of the benefits afforded under this Agreement.

D) To preserve the Owners/Company's rights (in accordance with some police/immigration rules and regulations of various countries), each Seafarer shall deposit money with the Owners/Company that will be used to purchase the Seafarer's transportation to his/her gateway city in the event the Seafarer is discharged at his/her own request or for cause prior to the end of the Service Period. The amount of the deposit will depend upon the geographic location of the Seafarer's gateway city, and will be specified in notices to be posted from time to time by the Owners/Company. Seafarers on their first contract must deposit the full amount at the time they first report for duty. Returning Seafarers must deposit the full amount at the time they report for duty in connection with their current contract, or may make the deposit in installments, provided that the

16

July 1, 2009

full amount is deposited no later than sixty (60) days after the date on which the Seafarer reported for duty in connection with the current contract. The deposit will be returned to the Seafarer at the end of the Service Period. Alternatively, the Seafarer may request that the Owners/Company use the deposit to purchase the transportation that the Seafarer will use to meet the vessel at the commencement of the Seafarer's Service Period or for repatriation when required in accordance with the terms of this Agreement, with any amount remaining after such a purchase being returned to the Seafarer.

## Article 15 -- Compassionate Leave

The Owners/Company may consider a special request of early termination of the Employment Agreement on compassionate grounds, if such termination is requested in the case of death or serious illness of spouse, children or parents. Any expense associated with the Compassionate Leave, including travel costs, shall be the responsibility of the Seafarer. The Seafarer is eligible for re-assignment after the leave granted under these circumstances.

## Article 16 – Fair Treatment Polices

A) The Owners/Company has a Shipboard Employee Counseling and Warning Policy and a Statement of Fair Treatment for Shipboard Employees which is available for review by the Seafarer at the HR Center. The Policy and the Statement are covered by the Grievance and Dispute Resolution Procedure available to Seafarers who feel they have not been treated fairly in accordance with this Agreement and the Owners/Company's policies. The complete process is described in the Owners/Company's Safety and Quality Management System (SQM) and is available for all Seafarers to review at the HR Center

B) Discrimination against or harassment of anyone by Seafarers on the basis of race, sex, nationality, religion, age, sexual orientation, color, disability, or ethnic origin will not be tolerated and may constitute cause for termination of employment.

C) In this Agreement, words in the masculine gender shall include the feminine.

D) Seafarers covered by this Agreement may at any time contact the Union at the addresses printed at the end of this Agreement and ask for help in all employment related matters.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

E)     During the term of this Agreement, the Owners/Company shall be authorized to state publicly that its vessels are covered by a negotiated ITF affiliated union Agreement.

F)     Upon request, the Owners/Company shall provide the Union with a list of the names, dates of birth, nationalities and ranks of the Seafarers covered by this Agreement within five (5) business days of such request.

## Article 17 --   Fire Squads and Mobile Groups

Seafarers participating in Fire Squads/Mobile Groups, which requires them to remain onboard when the ship is in port, should as far as practicably possible be rotated so that all Seafarers participating shall not be disproportionately burdened.

## Article 18 --   Manning

The Ship shall be competently and adequately manned so as to ensure its safe operation.

## Article 19 --   Rest Period

A)     Each Seafarer shall have minimum of ten (10) hours off duty in any twenty-four (24) hours and seventy-seven (77) hours in any seven (7) day period. Hours of rest may be divided into no more than two (2) periods, one (1) of which shall be at least six (6) consecutive hours off duty, and the interval between consecutive periods of rest shall not exceed fourteen (14). The period of 24 hours shall begin at the time a Seafarer starts work immediately after having had a period of at least six (6) consecutive hours off duty.

B)     The Owners/Company will make its best effort to conduct Musters, fire fighting and lifeboat drills, and drills prescribed by national laws and regulations and by international instruments in a manner that minimizes the disturbance of rest periods and does not induce fatigue.

## Article 20 –   Teaching, Training and Orientation

18

July 1, 2009

A)      The Owners/Company agrees to undertake a teaching and training program so that a continuous and systematic training is conducted on board, enabling promotion to higher paid positions.  The starting pay for such trainee jobs shall be at least as stipulated for the utility position for the first  contract.

B)      In order to be eligible for first time hire or return employment, certain Seafarers designated by the Owners/Company in its sole discretion will be required to attend training and/or orientation sessions prior to signing an Employment Contract.   Seafarers shall not be eligible for pay or wages for such training/orientation sessions.

## Article 21 --   Transfer of Seafarers

The Owners/Company shall have the option at their discretion of transferring Seafarers from one ship to another ship, provided, however, that there will not be any interruption of time for calculation of leave benefits nor increase in length of service.

## Article 22 --   Cargo Handling

A)      Neither the ship's Seafarers nor anyone else on board whether in permanent or temporary employment by the Owners/Company shall be required or induced to carry out cargo handling and other work traditionally or historically done by dock workers without the prior agreement of the ITF Dockers Union or Unions concerned and provided that the individual seafarers volunteer to carry out such duties, for which they should be adequately compensated.

For the purpose of this clause "cargo handling" may include but is not limited to:

- Loading and unloading of passenger luggage. However, this does not include the onboard distribution and collection of passenger luggage which is considered Seafarers work.
- Loading and unloading of ships spares and provisions. However, this may not include the onboard transportation and does not include the onboard stowing which is considered Seafarers work.

B)      Where a vessel is in a port where an official trade dispute involving an ITF Dockers Union is taking place, neither the ship's Seafarers nor anyone else on board whether in permanent or temporary employment by the Owners/Company shall be instructed or induced to undertake cargo handling and other work, traditionally and historically done by members of the Union involved in the official trade dispute.

19

July 1, 2009

C)    When the ITF Dockers Union in a port allows ship's Seafarers to carry out work that traditionally or historically has been done by dock workers the Seafarers shall be paid the extra overtime rate specified in applicable wage scale for each hour or part of an hour that such work is performed during their regular 40-hour work week, in addition to their normal pay. Any such work performed outside their regular 40-hour work week shall be compensated by double the extra overtime rate for each hour or part of an hour that such work is performed, in addition to their normal pay.

D)    If a seafarer is normally paid fully consolidated wages then the extra overtime rate shall be calculated as follows: Total Monthly Consolidated Pay divided with 303 and multiplied by 1.5 equals the extra overtime rate to be used when calculating the payment.

## Article 23 -- Medical Attention

A)    General Rules:

    1)    A Seafarer, who is discharged owing to sickness or injury which manifests while in the service of the vessel, shall be entitled to reasonable and necessary medical treatment (including hospitalization) at the Owners/Company's expense until the sick or injured Seafarer reaches maximum medical improvement. Medical coverage beyond emergency stabilization shall not be provided in the event such sickness or injury is the result of the Seafarer's wilful gross misconduct as specified in Annex 7 or a known pre-existing medical condition which was not disclosed during the Pre-Employment Medical Examination. Medical coverage is limited to illnesses or injuries that manifest during the Seafarer's service of the vessel. The Seafarer shall not be considered in the service of the vessel during a period of medical leave or any other leave period and any medical condition unrelated to the original condition that manifests during the leave, including a medical leave, but did not arise during the Seafarer's service on the vessel shall not be covered.

    2)    If the Seafarer is covered by a national insurance scheme, expenses shall first be reimbursed by the national insurance scheme and then by the Owners/Company, provided that this provision does not modify the Owners/Company obligation set forth in the paragraph above. This also applies in cases where the Seafarer has had the opportunity to become a member of a national insurance scheme at the time when the Seafarer entered into the Employment Agreement or later on. If the Seafarer elects to be treated by a provider not in the Company network, national health

20

July 1, 2009

insurance scheme, or other Government-sponsored health plan, the Owners/Company's sole obligation in that case is to pay the lesser of the Owners/Company network rate, the national health insurance scheme rate, or other Government rate.

B)      Insurance Plan:

The Owners/Company has a medical insurance plan available for certain eligible positions as defined by the Owners/Company. Information regarding this plan can be obtained from the HR Center.

### Article 24 –   Sick Pay and Maintenance

A)      During the Service Period and at the time of disembarking, the Seafarer shall be subject to medical examination when requested by the Owners/Company or its representative at the Owners/Company's expense.

1)      While serving on board or during travel to and from the vessel by the most direct route, or as directed by the Owners/Company, a sick or injured Seafarer shall be entitled to treatment at the Owners/Company's expense until the Seafarer reaches Maximum Medical Improvement.

B)      Should a Seafarer become sick or injured during a voyage within the Service Period, subject to the exceptions stated in Article 24(A)(1), the Owners/Company will pay the Seafarer Sick Pay at the per diem rate of the Monthly Basic Pay from such time during a voyage as the Seafarer is unable to work until such time as the Seafarer is Fit For Duty or up to a maximum of one-hundred-and-thirty (130) days, provided that satisfactory medical certificates are submitted to the Owners/Company. The days that the Seafarer is not Fit for Duty are sick days. Sick days are not counted as time worked.

