# EXHIBIT 2

# IN THE UNITED STATES CIRCUIT COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## CASE NO.: 08-10613-J
## L.T. NO.: 07-21867-CV-JAL

---

## PULIYURUMPIL MATHEW THOMAS

### Plaintiff/Appellant,

### vs.

## CARNIVAL CORPORATION,

### Defendant/Appellee.

---

## APPELLEE'S ANSWER BRIEF

---

CURTIS J. MASE
Florida Bar No.:  0478083
RACHEL S. COHEN
Florida Bar No.: 0036810
MASE & LARA, P.A.
*Attorneys for Appellee*
80 S.W. Eighth Street -Suite 2700
Miami, Florida 33130
Tel. No.:  305-377-3770
Fax No.:  305-377-0080

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## CERTIFICATE OF INTERESTED PARTIES
## AND CORPORATE DISCLOSURE STATEMENT

**Plaintiff/Appellant:**

**PULIYURUMPIL MATTHEW THOMAS**

**Defendant/Appellee:**

**CARNIVAL CORPORATION (corporate disclosure below)**

**COUNSEL FOR APPELLANT:**

**Appellate Counsel:**
**Ralph O. Anderson, P.A.**
12535 Orange Drive, Suite 612
Davie, FL  33330

**Trial Counsel:**
**David W. Brill, Esq.**
Downs Brill Whitehead
1 SW 129th Avenue, Suite 305
Pembroke Pines, Florida  33127

**COUNSEL FOR APPELLEE:**

**Curtis J. Mase, Esq.**
**Rachel S. Cohen, Esq.**
Mase & Lara, P.A.
Miami, Florida  33130

**Hon. Joan A. Lenard,** United States District Judge, Southern District of
Florida

**Edwin G. Torres,** United States Magistrate Judge, Southern District of
Florida

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## CORPORATE DISCLOSURE STATEMENT
## OF APPELLEE, CARNIVAL CORPORATION

Appellee, CARNIVAL CORPORATION, a publicly traded company whose common stock is listed on the New York Stock Exchange, is the majority owner of the companies listed on Exhibit A hereto. On April 17, 2003, CARNIVAL and Carnival plc completed a dual listed company ("DLC") transaction, which implemented CARNIVAL'S and Carnival plc's DLC structure. The DLC transaction combined the businesses of CARNIVAL and Carnival plc through a number of contracts and amendments to CARNIVAL'S articles of incorporation and by-laws and to Carnival plc's memorandum of association and articles of association. The two companies have retained their separate legal identities, and each company's shares continue to be publicly traded on the New York Stock Exchange for CARNIVAL and the London Stock Exchange for Carnival plc. However, both companies operate as if they were a single economic enterprise. The contracts governing the DLC structure provide that CARNIVAL and Carnival plc each continue to have separate boards of directors, but the boards and senior executive management of both companies are identical. The amendments to the constituent documents of each of the companies also provide that, on most matters, the holders of the

ii
MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

common equity of both companies effectively vote as a single body. Carnival plc is the majority owner of the companies listed on Exhibit B hereto.

The executive officers of CARNIVAL and Carnival plc are as follows:

Micky Arison, Chairman of the Boards of Directors and Chief Executive Officer;

David Bernstein, Senior Vice President and Chief Financial Officer;

Alan B. Buckelew, President and Chief Executive Officer of Princess Cruises;

Gerald R. Cahill, President and Chief Executive Officer of Carnival Cruise Lines;

David K. Kingle, Chief Executive Officer of Carnival UK;

Pier Luigi Foschi, Chairman and Chief Executive Officer of Costa Crociere, S.p.A.;

Howard S. Frank, Vice Chairman of the Boards of Directors and Chief Operating Officer;

Larry Freedman, Chief Accounting Officer and Vice President – Controller;

iii
**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

Stein Kruse, President and Chief Executive Officer of Holland

America Line;

Arnaldo Perez, Senior Vice President, General Counsel and Secretary.

The following individuals make up the primary shareholders of

CARNIVAL or have shares held in trust for their benefit:

Micky Arison and other members of the Arison family and trusts for

their benefit, beneficially own shares of CARNIVAL common stock

approximately 29% of the combined voting power of CARNIVAL

and Carnival plc.

CARNIVAL submits that the aforementioned companies and

individuals, including any associated subsidiaries, may have a financial

interest in the outcome of this case.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## **STATEMENT REGARDING ORAL ARGUMENT**

Carnival believes that oral argument is not necessary and would not assist the Court in rendering its decision.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTERESTED PARTIES AND

CORPORATE DISCLOSURE STATEMENT ................................................ i

STATEMENT REGARDING ORAL ARGUMENT .................................. v

TABLE OF AUTHORITIES ....................................................................... vii

STATEMENT OF THE CASE AND FACTS ............................................. 1

STANDARD OF REVIEW ......................................................................... 3

SUMMARY OF THE ARGUMENT ........................................................... 4

ARGUMENT AND CITATIONS OF AUTHORITY ................................... 7

    I.    *Bautista* Controls the Disposition of this Case ......................... 7

    II.    Thomas's Defenses are Unavailing..............................................

    III.    The Arbitration Clause in the 2005 Seafarer's Agreement
           is Applicable to all of Thomas's Claims......................................

