UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-21948-CIV-COOKE

KENNETH DOWNER, et., al.,
    Plaintiffs,
v.
ROYAL CARIBBEAN CRUISES, LTD.
    Defendant.
_____/

### PLAINTIFFS' MOTION TO LIFT STAY TO ALLOW APPELLATE REVIEW AND/OR ALTERNATIVELY TO CERTIFY MATTER FOR INTERLOCUTORY APPEAL

**COME NOW,** Plaintiffs, by and through undersigned counsel, and hereby file their Motion to Lift this Honorable Court's Stay set forth in the Court's Order Compelling Arbitration [D.E. 40], in order to make the order final and immediately appealable. In support thereof, the Plaintiffs' allege as follows:

**I.    Factual Background.**

This case involves a labor dispute between Royal Caribbean Cruises Ltd. ("RCCL") and its Stateroom Attendants, regarding RCCL's failure to pay the stewards their full wages from May 27, 2008 to the present.

As Stateroom Stewards, Plaintiffs were responsible for hundreds of tasks, including but not limited to the cleaning and sanitation of rooms, and distribution of luggage to passengers. [*Complaint,* ¶9]. Typically, they provided these services to approximately forty-five (45) passengers daily. *Id.,* ¶10.

The Plaintiffs' compensation under the employment agreements with RCCL consisted almost entirely of tips received from passengers. Under the contract, RCCL only paid $50 per month to the Plaintiffs directly as wages.[1] The rest of the Plaintiffs' compensation was comprised of gratuities provided by passengers. *Id.,* ¶11. The employment contract, which incorporated the CBA, required Defendant RCCL to charge passengers the gratuities to be paid to Stateroom Attendants. *Id.,* ¶12.

At the end of every cruise, RCCL collected Stateroom Attendant gratuities from the passengers. These collected gratuities were in turn distributed by RCCL to the Stateroom

---

[1] This averages to one-dollar and 67 cents ($1.67) per day.

Attendants. *Id.,* ¶13. In total, Plaintiffs were entitled to receive gratuities amounting to $3.50 per passenger (per day), for the passengers they serviced. Thus, for a seven day cruise, Plaintiffs were entitled to receive in wages approximately $1,102.50 for forty-five 45 passengers served, or $24.50 per passenger. *Id.,* ¶14.[2]

**RCCL's first illegal scheme.** RCCL's first illegal scheme consisted in requiring the Plaintiffs to hire extra workers and to pay them out of Plaintiffs' own wages, such that the Plaintiffs were denied their full wages. [*Id.,* ¶53].

During the relevant period, RCCL assigned each Stateroom Steward an amount of work which Plaintiffs – on their own - could not feasibly complete in the time allotted by RCCL, without additional help. As a result, Plaintiffs 1) were forced to hire other crew members (hereinafter referred to as "helpers"), and 2) were forced to pay for these helpers out of their own earned wages. *Id.,* ¶53. *See Wallace, et. al. v. NCL (Bahamas) Ltd.,* 09-21814-CIV-JORDAN D.E. 295, pg. 3, *citing* D.E. 222, at pg. 9 (A policy that forces employees to hire helpers raises a Seaman's Wage Act claim).[3]

**RCCL's second illegal scheme: Forced Labor and deprivation of wages.** Starting on 2008, RCCL implemented another scheme consisting in requiring and/or forcing Plaintiffs to work, effectively without pay, in other sections of its ships. [R.E. Tab 2, ¶ 66(B)].

At that time, RCCL implemented a program referred to as the "Evolution of Housekeeping" to save money at the expense of the stateroom attendants. [R.E. Tab 2, ¶16(B)(v)(1)].

As part of the "Evolution of Housekeeping," RCCL created a rating system for stateroom attendants. Under the rating system, referred to as "Performance Management Tool," every two weeks, RCCL scored and/or graded the work performance of stateroom attendants. [R.E. Tab 2, ¶ 66(B)(i)].

---

[2] Pursuant to binding Eleventh Circuit Precedent, tips and/or gratuities are considered an essential part of a seafarer's "wages". *See Flores v. Carnival Cruise Lines,* 47 F. 3d 1120, 1125 (11th Cir. 1995).