C)      In the event of sickness or injury necessitating signing off for Maintenance and Cure, subject to medical approval and the exceptions stated in Article 24(A)(1), all payments shall be subject to the Seafarer's compliance with the instructions of the Owners/Company and its Agents at the port where the seafarer is landed for medical care.

1)      With respect to Maintenance, the Owners/Company shall provide the Seafarer with living accommodations during the period of treatment and convalescence, or in the discretion of the Owners/Company, provide a stipulated flat rate of maintenance without requiring proof of expenses of USD twelve ($12) per day, to defray living expenses until the sick or

21

July 1, 2009

injured Seafarer has been cured or until the sickness or incapacity has been declared to have reached Maximum Medical Improvement. In the event a Seafarer produces an itemization with supporting receipts of his or her individual room and board expenses of the same nature as the Seafarer received on board the ship, the Owners/Company shall pay the amount provided in the itemization, but in no case higher than USD twenty-five ($25) per day.

2)      With respect to Cure, the Owners/Company shall be liable to defray the expenses of medical care and treatments until the sick or injured seafarer has been cured or until the sickness or incapacity has been declared to have reached Maximum Medical Improvement.

D)      In the event of sickness or injury necessitating signing off, the Seafarer shall be entitled to repatriation, at the Owners/Company's expense, to the Seafarer's legal residence.    The Seafarer shall report his/her arrival at his/her own home or original place of engagement whichever is appropriate to the Owners/Company or its Agents as soon as possible after repatriation.

E)      In the event of sickness or injury necessitating signing off, the Employment Agreement will be regarded as terminated as of the date the Seafarer signs off. However, if it is determined that the Seafarer is Fit For Duty, the Owners/Company may return the Seafarer to service without loss of service time as long as the Seafarer reports to duty within 12 months of being declared fit for duty.

F)      If a Seafarer's sickness or injury which necessitated signing off results in permanent disability or death, then the provisions of Article 27 and Article 28 shall apply.

## Article 25 --   Paid Leave

A)      Paid Leave (Vacation Pay) is earned on  board during the Seafarer's Service Period.  The terms "Vacation Pay" and "Paid Leave," and the receipt of Vacation Pay do not indicate permanent or continuous employment, nor do they constitute an indication that the Owners/Company will provide a future offer of employment. Except as indicated below, monthly Vacation Pay is calculated as being equal to the Basic Wage divided by 25 multiplied by 3 days accrued per month of on-board service. Vacation Pay is paid during the Service Period or paid at the end of the Service Period, as follows:

22

July 1, 2009

B)     Marine Officers:

1)     Vacation is accrued with one (1) day vacation for each day worked for Seafarers on the 1:1 sailing system and a half (½) day vacation for each day worked for Seafarers on the 2:1 sailing system. Daily Vacation Pay is calculated as being equal to the Total Monthly Compensation divided by 30.    Parts of a month shall be prorated with one-thirtieth (1/30) being equal to one day.  Accrued vacation days are to be paid out, as earned, through the regular payroll process.  Vacation days are not accrued while travelling to and from the ships for the purpose of signing on and off for vacation.

2)     In exceptional circumstances, the Owners/Company may require a Seafarer to return to work earlier than scheduled or to extend a Seafarer's service prior to his/her vacation leave.  This practice will be used when other reasonable alternatives are not available.  The circumstances include: illness of Key Personnel on board and any matter that could affect the safe operation of the Ship or its ability to operate.

3)     Necessary overlap in accordance with the Owners/Company SQM-policy will be during a Seafarer's vacation leave.  When a Seafarer is on board for overlap as required by the Owners/Company, the Seafarer will be paid wages and accrued vacation as if he/she was on board in his regular position.

4)     Marine Officers are required to participate in Owners/Company Required Training for no more than fourteen (14) days annually during vacation leave in addition to any training required by the Owners/Company while on shipboard duty.  Regular salary will be paid for the days the Seafarer is participating in such training, but vacation days will not be accrued. Travel expenses and course fees will be paid by the Owners/Company. These terms will also apply if the Owners/Company requests the Seafarer to participate in meeting at the corporate offices or perform other duties while on vacation leave.

C)     Deck and Engine Ratings; and Riding Crew:

Vacation pay is earned based on seven (7) days per month for every month of service. Vacation Pay is based on the Monthly Basic Pay and is in addition to the Monthly Total Pay.  Monthly Vacation Pay is calculated as being equal to the Basic Wage divided by 25 multiplied by 7 days accrued per month of on-board service.  Vacation Pay shall be paid at the end of the Service Period.  Parts of a month shall be prorated, with one-thirtieth (1/30) being equal to one day.

23

July 1, 2009

D)   Hotel Personnel:

1)   General: Vacation pay is earned based on three (3) days per month of service. The Vacation Pay shall be based on the Monthly Guaranteed Basic Pay. Monthly Vacation Pay is calculated as being equal to the Basic Wage divided by 25 multiplied by 3 days accrued per month of on-board service. Parts of a month shall be prorated, with one-thirtieth (1/30) being equal to one day.

2)   Groups A, B, and D: Vacation Pay is in addition to the Monthly Total Guaranteed Pay.

3)   Group C: Vacation Pay is in addition to the Monthly Total Guaranteed Pay Vacation Pay for Group C is included in the amount specified in Art. 9(E)(6) and may be made up of Gratuities and/or Service Fees provided by the passengers.

### Article 26 -- Maternity

A)   The limited nature of shipboard medical facilities makes it impossible to properly address prenatal care or any potential complications or emergencies that may arise during a pregnancy while at sea. Consequently, pregnant Seafarers may not remain employed on board the vessel during the final twelve (12) weeks of pregnancy under any circumstances. Pregnant Seafarers who are interested in continuing to be employed in their positions in spite of the health risks, may do so only during the first twenty eight (28) weeks of their pregnancy and only under the following circumstances:

1)   The pregnant Seafarer must pay for the cost of childbirth and for any and all associated pregnancy related services and expenses required during the pregnancy;

2)   The pregnant Seafarer must obtain the consultation of a licensed Shoreside Obstetrician / Gynecologist (OB/GYN) at one of the ship's ports of call, at the earliest possible opportunity;

3)   The pregnant Seafarer must notify the ship's physician as soon as the Seafarer becomes aware that she is pregnant and must obtain from the ship's physician the forms to be completed by the Seafarer and her Shoreside OB/GYN

24

July 1, 2009

4)      After taking into consideration the Seafarer's medical history, shipboard life, job description, and any special circumstances, the seafarer's Shoreside OB/GYN must agree to continue to treat the seafarer and must grant the seafarer medical permission to sail for a specific period of time.

5)      The pregnant Seafarer must continue to be able to perform the essential functions of her job without endangering her health and safety.

B)      If, at anytime, the Seafarer fails to fulfill any of the circumstances in items A) 1-5, above or has met the maximum number of weeks, then the Seafarer must sign off the vessel.  Upon sign-off, the Owners/Company will provide the pregnant Seafarer with an air ticket home and thirty days (30/30) Total Monthly Guaranteed pay.  If the Seafarer is medically determined to be Fit For Duty at the conclusion of the pregnancy but no later than twelve (12) months after sign-off, then the Owners/Company will rehire the Seafarer.

## Article 27 --   Loss of Life in Service

A)      If a Seafarer dies while in the employment of the Owners/Company, including death occurring while travelling to and from the ship, or as a result of marine or other similar peril, the Owners/Company shall pay to the Seafarer's beneficiaries a compensation of USD seventy thousand ($70,000). No compensation shall be due if the death was the result of the Seafarer's wilful gross misconduct as listed in the Annex 7, or if the death was the result of a known pre-existing condition that was not disclosed on the Pre-Employment Medical Examination. In addition, the Owners/Company shall pay to each child under the age of twenty-one (21) USD fifteen-thousand ($15,000), with a maximum payment for four (4) children. The names and addresses of beneficiaries shall be declared at the time of the signing of the Employment Agreement.  If the Seafarer does not leave a spouse, the aforementioned sum shall be paid to the Estate of the deceased Seafarer to be administrated by the person or body authorized by law to act on the behalf of the deceased Seafarer's Estate.  The Model Receipt and Form for this payment shall be attached to the original signed Agreement as Annex 8.

B)      If a Seafarer dies while in the employment of the Owners/Company, including death occurring whilst travelling to and from the ship, or as a result of marine or other similar peril or while the Seafarer is entitled to medical treatment at the Owners/Company expense, the Owners/Company or its representative, the Master, shall notify next of kin and make arrangements for burial and repatriation of the coffin.  If the next of kin consent or the local authorities require, the Master may order cremation in lieu of burial and arrange for the ashes to be sent home.  The expenses of burial or cremation and the entombment of the ashes, in the event

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

this is carried out by the Owners/Company or the repatriation of the coffin or cinerary urn, shall be paid by the Owners/Company.

C      Any payment affected under this clause shall be without prejudice to any claim for compensation made in law, but all (100%) of such compensation for death made under this Agreement shall be deducted from any award, settlement or recovery for damages received by the heirs of the Seafarer in connection with any claim or lawsuit arising out of the death.