CONCLUSION............................................................................................ 28

CERTIFICATE OF FONT ......................................................................... 28

CERTIFICATE OF SERVICE ................................................................... 29

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## **TABLE OF AUTHORITIES**

**Case**                                                                                          **Page**

*Acosta v. Norwegian Cruise Line, Ltd.,*
    Case No. 03-22060-CIV-KING, 303 F. Supp. 2d 1327
    (S.D.Fla. 2003) ......................................................................... 8

*Adolfo v. Carnival Corp.,*
    2003 U.S. Dist. LEXIS 24143, No. 02-23672 (S.D. Fla. 2003)........... 7

*Amon v. Norwegian Cruise Lines, LTD.,*
    2002 U.S. Dist. LEXIS 27064, No. 02-21025 (S.D. Fla. 2002)........... 8

*Al-Zawkari v. American Steamship Company,*
    871 F.2d 585 (6th Cir. 1998) ............................................... 17

*Baldassaro v. United States,*
    64 F.3d 206 (5th Cir. 1995) ................................................ 17

*Bautista v. Star Cruises,*
    396 F.3d 1289 (11th Cir. 2005) ..........................3,4,5,6,7,8,12,16,19,20

*B.C. Rogers Poultry, Inc. v. Tommy Wedgeworth,*
    911 So.2d 483 (Miss. 2005)................................................. 26

*Becker v. Davis,*
    491 F.3d 1292 (11th Cir. 2007) .......................................... 26

*Beneficial Nat. Bank, U.S.A. v. Payton,*
    214 F. Supp.2d 679 (S.D. Miss. 2001) ................................. 25

*Bonny v. Society of Lloyd's,*
    3 F.3d 156 (7th Cir. 1993) ................................................ 20

*Calix v. Global International Marine, Inc.,*
    2006 U.S. Dist. Lexis 24365 (E.D. La. 2006) .................................. 18

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

*Carib Aviation & Marine Consultants, Ltd. v. Mitsubishi*
*Aircraft International, Inc.,*
    640 F. Supp. 582 (S.D. Fla. 1986) ...................................................... 24

*Circuit City Stores v. Saint Clair Adams,*
    532 U.S. 105, 121 S.Ct. 1302, 149 L. Ed. 234 (2001) ........................ 9

*Connett v. Justus Enterprises of Kansas, Inc.,*
    1989 U.S. Dist. Lexis 3529 (D. Kans. 1989)...................................... 26

*Cooper v. Diamond M Co.,*
    799 F.2d 176 (5th Cir. 1986) .............................................................. 22

*Dearborn Industrial Manufacturing Co. Ltd. v. Soudronic*
*Finanz AG*
    (N.D. Ill. 1997) .................................................................................. 20

*De Centeno v. Gulf Fleet Crews, Inc.,*
    798 F.2d 138 (5th Cir., 1986) ............................................................ 18

*Department of Public Welfare v. Davenport,*
    495 U.S. 552 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990) ................... 9

*DiMercurio v. Sphere Drake,*
    202 F. 3d 71 (1st Cir. 2000)............................................................... 13

*Double G Energy, Inc. v. At Gas Gathering, Inc.,*
    2005 U.S. Dist. LEXIS 15544, 26-27 (D. Tex. 2005)........................ 25

*First Options Of Chicago, Inc. v. Kaplan,*
    514 U.S. 938, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995) ................ 27

*Fleet Tire Service of North Little Rock v. Oliver Rubber Co.,*
    118 F.3d 619 (8th Cir. 1997) ............................................................. 27

*Francisco v. Stolt Achievement MT,*
    293 F. 3d 270 (5th Cir. 2002) ......................................................... 7,8

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

*Garay v. Carnival Cruise Line, Inc.,*
   904 F.2d 1527 (11th Cir., 1990) ........................................................ 18

*George Washington University v. Scott,*
   711 A.2d 1257 (D.C. 1998) .............................................................. 25

*Gregory v. Electro-Mechanical Corp.,*
   83 F.3d 382 (11th Cir. 1996) ............................................................ 26

*Guevara v. U.S. Attorney General,*
   132 Fed. App. 314 (11th Cir. 2005) ................................................. 18

*Hendrick v. Brown & Root, Inc.,*
   50 F.Supp.2d 527 (E.D. Va. 1999) .................................................. 26

*Jaranilla v. Megasea Mar., Ltd.,*
   2002 U.S. Dist. LEXIS 16505, No. Civ.A.02-2048,
   (E.D. La. 2002) ................................................................................. 8

*J.J. Ryan & Sons v. Rhone Poulenc Textile,*
   863 F.2d 315 (4th Cir. 1988) ........................................................... 25

*Koda v. Carnival,*
   Case No. 06-21088-CIV-HOEVELER ........................................... 20

*Kristian v. Comcast Corp.,*
   446 F.3d 25 (1st Cir. 2006).............................................................. 25

*Latoja v. Carnival,*
   546 U.S. 1208 (2006) ................................................................. 8,10

*Lim v. Offshore Specialty Fabricators, Inc.,*
   404 F.3d 898 (5th Cir. 2005) ........................................................... 16

*Lobo v. Celebrity Cruises, Inc.,*
   488 F.3d 891 (2007) ..................................................................... 4,16

*Marcus v. Masucci,*
   118 F. Supp. 2d 453 (S.D.N.Y. 2000) ............................................ 23

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

*McDermott International, Inc. v. Lloyds Underwriters of London,*
    944 F.2d 1199 (5th Cir. 1991) ............................................................... 9

*Mehler v. The Terminix Int'l Co. L.P.,*
    205 F.3d 44 (2d Cir. 2000) ................................................................... 25

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King,*
    804 F.Supp. 1512 (M.D. Fla. 1992) ..................................................... 22

*Miller v. Flume,*
    139 F.3d 1130 (7th Cir. 1998) .............................................................. 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
    473 U.S. 614 (1985)................................................................. 13,14,15

*Morales v. Garijak, Inc.,*
    829 F.2d 1355 (5th Cir., 1987) ............................................................. 18

*Narey v. Dean,*
    32 F.3d 1521 (11th Cir. 1994) .............................................................. 10

*Necchi v. Necchi Sewing Machine Sales Corp.,*
    348 F.2d 693 (2d Cir. 1965) ................................................................. 25

*Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,*
    139 F.3d 1061 (5th Cir. 1998) .............................................................. 25

*Picou v. American Offshore Fleet, Inc.,*
    576 F.2d 585 (5th Cir., 1978) ............................................................... 18

*Roofing & Sheet Metal Services v. La Quinta Motor Inns,*
    689 F.2d 982 (11th Cir. 1995) .............................................................. 9