[3] The Seaman's Wage Act, 46 U.S.C. §10313 , focuses on ensuring wage payment to seamen via a treble-damages wage-penalty provision assessed on employers for late wages. The purpose of the penalty wage statutes is to secure prompt payment of seaman's wages and thus protect them from the harsh consequences of arbitrary and unscrupulous action by their employers. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 572 (1982).

The stateroom attendants with the lowest ranking scores were punished, temporarily demoted and forced to work, effectively without pay, for two weeks or more. *Id.,* ¶ 66(B)(ii).

During the demotion period, referred to as working at the "back of the house," RCCL required the Plaintiffs to clean and sanitize the rooms of other crewmembers. Because, unlike passengers, crewmembers are not required to tip or give gratuities to people cleaning their rooms; during the entire time that stateroom attendants were sent to work on the "back of the house" they received no gratuities and/or tips – and were thus effectively deprived of their wages.[4] *Id.,* ¶ 66(B)(ii).

The implementation of the Evolution of Housekeeping was motivated solely to save RCCL money, by having people clean crew cabins effectively for free.

Indeed, as part of the "Evolution of Housekeeping," RCCL eliminated the positions and, thus, the cost of "Bell Attendants" and "Staff Attendants." These positions were previously tasked with the cleaning and sanitation of crewmember cabins. By phasing these positions out, and forcing Plaintiffs to take over these duties while they were sent to work on the "back of the house" **without gratuities**, RCCL financially benefited – incurring substantial savings from not having to pay for the work formerly performed by "Bell Attendants" and "Staff Attendants." *Id.,* ¶ 66(B)(v)(1)-(3).

As a result of RCCL's unlawful practices, the Plaintiffs brought claims against RCCL for Forced Labor and Peonage under 18 U.S.C. §1595[5] and the Seaman's Wage Act, 46 U.S.C. §10313. [D.E. 1].

## II. Procedural History.

On June 28, 2012, RCCL filed a Motion to Compel Arbitration and to Dismiss. [D.E. 11]. In response to the Motion, the Seafarers argued that:

---

[4] As set forth above, Plaintiffs' compensation under the employment agreements with RCCL consisted almost entirely of tips received from passengers. Under the contract, RCCL only paid $50 per month to the Plaintiffs directly as wages (or one-dollar and 67 cents ($1.67)), the rest of the Plaintiff's wages came from passenger tips. Therefore, while working at the "back of the house," the Plaintiffs were deprived of approximately $1,102.50 in tips every week. [*Complaint*, ¶14].

[5] Pursuant to 18 U.S.C. §1595 (a) an individual who is a victim of slavery, "forced labor" and/or "peonage" may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act of forced labor and/or peonage) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

3

1) RCCL failed to produce copies of the arbitration agreements signed by Plaintiffs Kenneth Downer, Richard Graham Young, Roan Drumond Scott, Auzzie Duane Dabrell, and Stanley Armando Mullings; and 2) the arbitral provision's choice of law clause, requiring Norwegian law as the substantive law of the arbitration, deprives the seafarers of remedies, in violation of the public policy of the United States, as held in *Thomas v. Carnival Corp.,* 573 F. 3d 1113 (11th Cir. 2009).

After RCCL's Motion was fully briefed - but before the district court ruled upon it - the Eleventh Circuit issued a decision in *Lindo v. NCL (Bahamas) Ltd.,* 652 F. 3d 1257 (11th Cir. 2011). Royal Caribbean brought *Lindo* to the district court's attention [D.E. 30].