D      The benefits under this Article include amounts payable to Filipino nationals under POEA Rules and Regulations.

## Article 28 -- Disability

A)      If a Seafarer suffers a disabling permanent work related injury as a result of an accident from any cause, with the exception of injuries caused by a Seafarer's wilful gross misconduct as specified in Annex 7, while in the employment of the Owners/Company, regardless of the fault, including accidents occurring whilst travelling to or from the Ship and whose ability to work is reduced as a result thereof, shall in addition to his Sick Pay, be entitled to a disability compensation at a percentage depending on the degree of permanent disability of up to USD ninety-thousand ($90,000) for Marine Officers and Hotel Group A personnel and up to USD eighty-thousand ($80,000) for all others.

B)      The compensation which the Owners/Company, Manager, Manning Agent and any other legal entity substantially connected with the vessel shall be jointly and severally liable to pay shall be calculated by reference to an agreed medical report, with the Owners/Company and the Seafarer both able to commission their own. When there is disagreement a third doctor shall be appointed jointly, whose findings shall be binding on all parties.

C)      Any payment affected under any section of this Article shall be without prejudice to any claim for compensation made in law, but all (100%) of such disability payments made under this agreement shall be deducted from any award, settlement or recovery for damages received by the seafarer in connection with any claim or lawsuit arising out of the injuries or incident giving rise or in any way related to the disability payments.

D)      The benefits under this Article include amounts payable to Filipino nationals under POEA Rules and Regulations.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

## Article 29 --   Crew's Effects

A)      In the event of accident, fire or other mishap affecting the ship and whereby the Seafarer's personal effects are damaged or lost, Owners/Company shall pay up to USD three-thousand ($3,000). The Seafarer shall submit a signed statement specifying the items lost or damaged.

B)      The Owners/Company shall in addition pay the Seafarer for necessary clothing needed after a shipwreck.


## Article 30 --   Seafarer Food, Accommodation, and Amenities

A)      The  Owners/Company  shall  provide  sufficient  food  of  good  quality, accommodation of adequate size and standard, bedding amenities, etc., for the use of each Seafarer whilst serving on board.

B)      The accommodation standards and recreational facilities shall at least meet those criteria contained in relevant ILO instruments, with the exception of the current dispensation given by the flag state and related to the placement of cabins.

C)      The Owners/Company shall provide the necessary personal protective equipment for  the  use  of  each  Seafarer  whilst  serving  on  board.    In  addition,  the Owners/Company will supply Seafarers with appropriate personal protective equipment for the performance a hazardous job duty.  Seafarers should be advised of possible hazards of any work to be carried out and instructed of any necessary precautions to be taken as well as of the use of the protective equipment.  If the necessary safety equipment is not available to operate in compliance with any of the above regulations, Seafarers should not be permitted or requested to perform the work.  Seafarers should use and take care of all protective equipment at their disposal and not misuse any means provided for their own protection or the protection of others.  Personal protective equipment remains the property of the Owners/Company.

D)      The following uniform items will be provided to the Seafarer free of charge by the Owners/Company, but must be returned to the Owners/Company at the end of each contract:

Vests
Jackets
Blazers
Sweaters

27

July 1, 2009

    Sweatshirts
    Stripes
    Epaulets
    Aprons
    Lab Coats
    Scrubs

The following uniform items are the responsibility of the Seafarer and must be purchased by the Seafarer:

    Pants
    Skirts
    Shirts (long and short sleeve)
    Socks
    Non-Slip Shoes
    Belts
    Hats
    Ties/Bowties
    Scarves
    T-shirts
    Polo Shirts
    Shorts
    Suspenders
    Blouses

Galley utilities, Cooks and Chefs will be provided a full set of uniforms by the Owners/Company.

E)   The Union and the Owners/Company agree that the Owners/Company may provide crew gaming activities for the enjoyment of the seafarers. The Union and the Owners/Company agree that the Owners/Company may use some of the proceeds from the crew gaming activities to finance a Crew Welfare Fund for each ship covered by this agreement to use for seafarer recreational and/or cultural activities.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

### Article 31 -- Service in Warlike Operations Areas

A)     During the assignment a Seafarer shall be given full information of the war zone's inclusion in the Ship's trading pattern and shall have the right not to proceed to a warlike operations area, in which event he shall be repatriated at Owners/Company's cost with benefits accrued until the date of return to the port of engagement.

B)     Where a Ship enters into an area where warlike operations take place, the Seafarer shall be paid a bonus amounting to double the Basic Wage for the duration of the Ship's stay in such area subject to a minimum of five (5) days' pay. Similarly the compensation for disability and death shall be doubled.

C)     A warlike operations area will be as agreed by the parties.

D)     A Seafarer shall have the right to accept or decline the assignment without risking the termination of the Employment Contract or suffering any other detrimental effects

E)     Where a Ship enters an area designated as a "High Risk Area", each Seafarer covered by the Agreement shall receive a bonus equal to 100% of the basic wage as indicated on the Wage Tables annexed to the Agreement for each day the Ship transits the area.  Similarly, the compensation for disability and death shall be doubled for deaths or injuries occurring during the transit period.

F)     A "High Risk Area" will be as agreed by the parties.


### Article 32 -- Insurance Cover

The Owners/Company shall conclude appropriate insurance to cover themselves against the possible contingencies arising from Articles 27 and 28 of this Agreement.


### Article 33 --   Union Fees, Welfare Fund and Representation of Seafarers

A)     Subject to national legislation, all Seafarers shall have the right to join an appropriate national trade union affiliated to the ITF.

B)     The Owners/Company shall on their own behalf pay contributions to the ITF Seafarers' International Assistance, Welfare and Protection Fund in accordance with the terms of the ITF Special Agreement, if applicable.  Payment shall be

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

remitted to the ITF through SpareBank1, P.O. Box 778 – Sentrum, N-0106 Oslo, Norway, IBAN: NO09 9001 68 533 853. Swift Address: LABANOKK. Account No. 9001.68.18533 upon receipt of invoice.

C)    The Owners/Company shall pay a fee to the Union on behalf of the Seafarers covered by this Agreement.  The amount shall be stated in a Protocol between the Owners/Company and the Union.  The Owners/Company shall, at least once every three (3) months, transfer the Fees to the Union.   The Union Fees are part of the TCC Benchmark Calculations.  The Union Fees should be remitted to the Union through SpareBank1, P.O. Box 778 – Sentrum, N-0106 Oslo, Norway. IBAN: NO09 9001 0487 853. Swift Address: LABANOKK. Account Number 9001.04.87853.

C)    The Owners/Company acknowledges the right of Seafarers to be members of the union and to be protected against acts of anti-union discrimination as per ILO Conventions Nos. 87 and 98.

D)    The Owners/Company acknowledges the right of the Union to appoint a liaison representative from among the Seafarers who shall not be dismissed nor be subject to any disciplinary proceedings unless the Union has been given advance notice and sufficient time to ensure that adequate shore based representation is provided.

E)    The parties to this Agreement agree on the principle that all disputes between the Owners/Company and the Union can be and should be resolved through friendly negotiations and have therefore agreed on a Grievance Procedure.

F)    The Owners/Company shall facilitate the establishment of an on board Safety Committee in accordance with the provisions contained in the ILO Code of Practice on Accident Prevention on Board Ships at Seas and in Port, and as part of their Safety Management System pursuant to the requirements of the ISM Code.

**Article 34 --   Statement of Fair Treatment, Grievance and Dispute Resolution Procedure**

**A.      Statement of Fair Treatment**

The Owners/Company recognize that Seafarers have the basic right to be respected and treated in a fair and just manner at all times by superiors and fellow Seafarers. Onboard the ship, all Seafarers must function as a team in order to deliver excellent service through their efforts.  By accepting this fact, it is important that Owners/Company and Seafarers communicate with one another to solve misunderstandings or correct mistakes

July 1, 2009

when they occur. Examples might be that the Seafarer has a concern with a co-worker, or that the Seafarer has not been paid correctly. The Owners/Company and the Union understand that the effort to solve concerns sometimes becomes more challenging because of the diversity of values and beliefs onboard.