*Rozanska v. Princess Cruise Lines, Ltd.*
    Case No. 07-23355-Civ-Gold/McAliley ............................................. 11

*Santos v. Carnival Corp.,*
    No. 03-20914 (S.D. Fla. 2003) ............................................................... 8

x
**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

*Sarmiento Cisneros v. United States AG,*
    381 F.3d 1277 (11th Cir. 2004) .......................................................... 10

*Security Watch, Inc. v. Sentinel Systems, Inc.,*
    176 F.3d 369 (6th Cir. 1999) ............................................................. 26

*Sherk v. Alberto-Culver Co.,*
    417 U.S. 506 (1974) .......................................................................... 13

*Sigalas v. Lido Maritime, Inc.,*
    776 F.2d 1512 (11th Cir. 1985) .......................................................... 24

*Tracer Research Corp. v. National Envtl. Servs. Co.,*
    42 F.3d 1292 (9th Cir. 1994) .............................................................. 25

*U.S. Bulk Carriers, Inc. v. Arguelles,*
    400 US. 351, 91 S.Ct. 409, 27 L. Ed. 456 (1971) ............................. 15

*Vimar Seguros y Reaseguros, S. A. v. M/V Sky Reefer,*
    515 U.S. 528, 132 L. Ed. 2d 462, 115 S. Ct. 2322 (1995) ....... 13,14,20

*Warren v. United States,*
    340 U.S. 523, 71 S.Ct. 432, 95 L. Ed. 503 (1951) ............................. 18

**OTHER AUTHORITIES:**

9 U.S.C. §201 ................................................................................... 4,7

9 U.S.C. §202 ................................................................................... 1,3

9 U.S.C. §203 ................................................................................... 15

9 U.S.C. §205 ................................................................................. 3,8,9

9 U.S.C. §207 ................................................................................... 15

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

15 U.S.C. §10212(b) ............................................................... 13

46 U.S.C. §10313 ............................................................... 6,23

46 U.S.C. §10313(f) ............................................................ 4,15

46 U.S.C. §30104(b) .............................................................. 11

H.R. 3387, Report No. 110-437 (Aug. 3, 2007) Section 2 ...................... 12

Public Law 109-304, 109th Congress, Section 2 ................................ 11,12

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## STATEMENT OF CASE AND FACTS

This is a matter Appellee Carnival Corporation (Carnival) removed to this Court pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Section 202 et seq.   Appellant Puliyurumpil Thomas (Thomas), originally filed a Complaint in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging Jones Act Negligence (Count I); Unseaworthiness (Count II); Failure to Provide Prompt and Adequate Maintenance and Cure (Count III), and Wages and Penalties (Count IV), all connected with his service on Carnival's vessel the *Imagination*.  [DE 1, p. 8].[1]

In the Complaint, Thomas alleges that in late 2004 while working aboard the Carnival ship *Imagination*, he injured his spine and right shoulder in a fall, and that a coffeepot also spilled on him during the fall, burning his right leg.  [DE 1, p. 10, para. 10].  He also alleges that the shipboard physician failed to treat him for his neck and shoulder injuries and that he was not able to return to work until in or around January, 2005.  [DE 1. p. 10, para. 12-13].  Approximately one month later he alleges he began to

---

[1] Citations to the record in this brief will be to the Docket Entry Number and page number as referenced in Appellant's Record Excerpts.

1

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

experience pain again in his neck and shoulder, and the shipboard physician told him he didn't have any injuries. [DE 1, p. 10, para. 14]

In October, 2005, Thomas signed a Seafarer's Agreement with Carnival which governed the terms and conditions of his employment and reads, in pertinent part, as follows:

> 7. Arbitration. Any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration ....

[DE 1, p. 5]. Thereafter, there were numerous instances in which Thomas visited and complained of shoulder and/or neck pain to the shipboard physician, who allegedly alternated between ignoring Thomas's injuries and treating them with pain killers, analgesic balm, local heat, physical therapy, and by ordering Thomas to remain off duty for certain periods of time. [DE 1, pp. 11-12, para. 21-24]. Thomas signed off the vessel on medical leave or about December 24, 2005. [D.E. 1, p. 12, para. 26]. Thomas saw a doctor at Carnival's request in his home country of India, and was diagnosed with chronic partial tear of the right supraspinatus tendon and degenerative disc disease. [D.E. 1, p. 12, para. 27]. Beginning about May 1, 2006, through June 30, 2006, Thomas emailed Carnival

2

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

regarding allegedly insufficient and/or late maintenance and cure payments. [D.E. 1, pp. 12-13, para. 28-32]. Then, in June of 2007, Thomas filed his Complaint in state court. [D.E. 1, p. 10].

Carnival removed the action to the U.S. District Court for the Southern District of Florida, pursuant to 9 U.S.C. § 205, in that it is an action arising under the laws of the United States and relating to an arbitration agreement falling under the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Section 202, et seq. [D.E. 1]. Carnival then moved to compel arbitration, [D.E. 2] pursuant to the Convention, and Thomas moved for Remand. [D.E. 7]. On January 4, 2008, the District Court entered an Order Granting Defendant's Motion to Compel Arbitration; Denying as Moot Plaintiff's Motion to Remand; and Closing Case. [D.E. 49]. The instant appeal challenges the propriety of that Order.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's order to compel arbitration. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## SUMMARY OF THE ARGUMENT

In *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005), this Court squarely held that a seaman's Jones Act claim is subject to arbitration under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 et seq., which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Thomas devotes the bulk of his 70-page Initial Brief to arguing points which were expressly rejected in *Bautista,* such as that Chapter 2 of the FAA, 9 USC §§201-209, specifically excludes seamen from its provisions, or that his right to bring a claim in the U.S. under the Jones Act cannot be abrogated by contract. Also spurious is Thomas's claim that his wages and penalties claim under 46 U.S.C. Section 10313(f) is exempt from arbitration; this Court specifically rejected this argument in *Lobo v. Celebrity Cruises, Inc.*, 488 F.3d 891 (2007).