However, *Lindo* purports to overrule *Thomas*, and both were panel decisions (only the Eleventh Circuit *en banc* can overrule prior precedent). In recognition of this, this Honorable Court stayed the action pending the resolution of the petition for rehearing in *Lindo*. *See* D.E. 32:

> Defendant argues that Plaintiffs, who worked aboard Defendant's cruise ship, signed employment agreements with Defendant, which requires the parties to arbitrate their claims. Plaintiffs, relying on *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009), argue that the arbitration provision provides for the application of foreign law and therefore is void as against public policy. As Defendant points out in its Notice of Supplemental Authority (ECF No. 30), on August 29, 2011, the Eleventh Circuit held that "to the extent *Thomas* allowed the plaintiff seaman to prevail on a new public policy defense under Article II, *Thomas* violates *Bautista* and our prior precedent rule." *Lindo v. NCL (Bahamas) Ltd*., __ F.3d __, 2011 WL 3795234, at *19 (Aug. 29, 2011).
>
> A district court has broad discretion in determining whether a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In order to promote judicial economy and efficiency, a district court may stay a case pending an appeal in another case that "is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.,* 559 F.3d 1191, 1198 (11th Cir. 2009); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10-61987, 2011 WL 1544860, at *5 (Apr. 15, 2011).
>
> *Lindo* purports to overrule *Thomas*. *Thomas* and *Lindo* were both panel decisions. Only an Eleventh Circuit en banc court or the Supreme Court may overrule a prior Eleventh Circuit panel decision. *See United States v. Evans*, 910 F. 2d 790, 797 (11th Cir. 1990). On September 19, 2011, Appellant filed a petition for rehearing en banc in *Lindo*. **Given the uncertain status of the law in this circuit** with respect to a public policy defense under Article II, and the likelihood that an en banc decision in *Lindo* would have controlling effect on the claims and issues in this case, I find that a brief stay is warranted pending the Eleventh Circuit's decision in *Lindo*.

4

*Id.*, D.E. 32 (emphasis added).

Before the Eleventh Circuit decided in *Lindo* the Appellant's petition for rehearing en banc, the parties in *Lindo* settled the case. After settlement in *Lindo*, RCCL asked this Honorable Court to lift the stay [D.E. 33]. The district court, however, declined to lift the stay, and instead continued the stay pending the resolution of a petition for rehearing that had been filed in a similar case challenging *Lindo*, styled as *Maxwell v. NCL (Bahamas) Ltd.,* Case No. 11-12257 [D.E. 38]:

> Endorsed Order denying Motion for Status Conference. As the parties are aware, **the status of the law remains somewhat uncertain** since the Eleventh Circuit issued its ruling in Lindo v. NCL (Bahamas) Ltd., Case No. 10-10367, as Lindo was a panel decision. The appellee's in Maxwell v. NCL (Bahamas) Ltd., Case No. 11-12257, which raises issues similar to those in the present case, have filed a petition for rehearing en banc. **Given the likelihood that an en banc decision in Maxwell would have controlling effect on the claims and issues in this case**, this Court finds that the stay should not be lifted at this time.

Id., D.E. 38 (emphasis added).

The petition for rehearing en banc in *Maxwell*, however, was ultimately denied. Two weeks later, this Honorable Court entered its order on Royal Caribbean's Motion to Compel Arbitration and to Dismiss [D.E. 40]. This Honorable Court compelled the case to arbitration and *stayed* the case pending the outcome of the parties' arbitration:

> The parties are ordered to resolve this dispute through binding arbitration in accordance with the employment agreements and the CBA. This case is **STAYED** pending the outcome of the parties arbitration. The clerk is directed to *administratively* **CLOSE** this case.

Id., D.E. 40 (emphasis original).

Given the uncertain status of the law, the Plaintiffs filed a Notice of Appeal and on August 17, 2012, filed their Initial Brief. On October 2, 2012 (after the filing of RCCL's Response and Plaintiffs' reply) the appeal was fully briefed.

On October 10, 2012, however, the Eleventh Circuit dismissed the appeal for lack of jurisdiction – holding that this Honorable Court's order *staying* the case pending arbitration *is not final or immediately appealable. See* Eleventh Circuit's Order, attached hereto as Exhibit "1:"

> Appellee's Motion to dismiss the appeal for lack of jurisdiction is GRANTED. The district court's May 31, 2012 order compelling arbitration, staying the proceedings pending the outcome of the arbitration, and administratively closing the case is not

5

final or immediately appellable … Accordingly, this appeal is DISMISSED for lack of Jurisdiction.