## B.     Grievance procedure

### 1. General Principles

a.    Grievance means any complaint concerning a violation of the terms of this Agreement or any other circumstance where the Seafarer feels that he/she has been unfairly treated or his/her rights have been violated.

b.    The Seafarer and the Owners/Company shall seek to resolve grievances at the lowest level possible following the procedures set out in 2 below.  However, since a grievance may relate specifically to a person or persons about whom the complaint is to be made, including the Master, the Seafarer can at any time complain directly to the Union, or to the Owners/Company, or to any appropriate external authority.

c.    The Seafarer has the right to be accompanied or represented during the grievance procedure by another seafarer of his/her choice or by a third party.

d.    All grievances shall be made in writing and all decisions concerning grievances shall be recorded in writing and a copy provided to the Seafarer concerned.

e.    The Owners/Company shall ensure that there are procedures in place to safeguard against the possibility of victimisation of Seafarers for filing complaints.

f.    The Owners/Company shall ensure that their contract with the Seafarers incorporates this Agreement and that all Seafarers are provided with a copy of this Agreement including the grievance procedure applicable to the ship and contact details of the Union and the Owners/Company.

g.    In the event that a written notice or grievance from the Seafarer is received by a representative of the Owners/Company on board or shoreside in a manner that is not consistent with the procedure in this section, the notice will be forwarded to the appropriate representative for a response.

h.    The Seafarer shall continue to peacefully and satisfactory perform his/her duties and the parties shall faithfully observe this Agreement while grievances are being resolved.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

i.    The grievance procedure is voluntary, but the arbitration procedure described below is mandatory, with such arbitration being the only forum in which a grievance or other dispute may be resolved outside of the grievance procedure, and the only forum in which the resolution of the grievance or other dispute will be binding on the Owners/Company.

## 2.    On Board Complaints Procedure

a.    While on board a vessel, if the Seafarer wishes to file a grievance, the Seafarer shall, either in person or through a fellow seafarer spokesperson, submit that grievance to his/her Department Head or to the ship's Human Resources Manager. The grievance shall be submitted in writing within thirty (30) days from the date that the Seafarer knew or should have known of the grievance. The Department Head or Human Resources Manager shall render a decision on the grievance within thirty (30) days of receipt of the grievance.

b.    If the Seafarer remains dissatisfied, and if the Master is not the subject of the grievance, then within thirty (30) days of the decision, the Seafarer shall submit the grievance directly to the Master.   The Seafarer shall provide all information and documentation regarding the matter to the Master.  The Master shall render a decision in writing within thirty (30) days after receiving such information and documentation.

c.    If the Seafarer is dissatisfied with the Master's decision, or if the Master is the subject of the grievance, then within ninety (90) days of the decision, the Seafarer shall submit the grievance to the designated Union Representative - (Insert Name and Address for Union Representative) and to Human Resources – Fleet Employee Relations (Insert Address) with the Owners/Company.

## 3. Shoreside Complaints Procedure

a. If the Seafarer has a grievance and is not on board the vessel, then the Seafarer shall either in person or through a representative submit the grievance to the Owners/Company within ninety (90) days of sign off or thirty (30) days from the date the Seafarer knew or should have known of the grievance, whichever is longer. The grievance shall be submitted in writing to Human Resources – Fleet Employee Relations (Insert Address).  A decision shall be rendered in writing within thirty (30) days after receipt of the grievance.

b. If the Seafarer is dissatisfied with the decision of the Owners/Company, then within ninety (90) days of the decision the Seafarer shall submit the grievance to the Union Representative (Insert Name and Address) and to the Owners/Company.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

**C. Conciliation Conference.** Within thirty (30) days of receipt of the written notice of the Seafarer's grievance presented on board or shoreside, the Union and the Owners/Company shall confer to resolve the dispute. If the Seafarer appoints his/her own representative, then that representative will attend the conference with the Owners/Company, but the Union also may participate at its sole discretion. The conference may be held in person or via telephone conference. For the avoidance of doubt, the outcome of the Conciliation Conference is not determinative of the grievance or dispute unless the parties and the Seafarer so agree.

## Article 35 --   Arbitration Procedure

1. All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S, ("The Convention"), except as provided by any government mandated contract.

2. All arbitrations must be commenced within two (2) years from the date of the occurrence giving rise to the grievance or dispute, or the date the Seafarer knew or should have known of the occurrence giving rise to the grievance or dispute, except for claims for personal injury or death, which must be commenced within three (3) years from the date of the occurrence giving rise to the injury or death or the date the Seafarer knew of should have known of the occurrence giving rise to the grievance or dispute. Claims brought forth thereafter will not be recognised and will be time-barred.

3. Any arbitration shall take place in Miami, Florida, Oslo, Norway, or in any location agreed by the Owners/Company and the Union or the representative of the Seafarer. The procedural and substantive law of the arbitration shall be the law of Norway without regard to conflict of law principles.

4. The language of any arbitral proceedings shall be English.

5. Any arbitration, except as provided by any government mandated contract, shall be administrated in accordance with the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules, as amended with agreement of the parties, with the American Arbitration Association ("AAA") under its International Dispute Resolution Procedures as the appointing authority.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

July 1, 2009

6. All arbitrations must be brought by or on behalf of Seafarers in their own names, and not on behalf of others on an unnamed basis.

7. The Owners/Company and the Union shall jointly appoint one arbitrator unless the Seafarer has his or her own representative then the Owners/Company and Seafarer shall appoint the arbitrator. In the event there is no agreement, an arbitrator shall be chosen pursuant to the UNCITRAL rules. In any case, an arbitrator shall be appointed with ninety (90) days of the dispute being presented for arbitration.

8. The parties shall have the right in any arbitration to conduct limited examinations under oath of parties and witnesses, and medical examinations necessary to verify any injuries or damages claimed.

9. Each party shall bear its own attorney's fees and costs incurred in connection with an arbitration, but the Owners/Company shall pay for the costs of the arbitration itself, including charges by the arbitrator.

10. The Union may, at its sole discretion, decline to represent a Seafarer in an arbitration if the Union believes that the claim lacks merit.

11. If the Seafarer is not represented by the Union, then the Seafarer's representative shall take the place of the Union in the arbitration process save that before making a decision, the arbitrator shall seek the Union's opinion on any issue concerning the interpretation of this Agreement.

12. In any arbitration in which the Seafarer is represented by his/her own counsel, the Owners/Company agree that they will keep the Union informed about the grievance or dispute and its outcome, if the Union was involved during the grievance process or the arbitration involves a core principle of the Agreement.

E. Governing Law

Any grievance or other dispute shall be governed in accordance with the laws of Norway, without regard to any conflicts of laws principles.

Article 36 -- Construction

The interpretation of this agreement shall be made by the consensus of the Unions and the Owners/Company. If there is a disagreement between the Union and the Owners/Company as to interpretation, then the disagreement shall be resolved only

34

July 1, 2009

through the arbitration procedure established in Article 36. Failing that, and in all other respects, the laws of the Norway shall govern the interpretation of this Agreement.


**Article 37 – Severability Clause**

Any provision of this Agreement that is determined in any jurisdiction to be unenforceable for any reason shall be deemed severed from this Agreement in that jurisdiction only and all remaining provisions shall remain in full force and effect.


**Article 38 --   Amendments to and Duration of the Agreement**

This Agreement shall be effective from July 1, 2009 through June 30, 2011, and further for one year at a time if a request for termination is not given either by the Owners/Company or the Union with three (3) months written notice. The terms and conditions of this Agreement shall be reviewed annually by the Owners/Company and Union and if at any time the Owners/Company and Union mutually agree on amendments and/or additions to this Agreement, such amendments and additions shall be agreed in writing and signed by the parties and considered incorporated in the Agreement. Furthermore, the terms and conditions of this Agreement may be amended at anytime by mutual agreement between the Owners/Company and the Union, such amendments shall be agreed to in writing, signed by the parties and considered incorporated into this Agreement.

Signed the 15th day of June, 2009.


By _____
Maria Del Busto
Vice President and
Chief Human Resources Officer
ROYAL CARIBBEAN CRUISES LTD.
RCL (UK) LTD.


By _____
Jacqueline Smith
President
NORWEGIAN SEAFARERS' UNION

July 1, 2009

# Annex 1, 2, 3 and 4

## WAGE SCALES

The Wage Scales are attached to the original signed document and otherwise kept in the HR Center.

A Seafarer that is given an offer of promotion to a higher position shall upon request be permitted to see the part of the Wage Scales covering the offered position.

A Seafarer shall upon request be permitted to see the part of the Wage Scales covering his/her position.