Thomas contends that the Seafarer's Agreement itself is invalid because it eliminates his maintenance and cure claim by providing that Carnival "reserves the right" to provide medical treatment aboard ship, on shore, or in his home country "at CCL's sole option." It is obvious from the language of the contract itself that the phrase "CCL's sole option" is meant only to refer to *where* the seafarer will be sent for treatment, and not *whether*

4
**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

he is entitled to treatment at all.    This is entirely permissible under applicable maritime law.

Thomas claims that the Seafarer's Agreement violates the Shipowner's Liability Convention of 1936, which makes arbitration agreements unenforceable when the agreement affects maintenance and cure. This is incorrect. The purpose of the 1936 Convention was to equalize operating costs by raising the standards of member nations to the American level, and not to adopt a more strict standard of liability than that which the general maritime law provides.

Thomas argues that arbitration is inappropriate because the parties have unequal bargaining power, and that the arbitration provision is procedurally unconscionable and substantively unconscionable because he was compelled to sign the Seafarer's Agreement containing the provision as a condition of his employment.    Both these arguments were rejected in *Bautista*.

Thomas claims that arbitration is too costly and he cannot afford the fees.  Carnival has agreed to pay all arbitration fees in this matter.  He also argues that the forum for arbitration, Manila, is too far away from his home in Mumbai, India, and that the arbitration provision impermissibly limits

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

discovery.   Similar arguments rejected in *Bautista,* and Miami, where Thomas and his Miami counsel would like to litigate his claim, is farther away.  In sum, this *Bautista* controls this appeal and this Court should affirm the decision of the District Court to compel arbitration.

Finally, Thomas argues, as he did below, that the parties did not contract for arbitration of these causes of action, because the Seafarer's Agreement relates to a different period of employment than the period of employment when the alleged injury took place.[2]   The Complaint on its face shows this to be absolutely incorrect.  As the District Court correctly noted, Thomas's claims emanate from not only the accident itself, but pst-accident failure to provide prompt, proper and adequate medical care *through the present day*.  The claim for Failure to Pay Wages Under the Seaman's Wage Act, 46 U.S.C. Section 10313, allegedly arose after October, 2005.  Such allegations of misconduct are subject to arbitration.

In sum, all issues raised herein are controlled by *Bautista.*   The District Court's decision to compel arbitration pursuant to the Convention and the agreement between the parties must be affirmed.

---

[2] Interestingly, while this was the focus of Thomas's argument below, in his Initial Brief to this Court he relegates this argument to last, taking instead a scattershot approach of raising new arguments in an effort to re-litigate *Bautista*.

6

MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.   *Bautista* Controls the Disposition of this Case.

In *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005), this Court squarely held that an arbitration provision in a seaman's contract is valid and enforceable under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 et seq., which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  This case is no different than *Bautista*, and was thus correctly referred to arbitration in accordance with written agreement between the parties.

Thomas acknowledges that his Initial Brief simply reiterates those points which have already been rejected by the Eleventh Circuit in *Bautista.* First, he reargues that Chapter 2 of the FAA, 9 USC §§201-209, specifically excludes seamen from its provisions, going on to claim that because of this exemption, the subject matter of this dispute is not capable of arbitration. This argument was not only explicitly rejected in *Bautista,* this interpretation is consistent with the holding of the Fifth Circuit—the only other court of appeals at that time to decide the issue – and several district courts.[3]  In the

---

[3] *See Francisco v. Stolt Achievement MT*, 293 F.3d 270 (5th Cir. 2002), *cert. denied*, 537 U.S. 1030 (2000); *Adolfo v. Carnival Corp.*, 2003 U.S. Dist.

7

MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

face of this well-established precedent, Thomas can only claim *Bautista* was "wrongly decided." This is unpersuasive. Indeed, the United States Supreme Court denied *certiorari* in *Bautista* as well as in two cases which addressed the identical issue: *Francisco v. Stolt Achievement MT,* 293 F. 3d 270 (5th Cir. 2002), a Fifth Circuit case which compelled a foreign seaman to arbitrate pursuant to the Convention; and *Latoja v. Carnival,* 546 U.S. 1208 (2006), a case which was decided based on *Bautista.*[4]

Next, Thomas contends that his right to bring a claim in the U.S. under the Jones Act cannot be abrogated. Thomas is wrong. As the court in *Bautista* recognized, the right of a seaman to choose a state court forum has never been interpreted as absolute, and 9 U.S.C. Section 205 provides an independent removal statute whose unmistakable purpose is to guarantee a federal forum for all Convention Act cases. It expressly provides for an independent basis for jurisdiction for all foreign arbitral claims – a federal question -- notwithstanding the presence of an alleged Jones Act claim. The

---

LEXIS 24143, No. 02-23672 (S.D. Fla. 2003); *Acosta v. Norwegian Cruise Line, Ltd.,* Case No. 03-22060-CIV-KING, 303 F. Supp. 2d 1327 (S.D.Fla. 2003); *Santos v. Carnival Corp.,* No. 03-20914 (S.D. Fla. 2003); *Jaranilla v. Megasea Mar., Ltd.,* 2002 U.S. Dist. LEXIS 16505, No. Civ.A.02-2048, (E.D. La. 2002); *Amon v. Norwegian Cruise Lines, LTD.,* 2002 U.S. Dist. LEXIS 27064, No. 02-21025 (S.D. Fla. 2002).

8

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

Convention must be construed broadly in favor of removal. *See McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991). To interpret the Convention otherwise would render 9 U.S.C. Section 205 both superfluous and irrelevant, an interpretation that the Supreme Court has rejected. *See Circuit City Stores v. Saint Clair Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L. Ed. 234 (2001), *citing, Department of Public Welfare v. Davenport*, 495 U.S. 552, 562, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990).