Thus, because at the time that this Honorable Court compelled the case to arbitration, it simultaneously stayed the case; the Plaintiffs have been deprived of an opportunity to appeal this Honorable Court's findings. For this and other reasons described below, this Honorable Court should lift the stay, in order to make its order final and immediately appellable.

### III. THIS HONORABLE COURT SHOULD LIFT THE STAY IN ITS ORDER COMPELLING THE CASE TO ARBITRATION. IN DOING SO THE ORDER WILL BECOME "FINAL" AND PLAINTIFFS WILL ABLE TO APPEAL THIS HONORABLE COURT'S FINDINGS.

#### A. By lifting the stay in its prior order compelling the case to arbitration, this Honorable Court will restore the Plaintiffs' opportunity to appeal.

The Federal Arbitration Act ("FAA") governs the appelability of orders disposing of requests to compel arbitration. *American Exp. Financial Advisors, Inc., v. Makarewicz,* 122 F. 3d 936 (11th Cir. 1997). Section 16(b) of the act provides as follows: "Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order … granting a stay of any action under section 3 of this title …" *Makarewicz, citing* 9 U.S.C. §16(b) (1994). *See also* Id., at 939 ("The district court in this case granted a stay under section 3 of the FAA. The district court did not certify this decision for interlocutory appeal pursuant to 28 U.S.C. §1292(b). Therefore, we have no jurisdiction over the district court's decision for interlocutory appeal.").

Here, the Eleventh Circuit relied on the language in *Makarewicz*, for the proposition that because this Honorable Court stayed the case, it did not have jurisdiction.

Thus, if this Honorable Court lifts the stay, the order compelling the matter to arbitration will become final and appealleable. *See Dialysis Access Center, LLC, v. RMS Lifeline, Inc.*, 638 F. 3d 367 (1st Cir. 2011):

> Although Section 16 of the FAA "limits the immediate appealability of most pro-arbitration interlocutory orders, it still permits appeals to be taken from 'a final decision with respect to an arbitration'" [citations omitted]. Whether an order compelling arbitration is interlocutory or final depends on whether the district court chooses to stay litigation pending arbitration or instead to dismiss the case entirely.
> … **If the district court couples its order compelling arbitration not with a stay but with an outright dismissal, leaving nothing more for itself to do but execute the eventual judgment, then an appeal may be taken**"

6

Id., (emphasis added) *citing* the Supreme Court in *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 87 n. 2 (2000):

> The District Court's order directed that the dispute be resolved by arbitration and dismissed respondent's claims with prejudice, leaving the court nothing to do but execute the judgment. That order plainly disposed of the entire case on the merits and left no part of it pending before the court. **The District Court's order was therefore "a final decision with respect to an arbitration" within the meaning of § 16(a)(3), and an appeal may be taken**
>
> [Ft. 2] **Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable.** 9 U.S.C. § 16(b)(1).

Id., (emphasis added); *see also Employer's Insurance of Wausau v. Bright Metal Specialties, Inc.*, 251 F. 3d 1316 (11th Cir. 2001) *citing Green Tree*:

> As a threshold matter we decide whether we have jurisdiction over this appeal … [*Green Tree*] held that a district court order compelling a case to arbitration and dismissing all other claims is "final" within the meaning of §16(a)(3), and therefore appellable … Accordingly, we have jurisdiction … because the arbitration order disposes of all the issues framed by the litigation and leaves nothing for the district court to resolve.

All in all, like in *RMS Lifeline, Green Tree*, and *Employer's Insurance*, if this Honorable Court's order compelling the case to arbitration is *not* coupled with a stay (and the current stay is lifted), under § 16(b)(1) the Court's order will be deemed a "final decision with respect to arbitration," and the seafarers will have the benefit of appellate review.