AGREEMENT BETWEEN ROYAL CARIBBEAN CRUISES LTD. AND NORWEGIAN SEAFARERS' UNION FOR MARINE OFFICERS AND DECK & ENGINE RATINGS AND RIDING CREW AND HOTEL PERSONNEL SERVING ON CRUISE VESSELS UNDER THE ROYAL CARIBBEAN INTERNATIONAL BRAND Effective July 1, 2009

## Royal Caribbean International - Wage Table
### Appendix 1 - Marine Officers - 2009

**Position / Yearly Increment**

**Master**

| | |
|---|---|
| Monthly Basic Salary | $6,347 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $6,347 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $211.57 |

**Staff Captain**

| | |
|---|---|
| Monthly Basic Salary | $5,303 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $5,303 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $176.77 |

**Chief Engineer**

| | |
|---|---|
| Monthly Basic Salary | $6,150 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $6,150 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $205.00 |

**Chief Engineer Jr.**

| | |
|---|---|
| Monthly Basic Salary | $5,303 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $5,303 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $176.77 |

**Chief Refrigeration Engineer**

| | |
|---|---|
| Monthly Basic Salary | $4,284 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $4,284 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $142.82 |

**Chief Electrical Engineer**

| | |
|---|---|
| Monthly Basic Salary | $5,406 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $5,406 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $180.20 |

**Chief Officer Safety**

| | |
|---|---|
| Monthly Basic Salary | $4,500 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $4,500 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $150.00 |

## Royal Caribbean International -  Wage Table
### Appendix 1 - Marine Officers - 2009

| Position / Yearly Increment | |
|---|---|
| **1st Officer** | |
| Monthly Basic Salary | $4,000 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $4,000 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $133.33 |
| **1st Engineer** | |
| Monthly Basic Salary | $4,500 |
| Monthly Fixed Overtime Bonus | NA |
| Total Monthly Compensation | $4,500 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Guaranteed/Fixed Overtime hours/month | Unlimited |
| Hourly Overtime Rate | NA |
| Daily Sick Wage Rate | $150.00 |
| **2nd Officer** | |
| Monthly Basic Salary | $1,837 |
| Monthly Fixed Overtime Bonus | $928.86 |
| Guaranteed/Fixed Overtime hours/month | 91 |
| Hourly Overtime Pay Rate for OT above 91 hr/month | $20.74 |
| Total Monthly Compensation | $2,766 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $61.24 |
| **Facilities Manager** | |
| Monthly Basic Salary | $2,903 |
| Monthly Fixed Overtime Bonus | $1,822.75 |
| Guaranteed/Fixed Overtime hours/month | 113 |
| Hourly Overtime Pay Rate for OT above 113 hr/month | $33.24 |
| Total Monthly Compensation | $4,726 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $96.78 |
| **Maintenance Technician Manager** | |
| Monthly Basic Salary | $2,584 |
| Monthly Fixed Overtime Bonus | $1,622.29 |
| Guaranteed/Fixed Overtime hours/month | 113 |
| Hourly Overtime Pay Rate for OT above 113 hr/month | $29.58 |
| Total Monthly Compensation | $4,206 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $86.14 |
| **Environmental Officer** | |
| Monthly Basic Salary | $2,535 |
| Monthly Fixed Overtime Bonus | $1,591.39 |
| Guaranteed/Fixed Overtime hours/month | 113 |
| Hourly Overtime Pay Rate for OT above 113 hr/month | $29.02 |
| Total Monthly Compensation | $4,126 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $84.50 |
| **2nd Engineer** | |
| Monthly Basic Salary | $2,276 |
| Monthly Fixed Overtime Bonus | $1,593.51 |
| Guaranteed/Fixed Overtime hours/month | 126 |
| Hourly Overtime Pay Rate for OT above 126 hr/month | $26.26 |
| Total Monthly Compensation | $3,870 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $75.88 |

# Royal Caribbean International - Wage Table
## Appendix 1 - Marine Officers - 2009

| Position / Yearly Increment | |
|---|---:|
| **3rd Engineer** | |
| Monthly Basic Salary | $1,449 |
| Monthly Fixed Overtime Bonus | $909.58 |
| Guaranteed/Fixed Overtime hours/month | 113 |
| Hourly Overtime Pay Rate for OT above 113 hr/month | $16.59 |
| Total Monthly Compensation | $2,358 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $48.30 |
| **1st Electrical Engineer / Electronics Engineer** | |
| Monthly Basic Salary | $2,584 |
| Monthly Fixed Overtime Bonus | $1,679.71 |
| Guaranteed/Fixed Overtime hours/month | 117 |
| Hourly Overtime Pay Rate for OT above 117 hr/month | $29.65 |
| Total Monthly Compensation | $4,264 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $86.14 |
| **Facilities Electrical Engineer** | |
| Monthly Basic Salary | $2,328 |
| Monthly Fixed Overtime Bonus | $1,512.97 |
| Guaranteed/Fixed Overtime hours/month | 117 |
| Hourly Overtime Pay Rate for OT above 117 hr/month | $26.71 |
| Total Monthly Compensation | $3,841 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $77.59 |
| **2nd Electrical Engineer (Old Electrical Engineer)** | |
| Monthly Basic Salary | $2,162 |
| Monthly Fixed Overtime Bonus | $1,404.98 |
| Guaranteed/Fixed Overtime hours/month | 117 |
| Hourly Overtime Pay Rate for OT above 117 hr/month | $24.80 |
| Total Monthly Compensation | $3,566 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $72.05 |
| **Security Officer** | |
| Monthly Basic Salary | $2,233 |
| Monthly Fixed Overtime Bonus | $1,674.81 |
| Guaranteed/Fixed Overtime hours/month | 135 |
| Hourly Overtime Pay Rate for OT above 135 hr/month | $25.88 |
| Total Monthly Compensation | $3,908 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $74.44 |
| **Deputy Security Officer** | |
| Monthly Basic Salary | $1,564 |
| Monthly Fixed Overtime Bonus | $790.51 |
| Guaranteed/Fixed Overtime hours/month | 91 |
| Hourly Overtime Pay Rate for OT above 91 hr/month | $17.65 |
| Total Monthly Compensation | $2,354 |
| Leave Pay Compensation/Sailing System* | 2:1 |
| Daily Sick Wage Rate | $52.12 |
| **Marine Admin. Specialist (Old Shipboard Admin. Assistant)** | |
| Monthly Basic Salary | $2,081 |
| Monthly Fixed Overtime Bonus | $1,052.03 |
| Guaranteed/Fixed Overtime hours/month | 91 |
| Hourly Overtime Pay Rate for OT above 91 hr/month | $23.49 |
| Total Monthly Compensation | $3,133 |
| Leave Pay Compensation/Sailing System* | 2:1 |
| Daily Sick Wage Rate | $69.36 |

## Royal Caribbean International -  Wage Table
### Appendix 1 - Marine Officers - 2009

| Position / Yearly Increment | |
| --- | --- |
| **Operations Trainer** | |
| Monthly Basic Salary | $2,120 |
| Monthly Fixed Overtime Bonus | $1,378.22 |
| Guaranteed/Fixed Overtime hours/month | 117 |
| Hourly Overtime Pay Rate for OT above 117 hr/month | $24.33 |
| Total Monthly Compensation | $3,499 |
| Leave Pay Compensation/Sailing System* | 1:1 |
| Daily Sick Wage Rate | $70.68 |
| **Apprentice Officer (Cadet)** | |
| Monthly Basic Salary | $871 |
| Monthly Fixed Overtime Bonus | $440.34 |
| Guaranteed/Fixed Overtime hours/month | 91 |
| Hourly Overtime Pay Rate for OT above 91 hr/month | $9.83 |
| Total Monthly Compensation | $1,311 |
| Leave Pay Compensation/Sailing System* | NA |
| Daily Sick Wage Rate | $29.03 |

**Leave Pay Compensation/Sailing System***

Officers on a 1:1 Sailing System accrue 1 (one) day vacation pay for every day worked onboard.

Officers on a 2 :1 Sailing System accrue 1/2 (half) a day vacation pay for every day worked onboard.

# Royal Caribbean International - Wage Table
## Appendix 2 - Marine Riding - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7A | 7B | 8 | 9 | Social Comp. | End of Serv. Grat | IMO STCW | Union Fee | T&D | CAM Related | Total ITF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| ENGINE FOREMAN | 1.320 | $759 | $259 | $302 | $1,320 | $213 | NA | $13 | $4.98 | $5.98 | $95 | $40 | $33 | $20 | $30 | $70 | $1,820 |
| TECHNICAL STOREKEEPER 1 | 1.320 | $759 | $259 | $302 | $1,320 | $213 | NA | $13 | $4.98 | $5.98 | $95 | $40 | $33 | $20 | $30 | $70 | $1,820 |
| BOATSWAIN | 1.250 | $719 | $245 | $286 | $1,250 | $201 | NA | $13 | $4.72 | $5.66 | $95 | $40 | $33 | $20 | $30 | $70 | $1,738 |
| CARPENTER SUPERVISOR | 1.250 | $719 | $245 | $286 | $1,250 | $201 | NA | $13 | $4.72 | $5.66 | $95 | $40 | $33 | $20 | $30 | $70 | $1,738 |
| REPAIRMAN SUPERVISOR | 1.250 | $719 | $245 | $286 | $1,250 | $201 | NA | $13 | $4.72 | $5.66 | $95 | $40 | $33 | $20 | $30 | $70 | $1,738 |
| CARPENTER | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| REPAIRMAN | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| ASST. ELECTRICIAN | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| ASSISTANT REF. ENGINEER | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| TECHNICAL STOREKEEPER | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| SECURITY SUPERVISOR | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| INCINERATOR TECHNICIAN 1 | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $13 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| AB | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| QUARTERMASTER | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| 1ST ASST. CARPENTER | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| UPHOLSTERER | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| MOTORMAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| INCINERATOR TECHNICIAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| 1ST ASST. REPAIRMAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| 1ST ASST. ELECTRICIAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| FLOOR MAINTANCE SUPERV. | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $11 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| ORDINARY SEAMAN | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. CARPENTER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND UPHOLSTERER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| OILER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. REPAIRMAN | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. ELECTRICIAN | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. REF. ENGINEER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| SECURITY GUARD | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| INCINERATOR OPERATOR 1 | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| FLOOR MAINTENANCE | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $9 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 3RD ASST. CARPENTER | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $7 | $2.49 | $2.99 | $95 | $40 | $33 | $20 | $30 | $70 | $1,054 |
| 3RD ASST. UPHOLSTERER | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $7 | $2.49 | $2.99 | $95 | $40 | $33 | $20 | $30 | $70 | $1,054 |