Thomas attempts to revisit this issue by noting that the Jones Act has been amended this year to eliminate the specific venue provision therein. From this, he extrapolates, without any evidence, that Congress removed this venue provision in order to make FELA, and its prohibitions on forum selection provisions, applicable to seamen.

In the first place, this issue was not raised below and thus cannot be addressed on appeal. *Roofing & Sheet Metal Services v. La Quinta Motor Inns,* 689 F.2d 982, 989 (11th Cir. 1995) (an appellate court generally will not consider a legal issue or theory unless it was presented to the trial court). It is true that there are five limited exceptions to this rule which will permit

---

[4] In *Bautista*, the Appellants also filed a petition for *certiorari* with the U.S. Supreme Court, but later dismissed the petition after the matter had been resolved through arbitration.

9

MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

review of an issue not raised below. *Narey v. Dean*, 32 F.3d 1521, 1526-27

(11th Cir. 1994). Thomas will likely argue that the issue of the amendment

of the Jones Act falls within one of these limited exceptions: an issue which

he had no opportunity to raise below. [5]   While it may be true that the

amendment occurred after the District Court's Order, this, ultimately, is of

no help to Thomas.  It is axiomatic that a statute, or an amendment thereto,

cannot apply retroactively absent express language providing as such, which

is not present in the Jones Act amendment on which Thomas relies. *See,*

*e.g., Sarmiento Cisneros v. United States AG*, 381 F.3d 1277 (11th Cir.

2004)(discussing strong presumption against retroactive application of a

statute absent clear intent by Congress as to retroactive application). Thus,

even if Thomas's interpretation of the effect of the amendment were correct,

that interpretation cannot apply to his case, which arose prior to the

amendment.

---

[5] The five exceptions are as follows: (1) the issue could not have been raised
below; (2) the issue involves a pure question of law and refusal to consider it
would result in a miscarriage of justice; (3) the interest of substantial justice
is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue
presents significant questions of general impact or of great public concern.
The Supreme Court's declining of certiorari review in *Stolt* and *Latoja*, both
cases upholding the Convention in the context of seaman's contracts, belies
any assertion by Thomas regarding the importance of this case to either
justice or public concern, leaving only the first exception for possible
application.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

Even if the amendment to the Jones Act *could* be applied retroactively to hold FELA applicable to Thomas's claim, there is no support for Thomas's argument that the amendment *should* operate in this manner. The only case to even address this argument, in *dicta*, is *Rozanska v. Princess Cruise Lines, Ltd.*, Case No. 07-23355-Civ-Gold/McAliley, which said, in a footnote, that because the Jones Act has been amended this year to eliminate the specific venue provision at 46 U.S.C. Section 30104(b), seamen could now rely on the FELA venue clause to apply to prohibit forum selection clauses from being enforced in Jones Act cases. In the first place, the *Rozanska* opinion itself notes that the decision not to enforce the forum selection clause in that case was based on an entirely different analysis, and not the interpretation of the Jones Act modifications Thomas suggests. Moreover, the *Rozanska* case did not involve an arbitration issue under the New York Convention, and thus is distinguishable on that basis as well.

In fact, the stated purpose of the recent amendment to the Jones Act is merely administrative: to update Public Law 109-304 to reflect amendments added after the cutoff date, to reflect public comments submitted too late,

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

and to correct technical errors.[6]  *No mention is made of making FELA's venue provisions applicable to seamen.*   It makes more sense that the removal of the Jones Act venue provision is consistent with *Bautista*, and with the policy of enforcing agreements to arbitrate in these cases, because the venue provision which was removed provided that "an action under this section shall be brought in the judicial district in which the employer resides or the employer's principal office is located."  In light of the post-*Bautista* enforcement of foreign arbitration provisions even in Jones Act claims, a U.S. District venue provision is unnecessary and inconsistent.

Next, Thomas argues that the harm resulting from this particular arbitration clause is greater than merely depriving him of a U.S forum for his Jones Act claim.   He argues that because the contract provides for application of Panamanian law, the contract in this case completely eliminates his right to bring those claims at all.  In the first place, Thomas's assertion that Carnival is attempting to use the forum selection clause and choice of law clause in its contract to exempt itself from liability for Jones Act negligence is false and without any support.   Thomas has made no

---

[6] See H.R. 3387, Report No. 110-437, August 3, 2007, Section 2: Purpose; and Public Law 109-304, 109th Congress, Section 2: Purpose, of which this Court can take judicial notice, and which are attached as an addendum hereto as Exhibit "A" and "B" for this Court's convenience.

12

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

showing that Panamanian law would not provide him with a remedy for the negligence of his employer, which is essentially all that the Jones Act affords.

Notwithstanding, there is substantial well-established case law holding that a foreign arbitration clause must be enforced even where there might be a conflict with other U.S. statutory authorities, such as the Jones Act. *See Vimar Seguros y Reaseguros, S. A.* v. *M/V Sky Reefer*, 515 U.S. 528, 132 L. Ed. 2d 462, 115 S. Ct. 2322 (1995) (finding arbitration clause enforceable and rejecting countervailing arguments that policy required a foreign arbitration clause be ignored where there might be conflict with the Carriage of Goods by Sea Act); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614 (1985) (claim under U.S. anti-trust law was properly referable to international arbitration; *DiMercurio v. Sphere Drake*, 202 F. 3d 71 (1st Cir. 2000) (arbitration clause in insurance policy enforceable even where state law voids provisions in insurance policies that deprive its courts of jurisdiction and even in light of similar protections in the McCarran-Ferguson Act, 15 U.S.C. §10212(b)); *Sherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 (1974)(enforcing an international arbitration agreement even while assuming for purposes of the decision that the

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

controversy would be nonarbitrable had it arisen out of a domestic transaction); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. at 629 ("[W]e conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, *even assuming that a contrary result would be forthcoming in a domestic context." (emphasis added))*.