**B. Lifting the stay will be in the public interest 1) given the underlying facts of this case and 2) because the law in the Eleventh Circuit regarding these types of arbitration clauses is unsettled.**

Lifting a stay is within the Court's discretion. In exercising this discretion, the Court considers the facts of the case and the public interest. *Axa Equitable Life Insurance Co. v. Infinity Financial Group LLC,* 2012 WL 602709 (S.D. Fla. 2012) (Hurley, J.). Indeed, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. Id., *citing Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. Id.

### i. Lifting the stay will be in the public interest because it will preserve judicial resources.

With the stay in place, in order to challenge arbitrability, the Plaintiffs will have to go through arbitration (spending time and resources), return to the district court to review the outcome of such arbitration, and eventually appeal. By the time that the case is in front of the Eleventh Circuit, the Plaintiffs (poor destitute seafarers) will have little or no resources to continue.

Rather than having the Plaintiffs' go through this circuitous route, to preserve resources, this Honorable Court should lift the stay so that the Plaintiff can challenge the arbitration agreement now.

This approach (challenging arbitrability immediately after the district court compelled the case to arbitration) has been done in every recent arbitration appeal in front of the Eleventh Circuit: *Bautista v. Star Cruises,* 396 F. 3d 1289 (11th Cir. 2005); *Thomas v. Carnival*, 573 F. 3d 1113 (11th Cir. 2009); *Lindo v. NCL (Bahamas) Ltd.,* 652 F. 3d 1257 (11th Cir. 2011)

Notably, in each of these cases, the district court *did not* stay the case in its order compelling arbitration. This made each order "final and appellable" and allowed the seafarers to immediately appeal the district court's order.

### ii. Lifting the stay will be in the public interest because the law in the Eleventh Circuit is unsettled.

**First,** in the Order Compelling Arbitration the Court relied on *Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011). Defendant also argued that *Lindo* – and not *Thomas* controlled the outcome of this case. However, before the Eleventh Circuit issued its mandate in *Lindo*, **the parties in *Lindo* settled.**[6]

Controlling precedent holds that ["w]hen a case settles before the end of the appellate process, any opinion that has been produced should be vacated." *Flagship Marine Services, Inc. v. Belcher Towing Co.,* 23 F. 3d 341 (11th Cir. 1994). *See also Perez v. Globe Airport Security, Service, Inc.,* 294 F. 3d 1275 (11th Cir. 2002) (Court *sua sponte* vacated panel opinion which had issued before settlement); *Key Enterprises, Inc. v. Venice Hospital*, 9 F. 3d 893 (11th Cir. 1993):

---

[6] The *Lindo* parties filed an "Agreed Motion to Dismiss Appeal with Prejudice and Notice of Settlement" on October 3, 2011. The Eleventh Circuit's issued its Mandate in *Lindo*, **after the parties settled** on October 21, 2011.

> When the settling parties filed the joint motions, no case or controversy existed. Consequently, we no longer had jurisdiction over the issues presented and should have immediately dismissed the appeal … **we will not permit parties to a specific suit, or their counsel, through an agreement or otherwise, to control our statement of the law … Given that nothing was at stake for any party after the settlement of this case, any opinion by this Court would be <u>purely advisory</u> –<u>an outcome precluded by the Constitution</u>.**"

*Id.,* (emphasis added).

Under *Key Enterprises*, therefore the Eleventh Circuit has to decide whether *Lindo* is an **<u>unconstitutional advisory opinion</u>** which should be vacated.

**Second,** as this Honorable Court previously stated "*Lindo* purports to overrule *Thomas*. *Thomas* and *Lindo* were both panel decisions." [D.E. 32]. Pursuant to the prior panel precedent rule neither the Eleventh Circuit *en banc* nor the United States Supreme Court has overruled *Thomas*. *See Pavon v. Carnival Corporation*, 11-cv-23148-JAL (S.D. Fla. 2011) [D.E. 13] "The Court further notes that as a panel opinion, *Lindo* cannot overrule *Thomas* as the law of this Circuit; that may only be done by the Eleventh Circuit *en banc*."[7] Therefore, the Eleventh circuit has to decide whether *Lindo* violated the prior panel precedent rule.