# Royal Caribbean International - Wage Table

## Appendix 2 - Marine Riding - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7A | 7B | 8 | 9 | Benefit Value | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | | | Social Comp. | End of Serv. Grat | IMO STCW | Union Fee | T&O | CAM Related | Total ITF |
| | | | | | | | | | | | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 3RD ASST. REPAIRMAN | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $7 | $2.49 | $2.99 | $95 | $40 | $33 | $20 | $30 | $70 | $1,054 |
| 3RD ASST. ELECTRICIAN | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $7 | $2.49 | $2.99 | $95 | $40 | $33 | $20 | $30 | $70 | $1,054 |
| 3RD ASST. REF. ENGINEER | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $7 | $2.49 | $2.99 | $95 | $40 | $33 | $20 | $30 | $70 | $1,054 |
| INCINERATOR OPERATOR | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $7 | $2.49 | $2.99 | $95 | $40 | $33 | $20 | $30 | $70 | $1,054 |
| JR. SEAMAN | 0.590 | $339 | $116 | $135 | $590 | $95 | NA | $6 | $2.23 | $2.67 | $95 | $40 | $33 | $20 | $30 | $70 | $973 |
| JR. ENGINE MAN | 0.590 | $339 | $116 | $135 | $590 | $95 | NA | $6 | $2.23 | $2.67 | $95 | $40 | $33 | $20 | $30 | $70 | $973 |
| DECK TRAINEE** | 0.320 | $184 | $63 | $73 | $320 | $52 | NA | $3 | $1.21 | $1.45 | $95 | $40 | $33 | $20 | $30 | $70 | $659 |
| ENGINE TRAINEE** | 0.320 | $184 | $63 | $73 | $320 | $52 | NA | $3 | $1.21 | $1.45 | $95 | $40 | $33 | $20 | $30 | $70 | $659 |

** 1ST CONTRACT ONLY
Above values are all in US Dollars

NOTES
1. POSITION
2. GUARANTEED MONTHLY BASIC PAY FOR 44 HOURS PER WEEK INCLUDING COMPENSATION FOR IRREGULAR WORKING HOURS, AND WORK ON SATURDAY AND SUNDAYS.
3. MONTHLY INITIAL OVERTIME COMPENSATION FOR WORK BETWEEN 44 AND 56 HOURS PER WEEK
4. MONTHLY SUPPLEMENTAL OVERTIME COMPENSATION FOR 60.62 GUARANTEED OVERTIME HOURS PER MONTH INCLUDING WORK ON PUBLIC HOLIDAYS.
5. GUARANTEED MONTHLY TOTAL PAY
6. MONTHLY COMPENSATION FOR SEVEN DAYS VACATION PAY
7A. SENIORITY PAY AFTER FIRST AND SECOND SERVICE PERIOD
7B. RIDING CREW BONUS
8. GUARANTEED OVERTIME RATE PER HOUR, FOR 60.62 GUARANTEED OVERTIME HOURS PER MONTH
9. EXTRA OVERTIME RATE PER HOUR FOR WORK PERFORMED IN ADDITION TO THE GUARANTEED OVERTIME
10. SOCIAL PROGRAM COMPENSATION
11. RCCL END OF SERVICE GRATUITIES
12. ADDITIONAL NON COMPENSATION BENEFIT FOR IMO/STCW
13. UNION FEE
14. ADDITIONAL NON COMPENSATION BENEFIT FOR TRAINING AND DEVELOPMENT
15. ADDITIONAL NON COMPENSATION BENEFIT FOR CAM (HIRING MEDICAL, SHENGEN AND C1D VISAS, PASSPORT & BLUE BOOK RENEWAL, INTERNET ACCESS)
16. ADDITIONAL NON COMPENSATION BENEFITS + GUARANTEED MONTHLY TOTAL PAY

# Royal Caribbean International - Wage Table

## Appendix 3 - Marine Ratings - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7A | 7B | 8 | 9 | Social Comp. 10 | End of Serv. Grat. 11 | IMO STCW 12 | Union Fee 13 | T&D 14 | CAM Related 15 | Total ITF 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ENGINE FOREMAN | 1.320 | $759 | $259 | $302 | $1,320 | $213 | NA | $0 | $4.98 | $5.98 | $95 | $40 | $33 | $20 | $30 | $70 | $1,820 |
| TECHNICAL STOREKEEPER 1 | 1.320 | $759 | $259 | $302 | $1,320 | $213 | NA | $0 | $4.98 | $5.98 | $95 | $40 | $33 | $20 | $30 | $70 | $1,820 |
| BOATSWAIN | 1.250 | $719 | $245 | $286 | $1,250 | $201 | NA | $0 | $4.72 | $5.66 | $95 | $40 | $33 | $20 | $30 | $70 | $1,738 |
| FACILITIES CARPENTER SUPERVISOR | 1.250 | $719 | $245 | $286 | $1,250 | $201 | NA | $0 | $4.72 | $5.66 | $95 | $40 | $33 | $20 | $30 | $70 | $1,738 |
| FACILITIES REPAIRMAN SUPERVISOR | 1.250 | $719 | $245 | $286 | $1,250 | $201 | NA | $0 | $4.72 | $5.66 | $95 | $40 | $33 | $20 | $30 | $70 | $1,738 |
| FACILITIES CARPENTER | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| REPAIRMAN / FACILITIES REPAIRMAN | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| ASST. ELECTRICIAN / FACILITIES ASST. ELECTRICIAN | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| ASSISTANT REF. ENGINEER | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| TECHNICAL STOREKEEPER | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| SECURITY SUPERVISOR | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| INCINERATOR TECHNICIAN 1 | 1.194 | $687 | $234 | $273 | $1,194 | $192 | NA | $0 | $4.50 | $5.41 | $95 | $40 | $33 | $20 | $30 | $70 | $1,673 |
| AB | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| QUARTERMASTER | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| FACILITIES 1ST ASST. CARPENTER | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| FACILITIES UPHOLSTERER | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| MOTORMAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| INCINERATOR TECHNICIAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| 1ST ASST. REPAIRMAN / FACILITIES 1ST ASST. REPAIRMAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| 1ST ASST. ELECTRICIAN / FACILITIES 1ST ASST. ELECTRICIAN | 1.000 | $575 | $196 | $229 | $1,000 | $161 | NA | $0 | $3.77 | $4.53 | $95 | $40 | $33 | $20 | $30 | $70 | $1,448 |
| ORDINARY SEAMAN | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| FACILITIES 2ND ASST. CARPENTER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| FACILITIES 2ND UPHOLSTERER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| OILER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. REPAIRMAN / FACILITIES 2ND ASST. REPAIRMAN | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. ELECTRICIAN / FACILITIES 2ND ASST. ELECTRICIAN | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| 2ND ASST. REF. ENGINEER | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| SECURITY GUARD | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| INCINERATOR OPERATOR 1 | 0.810 | $466 | $159 | $185 | $810 | $130 | NA | $0 | $3.06 | $3.67 | $95 | $40 | $33 | $20 | $30 | $70 | $1,228 |
| FACILITIES 3RD ASST. CARPENTER | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $0 | $2.49 | $2.99 | $45 | $40 | $33 | $20 | $30 | $70 | $1,004 |

8 of 13

# Royal Caribbean International - Wage Table
## Appendix 3 - Marine Ratings - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7A | 7B | 8 | 9 | Benefit Value | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | Social Comp. | End of Serv. Grat. | IMO STCW | Union Fee | T&D | CAM Related | Total ITF |
| | | | | | | | | | | | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| FACILITIES 3RD ASST. UPOLSTERER | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $0 | $2.49 | $2.99 | $45 | $40 | $33 | $20 | $30 | $70 | $1,004 |
| 3RD ASST. REPAIRMAN / FACILITIES 3RD ASST. REPAIRMAN | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $0 | $2.49 | $2.99 | $45 | $40 | $33 | $20 | $30 | $70 | $1,004 |
| 3RD ASST. ELECTRICIAN / FACILITIES 3RD ASST. ELECTRICIAN | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $0 | $2.49 | $2.99 | $45 | $40 | $33 | $20 | $30 | $70 | $1,004 |
| 3RD ASST. REF. ENGINEER | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $0 | $2.49 | $2.99 | $45 | $40 | $33 | $20 | $30 | $70 | $1,004 |
| INCINERATOR OPERATOR | 0.660 | $380 | $129 | $151 | $660 | $106 | NA | $0 | $2.49 | $2.99 | $45 | $40 | $33 | $20 | $30 | $70 | $1,004 |
| JR. SEAMAN | 0.590 | $339 | $116 | $135 | $590 | $95 | NA | $51 | $2.23 | $2.67 | $45 | $40 | $33 | $20 | $30 | $70 | $922 |
| JR. ENGINE MAN | 0.590 | $339 | $116 | $135 | $590 | $95 | NA | $52 | $2.23 | $2.67 | $45 | $40 | $33 | $20 | $30 | $70 | $922 |