Thomas attempts to distinguish these cases by noting that both *Vimar* and *Mitsubishi* hold that a forum selection clause may be void as against public policy if it were to operate in tandem with a choice-of-law clause to completely eliminate statutory remedies. In fact, both *Vimar* and *Mitsubishi* declined to make such a holding *even where faced with a choice-of-law provision which could potentially deprive the plaintiff of a statutory remedy.* In *Vimar*, the plaintiff argued that because Japanese law was to apply, there was a question as to whether that law would reduce the carrier's obligations to the cargo owner below what COGSA guarantees. As the Supreme Court correctly pointed out in that case, the choice-of-law question must be decided in the first instance by the arbitrator. Therefore, the court found that

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

this argument was premature. The Court also noted that the District Court had retained jurisdiction over the case and "will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the . . . laws has been addressed." Here, too, to conclude that Thomas would be deprived of a remedy should Panamanian law apply would be premature. The Convention mandates that the District Court retain jurisdiction to enforce any future arbitral award, and so it, too will have the opportunity at that stage to visit the issue of enforcement of the laws. *See*, 9 U.S.C. §§ 203, 207. *See also Mitsubishi*, ("We therefore have no occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce the award.").

## II.   <u>Thomas's Defenses are Unavailing</u>

In his Initial Brief, as he did below, Thomas claims that even if the arbitration agreement were valid under the Convention, certain defenses apply. They do not.

Thomas claims that his wages and penalties claim under 46 U.S.C. Section 10313(f) is exempt from arbitration and that *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 US. 351, 91 S.Ct. 409, 27 L. Ed. 456 (1971), prohibits arbitration because a seaman's right to pursue his statutory claim for

15
**MASE & LARA, P.A.**

contractual wages in federal court cannot be thwarted by an arbitration clause.   Again, this argument was not raised below and need not be considered here, as it does not fall within one of the limited exceptions described above: it could have been raised earlier, and it is neither solely a question of law nor a matter of sufficient impact on justice or public importance to justify review.   Moreover, Thomas's interpretation of *Arguelles* was expressly rejected in *Lobo v. Celebrity Cruises, Inc.*, 488 F.3d 891 (11th Cir. 2007).   Thomas cites to numerous cases he claims support his interpretation, but none involve the question of arbitration under the Convention.   Indeed, Thomas himself acknowledges the *Lobo* decision, but argues, as with *Bautista*, that *Lobo* was "wrongly decided."   Thomas also admits that in *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005), the Fifth Circuit found that *Arguelles* did not declare that claims for wages could not be arbitrable in all situations, and clearly questioned the continuing ability of seamen to bring wage claims in federal court in light of the Convention.

Next, Thomas contends that the Seafarer's Agreement itself is invalid because it eliminates his maintenance and cure claim.   Again, it must be noted that this argument was not raised below and thus cannot be addressed

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

on appeal.[7]  In support, he cites to the language of the Seafarer's Agreement which states that if he becomes ill or injured Carnival "reserves the right" to provide medical treatment aboard ship, on shore, or in his home country "at [Carnival's] sole option," regardless of whether the Seafarer's Agreement has been terminated.  Even if this Court could consider this argument, it is spurious.

Thomas argues that Carnival's is an "optional" maintenance and cure provision which impermissibly abrogates his right to maintenance and cure. It is obvious from the language of the contract itself that the phrase "CCL's sole option" is meant only to refer to *where* the seafarer will receive treatment, and not *whether* he is entitled to treatment at all.  The right to maintenance and cure can certainly be modified and defined by a contract as the Seafarer's Agreement does here. *Al-Zawkari v. American Steamship Company*, 871 F.2d 585 (6th Cir. 1998); *Baldassaro v. United States*, 64 F.3d 206 (5th Cir. 1995).  In any event, had Thomas viewed Carnival's exercising

---

[7] Again, this argument does not meet with one of the five limited exceptions to this established appellate doctrine; it could have been raised earlier, and it is neither solely a question of law nor a matter of sufficient impact on justice or public importance to justify review.

17

MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

its option as a breach of its duty to provide maintenance and cure, he certainly could have brought an action, in arbitration, for that breach.[8]

Next, Thomas contends that arbitration violates the Shipowner's Liability Convention of 1936. Thomas errs here as well. The purpose of that Convention was to equalize operating costs by raising the standards of member nations to the American level, and not to adopt a stricter standard of liability than that which the general maritime law provides. *See Warren v. United States*, 340 U.S. 523, 71 S.Ct. 432, 95 L. Ed. 503 (1951). Moreover, even if there were a conflict, because the Shipowner's Liability Convention was ratified in 1936, and the Convention Act in 1970, the later of the two enactments prevails over the earlier under the last-in-time rule. *See Guevara, v. U.S. Attorney General*, 132 Fed. Appx. 314 (11th Cir. 2005). Thomas's contention that *Calix v. Global International Marine, Inc.*, 2006 U.S. Dist. Lexis 24365 (E.D. La. 2006), controls this issue is also without merit. That case involves litigation, not arbitration, so that the Court never

---

[8] Indeed, the negligent refusal to provide maintenance and cure may give rise to an action under the Jones Act. *Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1533 (11th Cir., 1990); *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587-88 (5th Cir., 1978); *see also Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir., 1987) (punitive damages and attorney's fees); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir., 1986) (vicarious liability for negligent medical treatment by physician selected by shipowner).

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

even considered the effect of the Convention Act on the forum selection clause in the seaman's employment contract.

Thomas's argument that arbitration is inappropriate because the parties have unequal bargaining power is also without merit. This argument was squarely rejected by the Eleventh Circuit in *Bautista,* 396 F.3d 1289. Thomas claims that this Court should look to the "UNIDROIT Principles" to define "unequal bargaining power." UNIDROIT's definition of unequal bargaining power is not one that a court is bound to adopt when faced with the decision in *Bautista* to compel arbitration in cases such as this. Also, the UNIDROIT principles are not binding unless expressly provided for in a contract; no such contractual provision exists in this case.