**Third,** *Lindo* conflicts with *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998). In *Paladino*, the Eleventh Circuit held that an arbitration clause is unenforceable if it ***does not*** permit relief equivalent to statutory remedies, or when the arbitration clause has provisions that defeat the remedial purpose of the federal statute. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998):

> Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration… **But the arbitrability of such claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies.** *See Glimer,* 500 U.S. at 28. **<u>When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable</u>**.
>
> **This clause defeats the statute's remedial purposes because it insulates Avnet from Title VII damages and equitable relief**. *Cf. Brisentine v. Stone & Webster Eng'g Corp.,* 117 F. 3d 519, 526-27 (11th Cir. 1997) … Arguably, Paladino could hope for a finding of liability from the arbitrator. In that event, she would still have

---

[7] *United States v. Archer,* 531 F. 3d 1347, 1352 (11th Cir. 2008): "We acknowledge the strength of the prior panel precedent rule in this circuit. Under that rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*."

9

>to repair to a judicial forum to pursue any Title VII remedy. **These difficulties considered, we treat this clause as an impermissible waiver of Title VII rights**. *See Alexander Gardner-Denver Co.,* 415 U.S. 36, 51-52 (1974); *Schwartz v. Florida Bd. of Regents*, 807 F. 2d 901, 906 (11th Cir. 1987).
>
>... **A clause such as this one that deprives an employee of any hope of meaningful relief**, while imposing high costs on the employee, undermines the policies that support Title VII. **It is not enforceable**.

Id. (emphasis added).

Here, the subject arbitration provision contains a choice of law clause which provides, in part, at paragraph 3 of the employment contract that "[t]he procedural and substantive law of the arbitration shall be the **law of Norway** without regard to conflict of law principles" D.E. 11-3, pg. 3]. Further, at paragraph E, titled "governing law" the contract provides, that "[a]ny grievance or dispute shall be governed in accordance with the **laws of Norway**, without regard to any conflicts of law principles." Pursuant to the terms of RCCL's arbitral provision, therefore, if Plaintiffs were compelled to arbitrate this matter, Plaintiffs would be forced to arbitrate their claims exclusively under Norwegian law.

Under *Paladino* and *Thomas* (panel opinions), RCCL's arbitration agreement is null, void and unenforceable. In contrast, under *Lindo* (panel opinion) RCCL's arbitration agreement is presumptively valid.

Therefore, lifting the stay will be in the public interest because it will allow the Eleventh Circuit to establish whether *Thomas* and *Paladino* - or *Lindo* – is the law of the land.

**iii.** **Lifting the stay will allow the Eleventh Circuit to decide questions of great public importance: An American cruise line that subjects seafarers to working conditions resembling slavery should not be allowed to arbitrate its disputes – particularly if the law of the arbitration (Norwegian law) provides <u>zero</u> remedies to the Plaintiffs.**

The issue which the Seafarers are attempting to bring in front of the Eleventh Circuit is clear: Should a U.S. based cruise line (Royal Caribbean) that subjects its seafarers to working conditions resembling slavery be allowed to take its employment disputes to arbitration: 1) in the absence of signed arbitration agreements; and 2) where Seafarers are left without remedies because the substantive law required at arbitration (Norwegian law), only applies to Norwegian residents and citizens?

Royal Caribbean implemented two schemes. Under the first scheme, the seafarers were victims of forced labor and were deprived of thousands of dollars of their wages every week. The

10

second scheme consists in depriving seafarers of their ability to bring any claims against their employer to hold it accountable for these policies.

When the seafarers filed their lawsuit in federal Court, the agencies chosen by Congress to enforce seafarers rights for 200 years, Royal Caribbean sought to compel arbitration of their claims.

Notably, the arbitration clause that Royal Caribbean is relying on, requires the application of Norwegian Law as the substantive law of the arbitration. Thus, if Plaintiffs are forced go to arbitration under Norwegian law, they get nothing. It is undisputed that Norway's Seaman's laws only apply to Norwegian citizens and residents. Plaintiffs are neither.[8]

The end result is clear. If the Seafarers are deprived of the opportunity to appeal this Honorable Court's legal findings, Royal Caribbean will be able to continue subjecting seafarers (members of the proposed class) to working conditions tantamount to slavery without repercussions or accountability.[9] The seafarers will not be able to bring their claims in Federal Court, and they will also not be able to adjudicate their disputes in arbitration, because they have no rights under Norwegian law.