** 1ST CONTRACT ONLY

Above values are all in US Dollars

NOTES
1.  POSITION
2.  GUARANTEED MONTHLY BASIC PAY FOR 44 HOURS PER WEEK INCLUDING COMPENSATION FOR IRREGULAR WORKING HOURS, AND WORK ON SATURDAY AND SUNDAYS.
3.  MONTHLY INITIAL OVERTIME COMPENSATION FOR WORK BETWEEN 44 AND 56 HOURS PER WEEK
4.  MONTHLY SUPPLEMENTAL OVERTIME COMPENSATION FOR 80.62 GUARANTEED OVERTIME HOURS PER MONTH
5.  GUARANTEED MONTHLY TOTAL PAY
6.  MONTHLY COMPENSATION FOR SEVEN DAYS VACATION PAY
7A.  SENIORITY PAY AFTER FIRST AND SECOND SERVICE PERIOD
7B.  RIDING CREW BONUS
8.  GUARANTEED OVERTIME RATE PER HOUR, FOR 80.62 GUARANTEED OVERTIME HOURS PER MONTH
9.  EXTRA OVERTIME RATE PER HOUR FOR WORK PERFORMED IN ADDITION TO THE GUARANTEED OVERTIME
10.  SOCIAL PROGRAM COMPENSATION
11.  RCCL END OF SERVICE GRATUITIES
12.  ADDITIONAL NON COMPENSATION BENEFIT FOR IMO/STCW
13.  UNION FEE
14.  ADDITIONAL NON COMPENSATION BENEFIT FOR TRAINING AND DEVELOPMENT
15.  ADDITIONAL NON COMPENSATION BENEFIT FOR CAM (HIRING MEDICAL, SHENGEN AND C1D VISAS, PASSPORT & BLUE BOOK RENEWAL, INTERNET ACCESS)
16.  ADDITIONAL NON COMPENSATION BENEFITS + GUARANTEED MONTHLY TOTAL PAY

# Royal Caribbean International - Wage Table
## Appendix 4 - Hotel Group A - 2009

| 1 | Factor | 5 | 6 | 7 | 8 | Benefit Value | | | Total ITF |
| | | | | | | Pension Plan | T&D | Internet Access | |
| | | | | | | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|
| CHIEF PURSER | 2.008 | $1,943 | $117 | $32.57 | N/A | $60 | $30 | $20 | $2,171 |
| GUEST RELATIONS MANAGER - 1ST PURSER | 1.593 | $1,542 | $93 | $25.84 | N/A | $60 | $30 | $20 | $1,745 |
| CREW RELATIONS MANAGER - 1ST PURSER | 1.593 | $1,542 | $93 | $25.84 | N/A | $60 | $30 | $20 | $1,745 |
| CHIEF HOUSEKEEPER / STEWARD | 2.008 | $1,943 | $117 | $32.57 | N/A | $60 | $30 | $20 | $2,171 |
| 1ST HOUSEKEEPER / STEWARD | 1.593 | $1,542 | $93 | $25.84 | N/A | $60 | $30 | $20 | $1,745 |
| BAR MANAGER SR. | 2.317 | $2,243 | $135 | $37.58 | N/A | $60 | $30 | $20 | $2,488 |
| BAR MANAGER | 1.699 | $1,644 | $99 | $27.56 | N/A | $60 | $30 | $20 | $1,854 |
| F&B MANAGER | 2.317 | $2,243 | $135 | $37.58 | N/A | $60 | $30 | $20 | $2,488 |
| ASST. F&B MANAGER | 2.260 | $2,187 | $132 | $36.66 | N/A | $60 | $30 | $20 | $2,429 |
| EXECUTIVE CHEF | 2.317 | $2,243 | $135 | $37.58 | N/A | $60 | $30 | $20 | $2,488 |
| EXECUTIVE SOUS CHEF / CHEF DE CUISINE | 2.317 | $2,243 | $135 | $37.58 | N/A | $60 | $30 | $20 | $2,488 |
| WORKING CHEF / SOUS CHEF | 1.699 | $1,644 | $99 | $27.56 | N/A | $60 | $30 | $20 | $1,854 |
| TRAVELLING SUPERVISORS (FLOATING)* | 2.317 | $2,243 | $135 | $37.58 | N/A | $60 | $30 | $20 | $2,488 |
| PROVISION MASTER | 1.859 | $1,799 | $109 | $30.15 | N/A | $60 | $30 | $20 | $2,018 |
| MAITRE'D / DINING ROOM MANAGER | 2.008 | $1,943 | $117 | $32.57 | N/A | $60 | $30 | $20 | $2,171 |
| WINDJAMMER MANAGER | 1.859 | $1,799 | $109 | $30.15 | N/A | $60 | $30 | $20 | $2,018 |

Above values are all in US Dollars
1. POSITION TITLE
5. TOTAL MONTHLY GUARANTEED PAY FOR ALL HOURS WORKED INCLUDING IRREGULAR WORKING HOURS, WORK ON SATURDAYS, SUNDAYS, PUBLIC HOLIDAYS
6. MONTHLY COMPENSATION FOR 3 DAYS VACATION PAY
7. SICK PAY PER DAY
8. EXTRA OVERTIME RATE N/A AS GROUP A SEAFARERS ARE NOT ELIGIBLE FOR ANY OVERTIME PAY IRRESPECTIVE OF THE NUMBER OF HOURS ACTUALLY WORKED
9. ADDITIONAL NON COMPENSATION BENEFIT FOR PENSION PLAN SUBJECT TO APPLICALBE VESTING PERIOD UNDER THE TERMS OF THE PLAN
10. ADDITIONAL NON COMPENSATION BENEFIT FOR TRAINING AND DEVELOPMENT
11. ADDITIONAL NON COMPENSATION BENEFIT FOR INTERNET ACCESS
12. ADDITIONAL NON COMPENSATION BENEFITS + TOTAL MONTHLY GUARANTEED PAY.

EMPLOYEES NOTED ON THIS PAY SCALE ARE SALARIED AND NOT ENTITLED TO OVERTIME PAY.

* INDICATES ALL POSITIONS WHO ACT AS A TRAVELLING SUPERVISOR:
SENIOR EXECUTIVE CHEF, PASTRY / BAKER / PANTRY / COLD KITCHEN SUPERVISOR,
PUBLIC HEALTH OFFICER, BEVERAGE SUPERVISOR, HOUSEKEEPING SUPERVISOR,
TIME & ATTENDANCE SPECIALIST

# Royal Caribbean International - Wage Table
## Appendix 4 - Hotel Group B - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Pension Plan 9 | T&D 10 | Internet Access 11 | Total ITF 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2ND PURSER | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| 3RD PURSER / ASSISTANT PURSER | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| PRINTER PURSER | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| 2ND HOUSEKEEPER / STEWARD | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| STOREKEEPER | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| ASSISTANT STOREKEEPER | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| PHONE OPERATOR / DISPATCHER | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| LINENKEEPER | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.60 | $3.02 | $60 | $30 | $20 | $827 |
| LINENKEEPER / LAUNDRY MGR | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| HORTICULTURIST | 1.068 | $520 | $261 | $228 | $1,008 | $62 | $17.32 | $4.51 | $60 | $30 | $20 | $1,181 |
| YEOMAN | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| KITCHEN STEWARD | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| ASSISTANT FOOD MANAGER | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| ROOM SERVICE SUPERVISOR | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| CHEF DE PARTIE I | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| CHEF DE PARTIE II | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| CHEF DE PARTIE III | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| COOK TOURNANT | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| COOK FISH | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| COOK - VEGETABLE | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| COOK - ROAST | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| COOK - SOUP | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD BREAKFAST COOK | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD CREW COOK | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| DEMI CHEF DE PARTIE | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| COOK ASSISTANT | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| COOK TRAINEE | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.60 | $3.02 | $60 | $30 | $20 | $827 |
| BUTCHER | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| BUTCHER ASSISTANT | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| BUTCHER TRAINEE | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.60 | $3.02 | $60 | $30 | $20 | $827 |
| HEAD PASTRY | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| PASTRY COOK | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| PASTRYMAN ASSISTANT | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| PASTRY TRAINEE | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.60 | $3.02 | $60 | $30 | $20 | $827 |
| HEAD BAKER | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| BAKER ASSISTANT | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| BAKER TRAINEE | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.60 | $3.02 | $60 | $30 | $20 | $827 |
| HEAD PANTRY | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| PANTRYMAN ASSISTANT | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |

# Royal Caribbean International - Wage Table
## Appendix 4 - Hotel Group B - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Pension Plan 9 | Benefit Value T&D 10 | Benefit Value Internet Access 11 | Total ITF 12 |
|---|--------|---|---|---|---|---|---|---|---|---|---|---|
| PANTRYMAN TRAINEE | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.80 | $3.02 | $60 | $30 | $20 | $827 |
| HEAD BUFFET | 1.184 | $576 | $289 | $252 | $1,118 | $69 | $19.20 | $5.00 | $60 | $30 | $20 | $1,297 |
| BUFFETMAN ASSISTANT | 0.848 | $413 | $207 | $181 | $801 | $50 | $13.75 | $3.58 | $60 | $30 | $20 | $960 |
| BUFFET TRAINEE | 0.715 | $348 | $175 | $152 | $675 | $42 | $11.60 | $3.02 | $60 | $30 | $20 | $827 |

Above values are all in US Dollars

1. POSITION TITLE
2. MONTHLY BASIC PAY FOR 40 HOURS PER WEEK INCLUDING COMPENSATION FOR IRREGULAR WORKING HOURS, WORK ON SATURDAY, SUNDAYS AND PUBLIC HOLIDAYS.
3. MONTHLY COMPENSATION FOR WORK BETWEEN 40 AND 56 HOURS PER WEEK
4. MONTHLY COMPENSATION FOR 60.62 GUARANTEED OVERTIME HOURS PER MONTH
5. TOTAL MONTHLY GUARANTEED PAY for 303.10 HOURS OF WORK PER MONTH
6. MONTHLY COMPENSATION FOR 3 DAYS VACATION PAY
7. SICK PAY PER DAY
8. EXTRA OVERTIME RATE PER HOUR FOR WORK PERFORMED IN ADDITION TO THE GUARANTEED OVERTIME HOURS
9. ADDITIONAL NON COMPENSATION BENEFIT FOR PENSION PLAN SUBJECT TO APPLICALBE VESTING PERIOD UNDER THE TERMS OF THE PLAN
10. ADDITIONAL NON COMPENSATION BENEFIT FOR TRAINING AND DEVELOPMENT
11. ADDITIONAL NON COMPENSATION BENEFIT FOR INTERNET ACCESS
12. ADDITIONAL NON COMPENSATION BENEFITS + TOTAL MONTHLY GUARANTEED PAY.

# Royal Caribbean International - Wage Table

## Appendix 4 - Hotel Group C - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Pension Plan | T&D | Internet Access | Total ITF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 9 | 10 | 11 | 12 |
| STATEROOM / CABIN ATTENDANT*(*) | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD STATEROOM / CABIN ATTENDANT* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD WINE STEWARD/ESS* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| WINE STEWARD/ESS* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| BAR SUPERVISOR* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD BARTENDER* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| BARTENDER* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD BAR WAITER / SERVER* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| BAR WAITER / SERVER* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| HEAD WAITER/ESS* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| WAITER/ESS* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| ASSISTANT WAITER/ESS* | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| CONCIERGE | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |
| SPECIALTY CAFÉ ATTENDANT | 1.000 | $487 | $244 | $213 | $944 | $58 | $16.22 | $4.22 | $60 | $30 | $20 | $1,112 |

Above values are all in US Dollars

1.  POSITION TITLE
2.  MONTHLY BASIC PAY FOR 40 HOURS PER WEEK INCLUDING COMPENSATION FOR IRREGULAR WORKING HOURS, WORK ON SATURDAYS, SUNDAYS, AND PUBLIC HOLIDAYS
3.  MONTHLY COMPENSATION FOR WORK BETWEEN 40 AND 56 HOURS PER WEEK
4.  MONTHLY COMPENSATION FOR 60.62 GUARANTEED OVERTIME HOURS PER WEEK
5.  TOTAL MONTHLY GUARANTEED PAY for 303.10 HOURS OF WORK PER MONTH
6.  MONTHLY COMPENSATION FOR 3 DAYS VACATION PAY
7.  SICK PAY PER DAY
8.  EXTRA OVERTIME RATE PER HOUR FOR WORK PERFORMED IN ADDITION TO THE GUARANTEED OVERTIME HOURS
9.  ADDITIONAL NON COMPENSATION BENEFIT FOR PENSION PLAN SUBJECT TO APPLICALBE VESTING PERIOD UNDER THE TERMS OF THE PLAN
10. ADDITIONAL NON COMPENSATION BENEFIT FOR TRAINING AND DEVELOPMENT
11. ADDITIONAL NON COMPENSATION BENEFIT FOR INTERNET ACCESS
12. ADDITIONAL NON COMPENSATION BENEFITS + TOTAL MONTHLY GUARANTEED PAY.

* AS AGREED BETWEEN NSU and RCL. THE MONTHLY TOTAL GUARANTEED PAY AND VACATION PAY FOR GROUP C SHALL NOT BE LESS THAN $1050 PER MONTH AND PRO-RATED FOR PARTIAL MONTHS.
ALL AMOUNTS IN COLUMNS 2, 3, 4, 5 AND 6 ARE INCLUSIVE OF GRATUITIES AND/OR SERVICE FEES PROVIDED BY GUESTS OTHER THAN
$50.00 PER MONTH PAID BY OWNERS/COMPANY. IN RECOGNITION THAT OTHER SEAFARERS OFTEN ASSIST IN THE PERFORMANCE OF SERVICES,
ANY GRATUITIES OR SERVICE FEES PAID TO THE SEAFARER OR COLLECTED BY THE OWNERS/COMPANY OR THE SEAFARER SHALL BE SHARED WITH OTHER SUCH SEAFARERS WHO
ASSIST WITH ANY SERVICES.  THE OWNERS/ COMPANY WILL RECOMMEND THAT GUESTS PAY GRATUITIES FOR BEVERAGE, DINING ROOM AND STATEROOM SERVICE.

# Royal Caribbean International - Wage Table
## Appendix 4 - Hotel Group D - 2009

| 1 | Factor | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Pension Plan 9 | Benefit Value T&D 10 | Benefit Value Internet Access 11 | Total ITF 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HEAD CLEANER | 0.650 | $316 | $159 | $139 | $614 | $38 | $10.54 | $2.74 | $60 | $30 | $20 | $762 |
| CLEANER | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| STAFF / OFFICER ATTENDANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| HEAD POOL ATTENDANT | 0.650 | $316 | $159 | $139 | $614 | $38 | $10.54 | $2.74 | $60 | $30 | $20 | $762 |
| POOL ATTENDANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| LINENKEEPER ASSISTANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| CAFÉ ATTENDANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| ROOM SERVICE ATTENDANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| BELL ATTENDANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| BAR UTILITY | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| CULINARY UTILITY | 0.650 | $316 | $159 | $139 | $614 | $38 | $10.54 | $2.74 | $60 | $30 | $20 | $762 |
| HEAD UTILITY | 0.650 | $316 | $159 | $139 | $614 | $38 | $10.54 | $2.74 | $60 | $30 | $20 | $762 |
| UTILITY | 0.600 | $252 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |
| PROVISION / STOREKEEPER UTILITY | 0.650 | $316 | $159 | $139 | $614 | $38 | $10.54 | $2.74 | $60 | $30 | $20 | $711 |
| MESS ATTENDANT | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $762 |
| DINING ROOM CLEANER | 0.600 | $292 | $147 | $128 | $566 | $35 | $9.73 | $2.53 | $60 | $30 | $20 | $711 |

Above values are all in US Dollars
1.  POSITION TITLE
2.  MONTHLY BASIC PAY FOR 40 HOURS PER WEEK INCLUDING COMPENSATION FOR IRREGULAR WORKING HOURS , WORK ON SATURDAYS, SUNDAYS AND PUBLIC HOLIDAYS.
3.  MONTHLY COMPENSATION FOR WORK BETWEEN 40 AND 56 HOURS PER WEEK
4.  MONTHLY COMPENSATION FOR 89.62 GUARANTEED OVERTIME HOURS PER MONTH
5.  TOTAL MONTHLY GUARANTEED PAY for 303.10 HOURS OF WORK PER MONTH
6.  MONTHLY COMPENSATION FOR 3 DAYS VACATION PAY
7.  SICK PAY PER DAY
8.  EXTRA OVERTIME RATE PER HOUR FOR WORK PERFORMED IN ADDITION TO THE GUARANTEED OVERTIME HOURS
9.  ADDITIONAL NON COMPENSATION BENEFIT FOR PENSION PLAN SUBJECT TO APPLICALBE VESTING PERIOD UNDER THE TERMS OF THE PLAN
10. ADDITIONAL NON COMPENSATION BENEFIT FOR TRAINING AND DEVELOPMENT
11. ADDITIONAL NON COMPENSATION BENEFIT FOR INTERNET ACCESS
12. ADDITIONAL NON COMPENSATION BENEFITS + TOTAL MONTHLY GUARANTEED PAY.