Thomas next argues that arbitration is "too high a hurdle" because he the arbitration provision provides that he has to pay half the costs. This is deliberately misleading, particularly Thomas's claim that Carnival may choose not to pay *its* half of the arbitration costs, leaving him to pay the entire amount. In fact, not only will Carnival pay its share of the costs, Carnival has agreed to pay *all* of the costs of arbitration, and Thomas is well aware of that agreement.[9] Regardless, a similar argument was raised, and

---

[9] The issue of Carnival's arbitration clause requiring the seaman to pay half the costs or arbitration was first raised by a Carnival seafarer in the case of

19

MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

rejected, in *Bautista*.   Courts routinely enforce forum selection clauses

despite equitable arguments that the plaintiff cannot afford to litigate.   *See*

*Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993); and *Dearborn*

*Industrial Manufacturing Co. Ltd. v. Soudronic Finanz AG* (N.D. Ill. 1997).

*See also, Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 115 S.Ct.

2322 (1995).

Thomas also argues that the forum for arbitration, Manila, is too far

away from his home in Mumbai, India.   It must be noted that Miami, where

Thomas and his Miami counsel would like to litigate his claim, is further

away.   Thomas's final equitable argument is that because the arbitration

provision provides that the parties waive the ability to compel information

from each other, it prevents him from presenting his claim and thus is

invalid.   He claims that he will be "limited to obtaining only statements as

provided voluntarily by Carnival."   This, too, is misleading.   The arbitration

provision provides that the *parties* have agreed not to compel discovery *from*

*each other*.   The Rules of the American Arbitration Association's

---

*Koda v. Carnival*, Case No. 06-21088-Civ-Hoeveler. Carnival immediately
recognized the validity of this argument by the seafarer and agreed to
assume all of the costs of arbitration in that matter and in all cases brought to
arbitration from that point on.   Then, in January, 2007, Carnival amended
the arbitration in the Seafarer's Agreement to provide that Carnival shall pay
all of the costs of arbitration.

20

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

International Centre for Dispute Resolution, which the parties have agreed to
follow, mandate that the tribunal ensure that each party is given a fair
opportunity to present its case.[10] To this end, the tribunal has the power to
*order* a party to produce documents, exhibits, or other evidence it deems
necessary and appropriate, and all such documents and other evidence *must*
be provided to the other party.[11] With such due process protections in place,
there is no need for the parties to compel information *from each other*, and
this type of activity would only serve to delay the proceedings. Indeed, the
waiver of such "discovery" as would be customary in a civil lawsuit accords
with the goals of arbitration to provide a streamlined and expedited process.

**III.    The Arbitration Clause in the 2005 Seafarer's Agreement is
          Applicable to all of Thomas's claims**

Thomas argues that the arbitration provision in the 2005 Seafarer's
Agreement should not govern his claims because his injuries arose long
before he signed that Agreement.[12] In support, he cites to cases which he

---

[10] These Rules can be found at http://www.adr.org/sp.asp?id=33994, and
Carnival request that this Court take judicial notice of them.

[11] The Rules do not address whether a claimant can be compelled to undergo
a physical examination, and for this reason the parties have expressly agreed,
in the arbitration provision, that the seaman will submit to same.

[12] In his pleadings to the court below, this was the predominant focus of
Thomas's briefing. Curiously, he has all but abandoned this argument now,
relegating it to a few paragraphs at the end of his Initial Brief. Instead, he

21

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

claims do not support giving "retroactive" effect to arbitration clauses. Courts have, in fact, retroactively applied arbitration agreements to activities which occur prior to the execution of the agreement. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F.Supp. 1512, 1514 (M.D. Fla. 1992). However, as the District Court correctly found, no "retroactive" application is required in this case: all of Thomas's claims in the Complaint allege conduct by Carnival which took place after the signing of the 2005 arbitration provision, through June 30, 2006.

Thomas himself states in his maintenance and cure count that the alleged conduct which forms the basis of this claim arose *since he signed the Seafarer's Agreement which contained the arbitration provision.* The Complaint further alleges instances of Thomas's demanding maintenance and cure in 2006, after the signing of the 2005 Seafarer's Agreement. The law is clear that a claim for failure to pay maintenance and cure arises at the time payment is owed, not at the time the obligation arises. *See, Cooper v. Diamond M Co.*, 799 F.2d 176, 179 (5th Cir. 1986). Accordingly, this claim arose well within the period covered by the arbitration agreement.

---

now takes a "shotgun" approach and asserts a grab bag of new arguments, arguments which were not raised below, in a desperate attempt to re-litigate issues which were well-settled by this Court in *Bautista.*

22

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

The claim for failure to pay wages under the Seaman's Wage Act, 46 U.S.C. Section 10313, also arose after the signing of the October, 2005, Seafarer's Agreement. According to the statute itself, wages are not owed and the penalty cannot be incurred until after the seaman is discharged from the vessel on expiration of his contract which, according to Thomas's own Complaint, occurred on December 24, 2005.

Thomas asserts that his Jones Act Negligence and Unseaworthiness claims both arise from his injury in an accident in November, 2004 and, thus, that these claims are not covered by the 2005 Seafarer's Agreement containing the arbitration clause. In fact, these claims allege Carnival failed to provide Thomas with adequate medical care well after the signing of the 2005 Seafarer's Agreement. This type of misconduct by Carnival is subject to the arbitration provision. *See, Marcus v. Masucci*, 118 F. Supp. 2d 453, 457 (S.D.N.Y. 2000)(where complaint alleges ongoing misconduct by defendants, claims are subject to arbitration provision).

Moreover, while it may emanate, in part, from the original 2004 injury, the dispute between the parties in this case *did not arise at the time of that injury*. Instead, it arose in 2006, at the time the Thomas demanded payment for maintenance and cure and for wages and was refused, shortly prior to the filing of the instant lawsuit and well within the period covered

23
**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

by the signed Seafarer's Agreement.[13]   Furthermore, an action sounding in tort may be arbitrated whenever, as here, the underlying contract embraces the disputed matter.  The Agreement between Thomas and Carnival to work as a seaman embraces accident and injury.  *See, Carib Aviation & Marine Consultants, Ltd. v. Mitsubishi Aircraft International, Inc.*, 640 F. Supp. 582, 588 (S.D. Fla. 1986).