All in all, the seafarers will be left vulnerable to the exploitation of their employer, without relief or remedies. This result would be catastrophic because it would eliminate 200 years of judicial tradition protecting seafarers. *See  Castillo v. Spiliada Maritime Corp.*, 937 F. 2d 240, 243 (5th Cir. 1991):

> Historically, seamen have enjoyed a special status in our judicial system. They enjoy this status because they occupy a unique position. A seaman isolated on a ship on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists great inequality in bargaining position between large ship-owners and unsophisticated seamen… To shield seamen against unfair conduct by ship-owners, Congress enacted special protection statutes. Congress did not limit this statutory coverage to American seamen; rather, Congress extended protection to seamen who serve on a foreign vessel when located in a United States harbor. 46 U.S.C. §10313 ….We are convinced that federal courts must remain vigilant in

---

[8]   *See* D.E. 20-1:  §1 "Scope of Act," of Norway Seamen's Act of 30 May 1975 No. 18, providing that it only applies to persons employed on board Norwegian ships who are Norwegian nationals or residents. Royal Caribbean's vessels are not Norwegian ships; they fly Bahamian flags. Moreover,  Plaintiffs are citizens of Jamaica, Costa Rica and St. Vincent – not Norway.
Not to mention that it us undisputed that Norwegian law does not recognize the causes of action and remedies under the Seaman's Wage Act, 46 U.S.C. §10313 and the anti-slavery statute 18 U.S.C. §1595

[9]   The "back of the house" scheme continues on RCCL ships to this day.

> protecting the rights of seamen, whether foreign or domestic, in their relations with their employer. This protection comports with our nation's long history of concern and solicitude for seamen with employment disputes.

*Id.*, at 243.

IV. **ALTERNATIVELY, THIS HONORABLE COURT SHOULD CERTIFY ITS DECISION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b).**

Section 1292(b) says this:

> When a district judge, in making in a civil action order not otherwise appealable under this section, shall be of the opinion that such order involves a question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion permit an appeal to be taken from such order, if application is made to it within ten days after entry of the order…

28 U.S.C. 1292 (b); *McFarlin v. Conseco Services LLC,* 381 F. 3d 1251 (11th Cir. 2004).

As set forth earlier, as long as this Honorable Court lifts the stay in its order compelling the matter to arbitration, the seafarers will have an opportunity of immediate appellate review. However, in the event that this Honorable Court declines to lift the stay, the seafarers request for the Court to certify its decision to the Eleventh Circuit pursuant to 28 U.S.C. §1292(b).

Here, all of the requirements of §1292(b) are met. Because the law in the Eleventh Circuit is unsettled, this Honorable Court's "order involves a question of law as to which there is substantial ground for difference of opinion." Moreover, "appeal from the order may materially advance the ultimate termination of litigation" because it would allow the Eleventh Circuit to declare once and for all whether these types of arbitration agreements are unenforceable (i.e. *Paladino* and *Thomas*) or presumptively valid (*Lindo*).

**Certificate of Good Faith Conference Pursuant to Rule 7.1.:** Counsel for Plaintiffs conferred with counsel for Defendant regarding the relief sought in this Motion. Counsel for Defendant does not agree.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some electronically Notices of Electronic Filing.

>LIPCON, MARGULIES,
>ALSINA & WINKLEMAN, P.A.
>Attorney for Plaintiff
>One Biscayne Tower, Suite 1776
>2 South Biscayne Boulevard
>Miami, Florida  33131
>Telephone:  (305)  373-3016
>Facsimile: (305) 373-6204
>cllinas@lipcon.com
>
>By:  /s/ *Carlos Felipe Llinás Negret*
>CARLOS FELIPE LLINÁS NEGRET
>Florida BAR NO 73545