Even if one were to accept Thomas's incorrect premise that all of his claims stem only from the discrete 2004 slip and fall incident, which they do not, the arbitration provision still applies, because it encompasses "any and all disputes arising out of or in connection with this Agreement ...or Seafarer's service on the vessel."  The instant lawsuit is certainly a dispute in connection with both the employment agreement and Thomas's service aboard the vessel *Imagination*.  The Seafarer's Contract itself, in Paragraph 3E, describes the employer's duties should the seaman become injured or ill, including the provision of unearned wages and medical care.  It is those actions, and Thomas's allegations that they were deficient, which form the basis of this dispute.

---

[13]   As a matter of law, suit cannot be maintained on a wage claim under Section 596 unless prior to suit there has been a demand for payment and a denial or disregard of that demand. *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1521 (11th Cir. 1985)

24

MASE & LARA, P.A.

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

As a matter of law, arbitration agreements like the one in the instant case which use not only the phrase "arising out of," but also "in connection with" resolve any doubt that the arbitration agreement is meant to cover *all disputes between the parties. Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (*citing Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)); *J.J. Ryan & Sons v. Rhone Poulenc Textile*, 863 F.2d 315, 321 (4th Cir. 1988); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)); *Double G Energy, Inc. v. At Gas Gathering, Inc.*, 2005 U.S. Dist. LEXIS 15544, 26-27 (D. Tex. 2005). Such a broad clause has been routinely held to encompass claims which arise prior to the arbitration agreement. *See, Beneficial Nat. Bank, U.S.A. v. Payton*, 214 F. Supp.2d 679, 689-90 (S.D. Miss. 2001); *Kristian v. Comcast Corp.*, 446 F.3d 25, 35-36 (1st Cir. 2006); *Mehler v. The Terminix Int'l Co. L.P.*, 205 F.3d 44, 48 (2d Cir. 2000).

The cases Thomas cites in support of a contrary holding are all distinguishable on this very point, because their language is not "similar to or even broader" than Carnival's, as Thomas contends. In the bulk of these cases, the arbitration provisions lack the "in connection with" language and state only "arising under." *See e.g., George Washington University v. Scott*, 711 A.2d 1257 (D.C. 1998). In *Necchi v. Necchi Sewing Machine Sales*

25

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

*Corp.*, 348 F.2d 693 (2d Cir. 1965), for example, the contract at issue which contained an arbitration provision did not refer to or govern the disputed conduct between the parties at all.   Plaintiff's remaining cases refer to specific product shipments, *See Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369 (6th Cir. 1999); contain language which is expressly forward-looking; s*ee Hendrick v. Brown & Root, Inc.,* 50 F.Supp.2d 527 (E.D. Va. 1999)("will be bound"); *Connett v. Justus Enterprises of Kansas, Inc.*, 1989 U.S. Dist. Lexis 3529 (D. Kans. 1989)("shall cover"); or specifically state that controversies must arise during the period of the agreement. *See B.C. Rogers Poultry, Inc. v. Tommy Wedgeworth*, 911 So.2d 483 (Miss. 2005).   Clearly, all are much narrower in scope than that in the instant case.

The District Court was correct, then, in finding that based on the broad language of the arbitration provision in the 2005 Seafarer's Agreement, the parties intended to arbitrate all claims arising from Thomas's employment on the *Imagination. See Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 386 (11th Cir. 1996)(noting that any doubt concerning scope of arbitrable issues should be resolved in favor of arbitration); *Becker v. Davi*s, 491 F.3d 1292, 1305 (11th Cir. 2007)("federal policy requires us to construe arbitration clauses generously").

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

In any event, the question of whether the parties agreed to arbitrate the dispute in this case is not properly before this Court. In *First Options Of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995), the Supreme Court made it clear that parties could agree to allow the arbitrator to resolve the question "did all these parties agree to arbitrate this dispute on the merits," consistent with the general notion of freedom of contract. In this case, the parties did: the arbitration provision in the Seafarer's Agreement signed by the Thomas, at paragraph 7, clearly states that "any question regarding [the Agreement's] existence, validity, or termination" shall be resolved by the arbitrator. Even if the parties had not expressly agreed that such matters were for the arbitrator to decide, which they did, as a matter of law this would still be the case. Where a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration. *See, Fleet Tire Service of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997).

27

**MASE & LARA, P.A.**

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## **CONCLUSION**

This Court should affirm the dismissal of this action and granting of

the Motion to Compel Arbitration by the District Court.

## **CERTIFICATE OF FONT**

The undersigned certifies that this Answer Brief has been submitted in

14-point, Times New Roman typeface, in accordance with the Rules of the

Eleventh Circuit.

Respectfully submitted,

MASE & LARA, P.A.
*Attorneys for Appellee*
80 S.W. Eighth Street -Suite 2700
Miami, Florida 33130
Tel. No.: 305-377-3770
Fax No.: 305-377-0080


By:_____
    CURTIS J. MASE
    Florida Bar No.:   0478083
    cmase@mltrial.com
    RACHEL S. COHEN
    Florida Bar No.: 0036810
    rcohen@mltrial.com

CASE NO.: 08-10613-J
L.T. NO.: 07-21867-CV-JAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Appellee's Answer Brief was served via [ ] fax and/or U.S. Mail [ ] on this ____ day of _____, 2008 to: Ralph O. Anderson, Esq., 12535 Orange Drive, Suite P612, David, Florida 33330, and to David W. Brill, Esq., Downs, Brill, Whitehead, 1 S.W. 129th Avenue, Suite 305, Pembroke Pines, Florida 33027.

_____

RACHEL S. COHEN

RSC/17343/267901v4

**MASE & LARA, P.A.**